1   Robert B. Wiygul, Esq. (LA Bar No. 17411)
    Waltzer & Associates
2   1025 Division Street, Suite C
    Biloxi, MS  39530
3   Telephone:  (228) 374-0700
    Facsimile:  (228) 374-0725
4   Email: robert@waltzerlaw.com

5   Paul P. "Skip" Spaulding, III, Esq. (CA Bar No. 83922)
    David J. Lazerwitz, Esq. (CA Bar No. 221349)
6   Andrew W. Ingersoll, Esq. (CA Bar No. 221348)
    Sky C. Stanfield, Esq. (CA Bar No. 244966)
7   Farella Braun + Martel LLP
    235 Montgomery Street, 17th Floor
8   San Francisco, CA  94104
    Telephone:  (415) 954-4400
9   Facsimile:  (415) 954-4480
    Email:  sstanfield@fbm.com

10

11  ***Attorneys for Plaintiffs Alliance for Responsible Recreation, The
    Wilderness Society, California Wilderness Coalition, Friends of
    Juniper Flats, Western San Bernardino Landowners Ass'n,***
12  ***California Native Plant Society, and Community ORV Watch***

13  ***Additional Plaintiffs and Counsel Listed on Signature Page***

14              UNITED STATES DISTRICT COURT

15            NORTHERN DISTRICT OF CALIFORNIA

16              SAN FRANCISCO DIVISION

17

| 18  CENTER FOR BIOLOGICAL | Case No. 3:06 CV 04884 SI |
| DIVERSITY, *et al.*, | |
| 19 | **PLAINTIFFS' REVISED NOTICE OF** |
| Plaintiffs, | **MOTION FOR SUMMARY** |
| 20 | **ADJUDICATION ON THE FIRST AND** |
| vs. | **SECOND CLAIMS FOR RELIEF AND** |
| 21 | **REVISED MEMORANDUM OF POINTS** |
| U.S. BUREAU OF LAND | **AND AUTHORITIES IN SUPPORT OF** |
| 22  MANAGEMENT, *et al.*, | **MOTION** |
| 23 | Date:      May 16, 2008 |
| Defendants. | Time:      9:00 am |
| 24 | Courtroom: 10, 17th Floor |
| | Judge:     Hon. Susan Illston |

25

26

27

28

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:**

**PLEASE TAKE NOTICE** that Plaintiffs Alliance for Responsible Recreation, The Wilderness Society, California Wilderness Coalition, Friends of Juniper Flats, Western San Bernardino Landowners Association, California Native Plant Society, Community ORV Watch, Center for Biological Diversity, Sierra Club, Public Employees for Environmental Responsibility, and Desert Survivors hereby jointly move this court for Summary Judgment on the First and Second Claims for relief in this action. This motion is based on the accompanying Memorandum of Points and Authorities, the pleadings, records, and files in this action, and other such documentary and oral evidence supplied at the hearing.  Hearing on the earlier version of these motions was held on May 16, 2008, no new date for hearing has been set.

Plaintiffs request that the Court set aside: Defendant Bureau of Land Management's adoption of the Final Environmental Impact Statement for the West Mojave Plan; Defendant Bureau of Land Management's adoption of the Record of Decision for the West Mojave Plan; Defendant Bureau of Land Management's adoption of the Environmental Assessment for the Western Mojave Desert Off Road Vehicle Designation Project; and Defendant Bureau of Land Management's adoption of the Decision Record for the Western Mojave Desert Off Road Vehicle Designation Project.  Plaintiffs seek interim injunctive relief to protect the resources within the West Mojave planning area pending the completion of adequate environmental review for the West Mojave Plan and the Western Mojave Desert Off Road Vehicle Designation Project, and adoption of a Record of Decision for both of these planning projects whether they are evaluated and approved separately or together.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

21343\1713285.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. STATUTORY AND REGULATORY BACKGROUND .................................... 1

    A. Federal Land Policy And Management Act, Executive Orders and Regulations ........................................................................................ 1

    B. The National Environmental Policy Act ................................................ 3

        1. Reasonable Range Of Alternatives ............................................. 4

        2. Environmental Baseline/Environmental Setting ......................... 4

        3. Duty To Use Accurate Information ............................................. 4

III. FACTUAL AND PROCEDURAL BACKGROUND ......................................... 5

    A. The Western Mojave Bioregion And The Resources Affected ............... 5

    B. BLM's Route Designations And Management Of The Western Mojave Area Prior To 2001 ............................................................................. 6

        1. The CDCA Plan And ORV Routes ............................................. 6

        2. 1985-87 Route Designations And ACEC Route Designations ... 7

        3. Ord Mountain And "Box" Route Designation Efforts ................. 7

        4. The 2001 Field Surveys And The "Redesign Areas" .................. 8

        5. ORV Route Designation By The "Decision Tree" ...................... 8

    C. The 2003 Route Designation And EA .................................................. 9

    D. The WEMO Plan Amendment, FEIS, And 2005 Route Designations ................. 10

IV. STANDARD FOR SUMMARY JUDGMENT AND APA STANDARD OF REVIEW ............................................................................................... 10

V. ARGUMENT .............................................................................................. 12

    A. BLM Violated FLPMA, Executive Orders And Its Own Regulations In Adopting The WEMO Plan ................................................................ 12

        1. BLM's "Decision Tree" Route Designation Process Failed To Analyze And Consider The Legally Required Factors And Instead Elevated Consideration Of Motorized Vehicle Access Over All Other Resources ...................................................................... 12

            a. BLM Failed To Base Its Decision on the "Minimization" Factors Expressly Required By 43 C.F.R. § 8342.1 ................. 12

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- i -

21343\1713285.1

1

## TABLE OF CONTENTS
(continued)

2

Page

3

      b.     BLM's Decision Tree Improperly Elevated Consideration Of Motorized Access Over All Other Factors............................... 15

4

    2.    The Decision Tree Route Designations Are Not Supported By The Evidence Contained In The Administrative Record ................................. 16

5

6

    3.    There Is No Support In The Record For The Route Designations In Areas Not Evaluated Using The Decision Tree ........................................ 18

7

    4.    The Route Designations Are Also Arbitrary And Capricious Because The Record Fails To Provide A Reasoned Explanation For Ignoring The Ban On Post-1980 Routes In The CDCA Plan ................... 19

8

9

  B.    Violations Of The National Environmental Policy Act ........................................ 19

10

    1.    BLM Failed To Consider A Reasonable Range Of Alternatives............. 19

11

    2.    BLM Failed To Accurately Describe The Environmental Setting Or Baseline For Analysis And Failed To Present And Analyze Past And Future Compliance With Route Designations................................... 22

12

13

    3.    BLM Assumes Without Basis That Its Route Designations Will Be Effective ................................................................................................... 23

14

15

    4.    BLM Failed To Inventory, Identify And Analyze Significant Impacts To Sensitive Resources................................................................. 25

16

        a.     Impacts To Soils.................................................................... 26

17

        b.     Impacts To Cultural Resources .................................................... 26

18

        c.     Impacts To Biological Resources ............................................... 27

19

            (1)     Riparian Resources, UPAs, and Water Quality ............... 27

20

            (2)     Spread Of Non-Native Invasive Plants ............................ 30

21

            (3)     Threatened, Endangered, Rare, And BLM Sensitive Species ........................................................................ 30

22

23

    5.    Impacts To Air Quality .......................................................................... 32

24

    6.    The FEIS Fails To Adequately Analyze Cumulative Impacts ................. 34

25

VI.    REMEDY ........................................................................................................... 35

26

VII.   CONCLUSION ................................................................................................... 35

27

28

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- ii -

21343\1713285.1

1

# TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4

*America Rivers v. Federal Energy Regulatory Commission*,
   201 F.3d 1186 (9th Cir. 1999)...................................................................................... 4, 22

5

*American Motorcyclist Association v. Watt*,
   543 F. Supp. 789 (C.D. Cal. 1982)....................................................... 3, 13, 14, 16

6

7

*Animal Defense Council v. Hodel*,
   840 F.2d 1432 (9th Cir. 1988)................................................................................... 5

8

*Center for Biological Diversity v. Bureau of Land Management*,
   422 F. Supp. 2d 1115 (N.D. Cal. 2006) ............................ 1, 3, 4, 11, 20, 21, 22, 26, 27, 34

9

10

*City of Carmel-by-the-Sea v. United States Department of Transport*,
   123 F.3d 1142 (9th Cir.1997)..................................................................................... 4

11

*Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*,
   746 F.2d 466 (9th Cir. 1984)...................................................................................... 16

12

13

*Conservation Law Foundation v. Clark*,
   590 F. Supp. 1467 (D. Mass. 1984) ........................................................................ 2, 11

14

*Conservation Law Found. v. Sec'y of the Interior*,
   864 F.2d 954 (1st Cir. 1989) .................................................................................... 2, 13

15

16

*Defenders of Wildlife v. Babbitt*,
   958 F. Supp. 670 (D.D.C. 1997) .............................................................................. 11

17

*General Chemical Corp. v. United States*,
   817 F.2d 844 (D.C. Cir. 1987) .................................................................................. 19

18

19

*Half Moon Bay Fishermans' Marketing Association v. Carlucci*,
   857 F.2d 505 (9th Cir. 1988)..................................................................................... 4

20

*Hunt v. Washington State Apple Adver. Commission*,
   432 U.S. 333 (1977)................................................................................................... 9

21

22

*Idaho Sporting Congressional v. Thomas*,
   137 F.3d 1146 (9th Cir. 1998).................................................................................... 5

23

*'Ilio'Ulaokalani Coalition v. Rumsfeld*,
   464 F.3d 1083 (9th Cir. 2006).................................................................................... 4

24

25

*Lands Council v. McNair*,
   42008 WL 2640001 (9th Cir. July 2, 2008) ............................................... 5, 11, 18, 25

26

*Motor Vehicle Mfr.'s Association v. State Farm Insurance*,
   463 U.S. 29 (1983) ........................................................................................ 11, 18, 33

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- iii -

21343\1713285.1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3   *NRDC v. Hodel*,
          865 F.2d 288 (D.C. Cir. 1988) ........................................................................... 26
4
    *NRDC v. U.S. Forest Serv.*,
5         421 F.3d 797 (9th Cir. 2005)................................................................... 27, 33

6   *NSK Ltd. v. United States*,
          390 F.3d 1352 (Fed. Cir. 2004)........................................................................ 19
7
    *National Wildlife Federation v. Morton*,
8         393 F. Supp. 1286 (D.D.C. 1975) ........................................................ 2, 13, 16

9   *Native Ecosystems Council v. U.S. Forest Serv.*,
          418 F.3d 953 (9th Cir. 2005)............................................................................ 34
10
    *Nebraska v. Wyoming*,
11        507 U.S. 584 (1993) ......................................................................................... 11

12  *Neighbors of Cuddy Mountain v. U.S. Forest Serv.*,
          137 F.3d 1372 (9th Cir. 1998)..................................................................... 24, 25
13
    *Northwest Environmental Advocates v. National Marine Fisheries Serv.*,
14        460 F.3d 1125 (9th Cir. 2006)............................................................................. 3

15  *Oregon Natural Desert Association v. BLM*,
          531 F.3d 1114 (9th Cir. 2008)............................................................... 1, 21, 25
16
    *Oregon Natural Desert Association v. Rasmussen*,
17        451 F. Supp. 2d 1202 (D. Or. 2006) ............................................................... 26

18  *Oregon Natural Resources Council Fund v. Brong*,
          492 F.3d 1120 (9th Cir. 2007)................................................................... 16, 30
19
    *Robertson v. Methow Valley Citizens Council*,
20        490 U.S. 332 (1989)........................................................................................ 30

21  *SEC v. Chenery Corp.*,
          332 U.S. 194 (1947)........................................................................................ 11
22
    *Seattle Audubon Society v. Moseley*,
23        80 F.3d 1401 (9th Cir. 1996)........................................................................... 20

24  *Sierra Club v. Clark*,
          774 F.2d 1406 (9th Cir. 1985).......................................................................... 13

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- iv -

21343\1713285.1

# TABLE OF AUTHORITIES

Page

## FEDERAL STATUTES

5 U.S.C.
§ 701, *et seq* ............................................................................... 3, 11
§ 706(2)(a) ..................................................................................... 11

43 U.S.C.
§§ 1701-85 ....................................................................................... 1
§ 1701(a)(2) ........................................................................ 2, 17, 26
§ 1701(a)(7) & (8) ........................................................................... 2
§ 1711(a) ............................................................... 2, 17, 25, 27
§ 1732(b) ................................................................................. 2, 12
§ 1781(a)(2) ..................................................................................... 2
§ 1781(c) ..................................................................................... 1, 2

40 C.F.R.
§ 1502.14(a) .................................................................................. 19
§ 1502.22 .................................................................................. 4, 27
§ 1502.24 ........................................................................................ 4
§ 1503.4 ....................................................................................... 34

43 C.F.R.
§§ 8340-8342 ................................................................................... 2
§ 8341.1(a) & (c) .......................................................................... 23
§ 8341.2 .................................................................................. 13, 17
§ 8342 ......................................................................................... 189
§ 8342.1 .............................................. 9, 12, 13, 16, 17, 23
§ 8342.1(a) ......................................................................... 2, 12, 13
§ 8342.1(b) ............................................................................... 3, 12
§ 8342.1(c) ............................................................................... 3, 12
§ 8342.1(d) ..................................................................................... 3
§ 8342.2 .................................................................................... 9, 17

Federal Rules of Civil Procedure
Rule 56(c) ..................................................................................... 10

## OTHER AUTHORITY

37 Fed. Reg. 2877 (1972) ....................................................................... 2

42 Fed. Reg. 26959 (1978) ..................................................................... 2

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- v -

21343\1713285.1

1

## LIST OF ACRONYMS AND ABBREVIATIONS

2

3
| | | |
|---|---|---|
| EA | - | Environmental Assessment |
| ACEC | - | Areas of Critical Environmental Concern |
| AMA | - | American Motorcyclist Association |
| APA | - | Administrative Procedures Act |
| BLM | - | Bureau of Land Management |
| BO | - | Biological Opinion |
| CBD II | - | *Center for Biological Diversity v. Bureau of Land Management*, 422 F.Supp.2d 1115 (N.D. Cal. 2006) |
| CDCA | - | California Desert Conservation Area |
| DWMAs | - | Desert Wildlife Management Areas |
| EA | - | Environmental Assessment |
| EIR | - | Environmental Impact Report |
| EIS | - | Environmental Impact Statement |
| EO | - | Executive Order |
| FEIS | - | Final Environmental Impact Statement |
| FLPMA | - | Federal Land Policy and Management Act |
| HCP | - | Habitat Conservation Plan |
| MAZs | - | Motorized Access Zones |
| NEPA | - | National Environmental Policy Act |
| ORV | - | Off-Road Vehicle |
| ROD | - | Record of Decision |
| UPA | - | Unusual Plant Assemblages |
| WEMO | - | Western Mojave |
| WEMO Plan | - | Western Mojave Plan |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- vi -

21343\1713285.1

## I.  **INTRODUCTION**

The eleven plaintiff organizations seek summary judgment on the first and second claims for relief filed against the Bureau of Land Management ("BLM") for violation of the Administrative Procedures Act ("APA"), the Federal Land Policy and Management Act ("FLPMA"), the National Environmental Policy Act ("NEPA"), their respective implementing regulations, and Executive Orders ("EO") 11,644 and 11,989.

In approving the Western Mojave ("WEMO") Plan BLM violated FLPMA, the regulations and EOs by designating thousands of Off-Road Vehicle ("ORV") routes using a flowchart, called the "Decision Tree," that did not minimize impacts to public land resources such as air, soil, and vegetation, and in fact prioritized motorized vehicle access over all other public land resources.  This failure is directly contrary to the requirements of the statute, regulations and EOs and renders the WEMO Plan arbitrary, capricious and contrary to law.  As the Ninth Circuit recently held, "[t]here is no dispute that ORVs profoundly change the lands across which they travel."  *Oregon Natural Desert Association ("ONDA") v. BLM*, 531 F.3d 1114, 1144 (9th Cir. 2008).  The NEPA review conducted for the WEMO Plan is also fatally flawed.  BLM failed to consider any meaningful alternatives to the 5,000 plus miles of routes designated, did not set an environmental baseline from which environmental impacts could be measured, and thoroughly failed to analyze significant impacts to many sensitive resources.  Due to these and other inadequacies the Environmental Assessment ("EA") and Environmental Impact Statement ("EIS") and the Records of Decision ("ROD") issued in reliance on them must be set aside.

## II.  **STATUTORY AND REGULATORY BACKGROUND**

### A.  **Federal Land Policy And Management Act, Executive Orders and Regulations**

FLPMA, 43 U.S.C. §§ 1701-85, is our basic national charter for protection and management of public lands.[1]  It declares that the public lands be managed for multiple uses "in a manner that will protect the quality of the scientific, scenic, historical, ecological, environmental,

---

[1] This Court recently reviewed the basic principles and purposes of FLPMA, focusing on the Imperial Sand Dunes portion of the California Desert Conservation Area.  43 U.S.C. § 1781(c); s*ee Center for Biological Diversity v. Bureau of Land Management*, 422 F.Supp.2d 1115, 1122, 1166-67 (N.D. Cal. 2006) (hereafter the "*CBD II*" decision).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 1 -

21343\1713285.1

1   air and atmospheric, water resource, and archeological values." 43 U.S.C.§ 1701(a)(7) & (8).

2   FLPMA also requires that BLM prepare and maintain a current inventory of all public lands and

3   their resources, 43 U.S.C. § 1711(a), and requires that this inventory form the basis of the land

4   use planning process.  43 U.S.C. § 1701(a)(2).

5         As part of FLPMA, Congress designated 25 million acres of southern California as the

6   California Desert Conservation Area ("CDCA").  43 U.S.C. § 1781(c).  Congress declared in

7   FLPMA that the CDCA is a rich and unique environment teeming with "historical, scenic,

8   archeological, environmental, biological, cultural, scientific, educational, recreational, and

9   economic resources."  43 U.S.C. § 1781(a)(2).  Congress found that this desert and its resources

10  are "extremely fragile, easily scarred, and slowly healed."  *Id.*  For the CDCA and other public

11  lands, Congress mandated that the BLM "shall, by regulation or otherwise, take any action

12  necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C § 1732(b).

13        In response to the growing use of ORVs and attendant environmental damage, Presidents

14  Nixon and Carter respectively issued EOs which mandated BLM to only allow ORV use on

15  public lands if certain conditions were met.  37 Fed. Reg. 2877 (1972); 42 Fed. Reg. 26959

16  (1978).  These Orders are binding on BLM and enforceable as law. *See Conservation Law Found.*

17  *v. Clark*, 590 F.Supp. 1467, 1477 (D. Mass. 1984) (holding that EOs 11,644 and 11,989 are both

18  "invested with the status of law" and enforceable), *aff'd*, *Conservation Law Found. v. Sec'y of the*

19  *Interior*, 864 F.2d 954 (1st Cir. 1989).

20        Executive Order 11,644 mandates that the Secretary of the Interior issue regulations which

21  require the designation of specific areas and trails on public lands to which ORV use will be

22  limited.  After an initial set of regulations were overturned in *National Wildlife Federation v.*

23  *Morton*, 393 F.Supp. 1286, 1292 (D.D.C. 1975), BLM re-issued the ORV regulations in force

24  today.  43 C.F.R. §§ 8340-42.  Following the requirements of the EOs, the regulations require

25  that BLM locate ORV trails to protect the environment in affected areas.  These requirements,

26  often referred to as the "minimization criteria," are as follow:

27      •   "minimize damage to soil, watershed, vegetation, air, or other resources of the
       public lands and to prevent impairment of wilderness suitability" (43 C.F.R.
28         § 8342.1(a));

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION OF THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 2 -

21343\1713285.1

- • "minimize harassment of wildlife or significant disruption of wildlife habitats" (43 C.F.R. § 8342.1(b));

- • "minimize conflicts between off-road vehicle use and other existing or proposed recreational uses of the same or neighboring public lands, and to ensure compatibility of such uses with existing conditions in populated areas, taking into account noise and other factors" (43 C.F.R. § 8342.1(c)); and

- • prohibit trails in "officially designated wilderness areas or primitive areas" (43 C.F.R. § 8342.1(d)).

The 1980 CDCA Plan stated that ORV routes should be limited to those in existence in 1980 (*AR*-22005),[2] and also contained a set of criteria for designating ORV routes in the CDCA. These criteria were invalidated in *American Motorcyclist Association ("AMA") v. Watt,* 543 F. Supp. 789, 797 (C.D. Cal. 1982). Judge Tashima held that the Plan criteria would have permitted BLM to make route designations without minimizing impacts to public lands resources, as expressly required by the applicable EOs and agency's own regulations. As explained below, the "Decision Tree" flowchart process BLM used to designate ORV routes in the present case has the same infirmities as the criteria Judge Tashima invalidated 25 years ago.

## B. The National Environmental Policy Act

The purposes of the National Environmental Policy Act ("NEPA") are well documented in the case law of this Court and the Ninth Circuit, and those basic purposes need not be repeated at length here. *See, e.g., Northwest Envtl. Advocates v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1133 (9th Cir. 2006); *CBD II*, 422 F. Supp.2d at 1156-66. There are, however, several specific requirements of NEPA that are critical to reviewing the propriety of BLM's route designations pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.*

---

[2] All subsequent references to documents in the Administrative Record appear with the Bates Stamp preceded by an abbreviated prefix. "*AR*" alone refers to documents with the Bates stamp prefix of "BLM *AR* WMP"; "*SAR*" to "BLM *SAR* WMP"; "*SAR2*" to "BLM *SAR2* WMP" and "*SAR3*" to "BLM *SAR3* WMP." All other citations to portions of the Administrative Record include their full Bate Stamp prefix (*e.g. WEMO Supp ITS AR*; *WEMO AR BO*). Due to the fact that the government supplemented the record multiple times the record citations are somewhat difficult to follow in this matter, thus, to aid the court, Plaintiffs filed a complete set of "excerpts of record," including all documents cited herein, with their original response and reply on April 4, 2008, see docket numbers 136 and 141.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 3 -

21343\1713285.1

### 1.   Reasonable Range Of Alternatives

The most fundamental requirement underpinning NEPA is that an agency consider a full range of reasonable alternatives for the action proposed in preparing either an EA or EIS. *City of Carmel-by-the-Sea v. United States Dep't of Transp.*, 123 F.3d 1142, 1155 (9th Cir. 1997); *CBD II*, 422 F.Supp.2d at 1158-59. Because the consideration of an appropriate range of alternatives is so important to the NEPA process, "[t]he existence of reasonable but unexamined alternatives renders an EIS inadequate." *'Ilio'Ulaokalani Coalition v. Rumsfeld*, 464 F.3d 1083, 1095 (9th Cir. 2006). Here, with respect to ORV route designations, every action alternative considered by BLM in the 2003 EA and in the 2005 EIS left open the same 5,000-plus miles of ORV routes.

### 2.   Environmental Baseline/Environmental Setting

In order to properly analyze the environmental impacts of a project, it is essential that the agency describe the environmental baseline from which the impacts will be measured and evaluated. *Am. Rivers v. Fed. Energy Regulatory Comm'n*, 201 F.3d 1186, 1195 & n.15 (9th Cir. 1999). "Without establishing ... baseline conditions ... there is simply no way to determine what effect [an action] will have on the environment and, consequently, no way to comply with NEPA." *Half Moon Bay Fishermans' Mktg. Ass'n v. Carlucci,* 857 F.2d 505, 510 (9th Cir. 1988). This court, as well as others, have consistently held that "the environmental baseline is an integral part of an EIS," and emphasized the importance of ensuring that the baseline is fully defined, accurate and complete. *Am. Rivers*, 201 F.3d at 1195 & n.15; *CBD II*, 422 F.Supp.2d at 1163. BLM's NEPA documents never identified a baseline and, instead, effectively relied on a baseline that incorporated literally thousands of miles of ORV routes illegally created by third parties.

### 3.   Duty To Use Accurate Information

The NEPA process cannot inform agencies and the public on environmental choices unless the action agency presents accurate information and, in the event accurate information is missing or not available, acknowledges that fact. 40 C.F.R. §§ 1502.24, 1502.22. As the Ninth Circuit explained, when "the information in the . . . EIS was so incomplete or misleading that the decisionmaker and the public could not make an informed comparison of the alternatives, revision of an EIS may be necessary to provide 'a reasonable, good faith, and objective presentation of the

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 4 -

21343\1713285.1

1  subjects required by NEPA.'" *Animal Def. Council v. Hodel,* 840 F.2d 1432, 1439 (9th Cir.

2  1988).  In addition, the agency may not base its conclusions regarding environmental impacts on

3  its unsupported "professional opinion." *Idaho Sporting Cong. v. Thomas,* 137 F.3d 1146, 1150

4  (9th Cir. 1998).  Rather, those conclusions must be based on factual support in the record.  *Id.*  As

5  explained below, in conducting its NEPA review of the WEMO Plan, BLM failed to present

6  accurate information regarding many of the most critical impacts resulting from route designations

7  and the other activities authorized under the Plan.  In other instances, BLM simply assumed –

8  without explanation or factual support in the record – that the proposed action would not cause, or

9  in fact would prevent, adverse environmental impacts.

10       The Ninth Circuit's recent decision in *Land Council v. McNair* did not meaningfully alter

11  the agency's duty to use accurate information under NEPA.  __ F.3d __, 2008 WL 2640001 (9th

12  Cir. July 2, 2008).  The court held that it was required to be "most deferential" when examining

13  the reliability or significance of scientific reports upon which the agency relied, and that the court

14  was not empowered to impose procedural requirements not enumerated in the statutes. *Id.* at 9-10.

15  The court did not change the requirement that an agency provide support for its decisions through

16  citations to reports or other documents in the record, or that it "explain the conclusions it has

17  drawn from its chosen methodology." *Id.* at 10.  It simply clarified that it is not the role of the

18  court to override the scientific judgment of the agency, so long as the proper supporting reasons

19  are provided by the agency as documented in the administrative record.  *Id.*

20       **III.    FACTUAL AND PROCEDURAL BACKGROUND**

21  **A.    The Western Mojave Bioregion And The Resources Affected**

22       BLM's adoption of the West Mojave Plan amendment ("WEMO Plan") to the CDCA Plan

23  on March 13, 2006, is part of a broader BLM planning effort for seven sub-regions within the

24  CDCA, including the Western Mojave desert bioregion.  *AR*-201670, 87-88.  The Western

25  Mojave planning area contains a panoply of sensitive resources, including the desert tortoise, as

26  well as over a dozen other species listed as threatened, endangered or sensitive under state and

27  federal laws, special plant groupings, riparian resources, and fragile and easily eroded desert soils.

28  *AR*-201960, 67; 202114-25; 202232.  The Western Mojave also includes thousands of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION OF THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 5 -

21343\1713285.1

1  archaeological sites, historic areas and other cultural resources.  *AR*-202209-23.  All of these

2  resources are at serious risk from ongoing ORV damage and destruction pursuant to the WEMO

3  Plan adopted by BLM.

4  These resources are also at risk from livestock grazing.  Livestock can trample and kill

5  desert tortoise, crush burrows, reduce native herbaceous forage and degrade soils.  Livestock

6  directly compete with desert tortoise for native plant forage with the highest nutritional value,

7  which is particularly important to young tortoise.  *See AR*-14848-51, 205067-79 (Appendix J);

8  *WEMO Supp ITS AR*-00494-95; *AR*-200117, 200182.  Livestock grazing also causes significant

9  damage to riparian resources wetlands, and soils, and degrades water quality.  *See, e.g., AR*-

10  202235.

11  **B.      BLM's Route Designations And Management Of The Western Mojave Area Prior**

12  **To 2001**

13  **1.      The CDCA Plan And ORV Routes**

14  In September 1980, BLM published a land management plan for the CDCA which

15  recognized ORV route designations as a critical management issue.  Among other provisions, the

16  plan provided for designation of three types of areas: "closed" (no ORV use), "open" (ORV use

17  anywhere) or "limited" (ORV use only allowed on designated routes of travel).  *AR*-222004-05;

18  *AR*-211389.  The route designations at issue in this case were made in areas designated for

19  "limited" vehicle use.[3]

20  The original intent of the CDCA Plan was that, consistent with the legal obligation to

21  minimize ORV route impacts to public lands resources, the creation of new routes in areas

22  classified as "limited" would be banned.  The section of the Plan titled "Motorized Vehicle

23  Element" provides that in limited areas, "[a]t the minimum vehicle use will be *restricted to*

24  *existing routes of travel . . .*" *AR*-222005 (emphasis supplied).  The CDCA Plan defines "existing

---

[3] The CDCA plan – somewhat confusingly – contains three different uses of the term "limited."
First, there is a Multiple Use Class L for "Limited Use", which is an area managed for low
intensity uses.  *AR*-221941.  Next, there are "Limited Areas" which can exist in different Multiple
Use Classes, this is an area only open to ORV use on designated routes.  *AR*-222004-05.  Finally
within "Limited Areas" the plan provides for "Limited Routes", in addition to "Open" and
"Closed", which are those only open for specific users or uses. *AR*-222005-06.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 6 -

21343\1713285.1

routes" as "a route established before approval of the Desert Plan in 1980, with a minimum width of two feet, showing significant surface evidence of prior vehicle use or, for washes, history of prior use." *Id.* This limitation has never been removed from the CDCA Plan, and remains in effect today.

### 2.    1985-87 Route Designations And ACEC Route Designations

Between 1985 and 1987, BLM undertook an initial set of route designations in the Western Mojave. As far as the record shows, no NEPA analysis was performed on the 1985-87 route designations, and the route designations were never incorporated into the CDCA Plan. At various times in the 1980s and 1990s, BLM also undertook ORV route designations in Areas of Critical Environmental Concern ("ACEC") in the Western Mojave. *AR*-201825, *AR*-222028 (describing ACECs and their function). Many of the 1985-87 and ACEC route designations were incorporated into the WEMO Plan route designations at issue here without further review. *See, e.g., AR*-201830-31 (table setting out route designation planning units, and text noting which units were re-evaluated). Despite the route designations in the 80s and 90s, and the explicit obligation in the CDCA Plan to limit ORV use to routes in existence in 1980, illegal ORV routes within the Western Mojave have grown and proliferated. *See, e.g.*, *AR*-202203-204 (table indicating increase in routes in specific subregions between 1985-87 and 2001). BLM's environmental analysis nonetheless often treats all of these illegally created routes as if they were designated by BLM through the required CDCA planning process.

### 3.    Ord Mountain And "Box" Route Designation Efforts

For its more recent route designation effort, BLM subdivided the Western Mojave into ORV route designation planning units, including 21 ORV "subregions." *AR*-201829. In the late 1990s, BLM first began a review of ORV routes in the Ord Mountain subregion and then expanded the review to more areas in the so-called "Box" effort. *AR*-221195, 221204, 240696. These route designations considered numerous "resource attributes" including: "existing and anticipated regional vehicle use/camping patterns; site-specific considerations for cultural, wildlife, botany, law enforcement and recreation concerns, San Bernardino and private landowner concerns, the degree of natural re-vegetation occurring on low-use routes; and the feasibility of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION OF 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 7 -

21343\1713285.1

1    route reclamation of specific route segments." *AR*-221208, 240696.

2    **4.    The 2001 Field Surveys And The "Redesign Areas"**

3    In early 2001, BLM retained the consulting firm of CH2M Hill to prepare ORV subregion

4    reports for the network proposed by BLM staff through the "Box" effort. *AR*-217231-33. When

5    the route designations compiled through the "Box" effort were released to the public, however,

6    ORV advocates objected to BLM's limiting open routes, claiming that the underlying information

7    was inaccurate and the route designations were too narrow. *See AR*-217231, 217232; *AR*-219288.

8    BLM then had CH2M Hill perform a "Motorized Vehicle Access Network Field Survey" in

9    eleven of the ORV subregions, which were chosen based primarily upon desert tortoise or

10   sensitive species concerns, and are referred to as the "redesign areas." *AR*-201681, 201832.

11   BLM also subdivided these eleven subregions into "Motorized Access Zones" ("MAZs"). *AR*-

12   201832.

13   BLM again retained CH2M Hill and a subcontractor named Les Weeks, operating as

14   Advanced Resource Solutions, Inc., to conduct surveys of the eleven redesign areas using field

15   crews. *See, e.g., AR*-219224-25, 211385, 217231; *SAR2*-305547, 305549. Field crews were

16   composed of ORV "guides" (persons from ORV advocacy groups, rock hounds, hunters, etc.) and

17   a surveyor who "identified" some route attributes. *SAR2*-305299-Sup2; *AR*-219288; *AR*-217293.[4]

18   "The nature of the routes was recorded (single track, graded dirt, etc.) as were pertinent recreation

19   venues (Staging areas, campgrounds, etc) and sites of commercial importance." *AR*-206773.

20   Unlike the Ord Mountain and Box surveys, these efforts did not include environmental, cultural

21   or other non-recreation attributes. *See, e.g., SAR3*-320433-Public; *AR*-211385.

22   **5.    ORV Route Designation By The "Decision Tree"**

23   To determine which routes would be designated "open" or "closed," BLM contractor Les

24   Weeks prepared a flow chart called the "Decision Tree." *See SAR*-300701-Priv to Pub; *SAR*-

25   300775-77-Priv to Pub. This flow chart contains "pathways," each ultimately directing whether a

26

27   [4] Attachment to email from Les Weeks to Bill Haigh, July 22, 2002, *SAR2*-312876 (Les Weeks notes "don't forget that each team generally included a person interested in motorized access and certainly would no more under-represent motorized routes than they would over-represent!").

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 8 -

21343\1713285.1

1   route should be "open" or "closed." *AR*-211559-60.  At the end of each pathway is an

2   alphanumeric code which is supposed to show the pathway that was followed, such as PO-1, SC-

3   5, SO-1, etc.[5]  *Id.*  The various pathways in the Decision Tree contain nine different questions

4   about the route.  These questions address only whether the route provides access of some kind,

5   possesses recreational value and whether it impacts sensitive species or habitat.  There is no

6   consideration of water, soils, or other public lands resources such as cultural resources, as is

7   required by 43 C.F.R. § 8342.1-2, in the main Decision Tree or its footnotes.  According to BLM,

8   application of the Decision Tree using the information collected by the 2001 route inventory is

9   the sole basis for the agency's designation decisions on 5,200 ORV routes in the eleven redesign

10  areas.  *See AR*-219288; 216272.

11  **C.    The 2003 Route Designation And EA**

12          On June 4, 2003, BLM issued its Environmental Assessment ("2003 EA") with the

13  proposed route designations based on the Decision Tree.  *AR*-207432-35.  The proposed route

14  designations included new networks for the eleven redesign areas and adopted, with minor

15  modifications, the existing 1985-87 designations and ACEC route designations in all other areas.

16  According to BLM, the factual rationale supporting the designations in the redesign area were

17  wholly contained in a table in Appendix C to the 2003 EA, in which every route in the redesign

18  area is assigned one of the route signifiers from the Decision Tree. *AR*-211585-725.   Members of

19  the public, including Plaintiffs, and responsible agencies provided comments. *See, e.g., AR*-

20  211128; *AR*-210914; *AR*-210885.[6]  Protests were filed challenging the adoption of the route

21  designation including protests from Plaintiff organizations and members. *AR*-207306-07; *AR*-

22  207308-24; *AR*-207361-68; *AR*-206572-76.  On June 30, 2003, BLM adopted a decision record

23  approving the route designations and dismissed the protests. *AR*-206756; *AR*-206512-709.

24  _____

25  [5] These signifiers can be found in the "bubble" stating whether to "Open" or "Close" the route.  In the Route Designation Table, each route is identified as open or closed with the signifier so that the exact path can be followed.  *Id.*

26  [6] There is no serious question that Plaintiffs have standing to bring this action.  *See* Declarations

27  of Ileene Anderson, Elden Hughes, Karen Schambach, Steve Tabor, Jenny Wilder, Philip Klasky, Tom Budlong, Doug Parham and David Van Voorhis filed on February 8, 2008, docket numbers

28  117-120 and 124-128. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333 (1977).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI                    - 9 -                    21343\1713285.1

**D.     The WEMO Plan Amendment, FEIS, And 2005 Route Designations**

On June 3, 2003, BLM issued the notice of availability for the Draft Environmental

Impact Report ("EIR") / Environmental Impact Statement ("EIS") for the West Mojave Plan

amendments to the CDCA Plan.  *AR*-207444.[7]  This Draft EIR/EIS analyzed several plan

amendments and a proposed planning area wide Habitat Conservation Plan for multiple

threatened and endangered species, and at least purported to analyze the effects of incorporating

the 2003 route designations, with some minor modifications, into the WEMO Plan.  The Plan also

continued livestock grazing on 141,757 acres of designated critical habitat on public lands,[8]

*WEMO Supp ITS AR*-00812, and on over 646,000 acres of additional habitat occupied by the

threatened desert tortoise.  *WEMO AR BO*-14872.  Members of the public, including Plaintiffs,

submitted extensive comments on the Draft EIR/EIS.  *See, e.g. AR*-203065-203111; *AR*-203112-

203145; *AR*-203146-203185; *AR*-203186-203233; *AR*-203282-203354.

In April 2004, BLM issued the notice of availability for the combined plan amendment

and Final EIR/EIS for the West Mojave Plan amendment ("FEIS").  *AR*-201120.  Plaintiffs' staff

and members submitted protests. *SAR*-300244-300629.  On March 13, 2006, BLM signed the

ROD for the WEMO Plan amendment.  *AR*-200044-66.  BLM adopted Alternative B - the BLM

Only alternative - of the proposed WEMO Plan amendment with minor changes, approved the

WEMO Final EIS, and dismissed all protests. *Id.; SAR*-300000-300243 (responses to protests).[9]

**IV.     STANDARD FOR SUMMARY JUDGMENT AND APA STANDARD OF REVIEW**

A court shall render summary judgment when no genuine issue as to any material fact

exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);

---

[7] This unusual method of proceeding, with two separate overlapping NEPA reviews of very
similar route designations seems to have been an artifact of the proceedings in previous CDCA
litigation.

[8]*WEMO Supp ITS AR*-00812 (495 acres Valley Well); *WEMO AR BO*-14860 (6,196 acres Cantil
Common); 14862 (429 acres Johnson Valley); 14863 (2,165 acres Lava Mountain); 14864
(107,961 acres Ord Mountain); 14867 (596 acres Shadow Mountain). This is a correction from
the WEMO Biological Opinion ("BO") and FEIS which ignored over 8,000 acres of authorized
grazing in critical habitat. *WEMO AR BO*-14873.

[9] Plaintiffs are herein challenging both the 2003 EA and the 2006 EIS and the Decision Record
and ROD based upon them.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 10 -

21343\1713285.1

1   *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993).

2       This court reviews an agency's substantive actions under FLPMA or NEPA pursuant to

3   the judicial review standards of the APA, 5 U.S.C. §§ 701, *et seq. See CBD II,* 422 F.Supp.2d at

4   1126.  Pursuant to Section 706(2)(A), this Court must hold unlawful any agency action, findings

5   and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

6   accordance with law." *Id*. at § 706(2)(A).  In following the relevant law, an agency must comply

7   with applicable statutory guidance, its own regulations and binding EOs.  *Conservation Law*

8   *Foundation*, 590 F.Supp. at 1477.  In applying that law, "the agency must examine the relevant

9   data and articulate a satisfactory explanation for its action including a 'rational connection

10  between the facts found and the choice made.'" *Motor Vehicle Mfr.'s Ass'n,* 463 U.S. 29, 43

11  (1983).

12      In analyzing an agency's decision under the APA, the Court "may not supply a reasoned

13  basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp*., 332

14  U.S. 194, 196 (1947).  In *Lands Council*, the Ninth Circuit recently reaffirmed that the agency

15  "must support its conclusions that a project meets the requirements [of the relevant statute and

16  regulations] with studies that the agency, in its expertise, deems reliable."  2008 WL 2640001 at

17  *10.  The court must "look to the evidence" the agency "has provided to support its conclusions,

18  along with other materials in the record" to ensure that the agency did not overlook any relevant

19  factors or make any clear errors of judgment.  *Id.* at 9-10 (*citing Motor Vehicle Mfrs. Assn. Inc.,*

20  463 U.S. at 43).

21      While the agency's decision is entitled to deference, "[t]he deference a court must accord

22  an agency's scientific . . . expertise is not unlimited."  *Defenders of Wildlife v. Babbitt*, 958 F.

23  Supp. 670, 679 (D.D.C. 1997). The presumption of an agency's expertise in a particular area may

24  be rebutted if the agency has not supported its conclusions with studies it deems reliable, "if its

25  decisions, even though based on scientific expertise, are not reasoned", or if it has not explained

26  the conclusions it drew from that evidence. *Id.*; *Lands Council*, 2008 WL 2640001 at 10.

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI                    - 11 -                                    21343\1713285.1

1

## V.     ARGUMENT

2

**A.     BLM Violated FLPMA, Executive Orders And Its Own Regulations In Adopting The WEMO Plan**

3

4

      **1.     BLM's "Decision Tree" Route Designation Process Failed To Analyze And Consider The Legally Required Factors And Instead Elevated Consideration Of Motorized Vehicle Access Over All Other Resources**

5

6

      FLPMA, BLM's implementing regulations, and the EOs mandate that designation of

7

ORV routes *shall* be based on minimization of (1) damage to soil, watershed, vegetation, air and

8

other public lands resources; (2) harassment of wildlife or significant disruption of wildlife

9

habitats; and (3) conflicts between ORV uses and other recreational uses and compatibility with

10

existing populated areas taking into account noise. 43 U.S.C. § 1732(b); 43 C.F.R. § 8342.1(a)-

11

(c); EO 11,644 and 11,989.

12

      BLM violated this standard in two separate ways in designating ORV routes in the

13

Western Mojave using the Decision Tree. First, BLM failed to base its decision on all of the

14

mandatory "minimization" factors required under Section 8342.1. Second, BLM elevated the

15

consideration of motorized vehicle access over all other resources, in direct contravention of its

16

statutory and regulatory mandate. These failures by BLM resulted in a flawed decisional process

17

directly contrary to law.

18

      **a.     BLM Failed To Base Its Decision on the "Minimization" Factors Expressly Required By 43 C.F.R. § 8342.1.**

19

20

      Even a cursory review of BLM's Decision Tree flowchart demonstrates that BLM flatly

21

disregarded any analysis of the resource attributes and minimization of impacts required by its

22

regulations. *AR*-211559. There is not a single pathway question in the Decision Tree that

23

addresses a route's minimization of damage to soil, watersheds, vegetation, air or other resources.

24

In fact, the word "minimize" only appears in the context of assessing whether an alternate route

25

for commercial or private uses might "avoid or minimize" effects on the "occupied habitat of

26

sensitive species." *Id.* (Question 11). The Decision Tree fails to consider the minimization of

27

conflicts between ORV uses and other recreational uses and compatibility with existing populated

28

areas. The word "noise" does not appear anywhere in the Decision Tree, nor does it ask if routes

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 12 -

21343\1713285.1

1  dead-end into private land, or otherwise lead to circumstances where conflicts with private

2  landowners might arise.

3       The exclusion of the mandatory minimization factors is readily demonstrated by following

4  any of the route designations pathways in the Decision Tree.  For example, as shown in attached

5  *Figure 1* the pathway leading to a decision that a route remain open with a "PO-1" designation

6  contains, in its entirety, ***only two questions***.  *AR*-211559.  The first question asked is if the

7  relevant route is "a commercial right-of-way, officially recognized or maintained or serve [sic] as

8  a regional route that serves more than on [sic] sub-region or represents a principal means of

9  connectivity within a sub-region?" (Question 1).  If the answer is yes, then the second question is

10 whether the route impacts "sensitive species or occupied habitat of sensitive species?" (Question

11 2).  If the answer is no, then the route is designated open (Open PO-1 *1).  *Id.*   This is the

12 complete and entire analysis conducted by BLM under the Decision Tree prior to opening a route

13 with this designation – there is ***no*** consideration of any other factors as required under Sections

14 8341.2 or 8342.1.  43 C.F.R.§§ 8341.2, 8342.1.  Ninety-nine (99) routes were designated as open

15 using this pathway leading to a "PO-1" designation.  *AR*-211584-1725 (2003 EA Appendix C);

16 *see also AR*-219288 (describing Decision Tree as "a method of scoring routes based on recreation

17 attributes and biological factors"); *AR*-211385 (explaining that the inventory data together with

18 the biological data was used to create the network.).

19      The lengthier pathways in the Decision Tree ask additional questions, but none provide

20 for consideration or minimization of impacts to the resources such as soils, air, water or other

21 public lands resources such as cultural resources.  Nor do they consider conflicts with other uses

22 (such as grazing, quiet recreation, or nearby residential areas) as required by the regulations.  43

23 C.F.R. §§ 8342.1(a); 8342.1; *see also AMA v. Watt,* 543 F. Supp. at 797; *Morton*, 393 F.Supp. at

24 1292.[10]   For example, the 2003 EA and the FEIS both state that damage to cultural resources

---

[10]  With the exception of *Morton, supra* and *AMA v. Watt, supra*, the other cases considering
ORV route designation generally consider very specific, "as applied" challenges to the route
designation process.  *Sierra Club v. Clark*, 774 F.2d 1406 (9th Cir. 1985) (finding proper exercise
of agency discretion in allowing off-road motorcycle race on course through the CDCA lands);
*Conservation Law Foundation v. Secretary of the Interior*, 864 F.2d 954 (1989) (deferring to
agency's factual conclusions without discussing whether full consideration were given to
elements required by the EOs).  Here, the Decision Tree alone shows that the agency did not

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 13 -

21343\1713285.1

from routes is in many cases severe.  *E.g.*, *AR*-211547 ("In some areas, impacts from existing routes are severe and significant resources are being degraded or completely lost."); *AR*-211516-17.  BLM even identifies a number of open routes that are directly damaging irreplaceable cultural and archaeological resources, or are adjacent to historic sites.  *AR*-211517-21.  Yet there is no discussion at all of why allowing ORV use trumps protection of these irreplaceable resources.  BLM clearly states that the alphanumeric codes contained in the Decision Tree enable the public to know the exact reasons why each route was opened or closed and what was considered in coming to that conclusion, and the record provides no evidence of other consideration outside of what is shown in the Decision Tree and supporting Table.  *See, e.g. AR*-219288; *AR*-216272.

Even where it considers impacts to species and habitat, the Decision Tree uses criteria at odds with the minimization mandate, seeking to "reduce impacts" instead of the stronger "minimize" standard set out in the regulations.  *AR*-211559 (Question 2).

BLM may argue that it considered minimization of impacts regardless of the language of the Decision Tree.  The asterisk next to PO-1 (and all other signifiers except PC-1) refers to a Decision Tree footnote which asks whether there are any "special circumstances that would warrant reconsideration?"  *AR*-211560.  The footnote lists some specific considerations, but again does not require any inquiry into impacts to air quality, the watershed, other public lands resources such as cultural resources, etc.  Furthermore, it asks about the environmental *benefits* of a route, not the possible environmental detriment that could be caused by the route.

Moreover, even if BLM identified that such "special circumstances" exist for a route, neither the Decision Tree nor the supporting decisional documents explain how BLM considered them or whether any route designations were changed after their consideration.  The RODs[11] that were prepared for the Decision Tree designations include space for "specific comments/special

consider all the relevant factors, and therefore that its decision was not in accordance with law and that the questions posed in this case are similar in posture to those raised in *AMA v. Watt*. 543 F.Supp. at 797.

[11] A separate ROD was prepared for each route, the results of each ROD is entered into the Route Designation Access Table, although the summary was occasionally cleaned up or given cosmetic edits.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 14 -

21343\1713285.1

1    circumstances" where the answers to the question in the footnote were to be recorded.  *See, e.g.,*

2    *AR*-211907-79; *AR*-213568-99; *AR*-215818-888.  A review of the RODs for each route and the

3    Route Designation Access Table demonstrates that the information included in this section

4    virtually never includes any mention of anything outside of recreational values and occasional

5    references to species prevalence and type of habitat - all items already addressed by the main

6    branches of the Tree.  *Id.*

7      The record confirms that the Decision Tree flowchart was not intended to consider, and

8    did not require BLM to consider, impacts to public lands resources other than sensitive species

9    and their habitat.  According to BLM's own records, biological and habitat information was the

10   *only* non-recreational resource information which was considered in making the route

11   designations and that information was focused primarily on the threatened desert tortoise.

12       b.  **BLM's Decision Tree Improperly Elevated Consideration Of
       Motorized Access Over All Other Factors.**

13

14     The structure of the Decision Tree conflicts with FLPMA, BLM's regulations and the EOs

15   by granting preference to motorized access over any other resource.   The pathways in the

16   Decision Tree show that whenever a route provides a motorized recreational opportunity that is

17   not provided in some other location in the same MAZ, it will receive an "open" designation

18   regardless of the impacts on sensitive species or habitat.  For example, following pathway SO-5,

19   highlighted in attached Figure 2, shows that even if a route is not a principal route (Question 1),

20   does not provide commercial, administrative or private land access (Question 3), and closing it is

21   "likely to lead to increased conservation of sensitive species" (Question 6), it will not be closed if

22   it also contributes to recreational opportunities and those same opportunities are not provided

23   elsewhere in the MAZ (Questions 9 and 13).  *AR*-211559.  The Route Designation Access Table

24   shows that 638 routes were left open under pathway SO-5.  *AR*-211584-1725.

25     The EOs and the agency's own regulations were designed such that the impacts to species

26   and their habitats (and the many other important ecological and cultural resources the Decision

27   Tree ignores) were to be minimized.  EO 11,644 (1974); 43 C.F.R. § 8342.1.  There is no similar

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION OF THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 15 -

21343\1713285.1

1    requirement that recreational opportunity must be maximized, nor is there any requirement that

2    each and every MAZ[12] must have recreational opportunities of every type.

3         As the discussion above shows, the Decision Tree has the same flaws as the route

4    designation criteria invalidated by Judge Tashima in *AMA v. Watt,* as well as some additional

5    ones.  543 F. Supp. at 797.  The court found that the five criteria used were "presented in such a

6    manner so as to appear to be the exclusive standard pursuant to which route designation decisions

7    are to be made," and did not explicitly prohibit route designation in any defined situation and,

8    thus, "would permit agency officials to make route designations without the minimization of

9    environmental impacts and conflicts between uses expressly required by 43 C.F.R. § 8342.1."

10   *Id.; see Morton*, 393 F. Supp. at 1295.  Here, as in *AMA v. Watt*, the Decision Tree was used as

11   the exclusive standard for route designations, and allows – indeed, requires – designation of

12   routes without considering other public lands resources and minimizing impacts to them.

13        BLM has committed a clear error of judgment at the outset by failing to consider the

14   elements it was required to by law, and by using a standard that is in violation of its own

15   regulations.  While an agency's interpretation of its own regulations is entitled to deference, its

16   interpretation does not control where it is plainly inconsistent with the regulations.  *ONRCF v.*

17   *Brong*, 492 F.3d 1120, 1125, 1127 (9th Cir. 2007) (finding that where BLM guidelines are

18   inconsistent with the regulation's clear direction the agency action must be overturned);

19   *Confederated Tribes & Bands of Yakima Indian Nation v. F.E.R.C.*, 746 F.2d 466, 474 (9th Cir.

20   1984) ("It is a well known maxim that agencies must comply with their own regulations.").  This

21   alone is a sufficient basis to invalidate the route designations.

22

23        **2.    The Decision Tree Route Designations Are Not Supported By The Evidence
             Contained In The Administrative Record.**

24        According to BLM, all of the 5,200 route decisions in the eleven redesign areas were

25   based on the contractor's "Decision Tree" and the entirety of the reasons for the designations

26   were contained in a table in Appendix C to the 2003 EA.  *AR*-211584-1725.  However, for most

27   ───────────────
28   [12] The MAZs were created to make it easier to keep track of routes in the sub-regions, they do not
     contain any particular geographic or legal significance on their own.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 16 -

21343\1713285.1

1    routes left open, this table contains no information regarding the public lands resources on the

2    route, or how impacts to those resources are minimized.  There certainly were impacts on other

3    public lands resources to be considered.  43 C.F.R. §§ 8341.2 & 8342.1-2.  However, it is difficult

4    to tell what resources were considered or how their consideration effected the decision to decide

5    that a route would be open because the explanations for open designations in the table are cryptic.

6    As a specific example, route RM 2032 in the Red Mountain area remains open under an SO 7

7    designation, but the note for this route in Appendix C states "Leads to national register district

8    w/sensitive cultural resource- rd is dead end.  Adequate access provided on Wside of ACEC."

9    AR-211681 (the route number is cut off in the table, it is the fourth item on that page). The failure

10   to sufficiently incorporate consideration of these resources violates both the duty to minimize the

11   impact to these resources under 43 C.F.R. §§ 8341.2 and 8342.1-2, and BLM's duty under

12   FLPMA to prepare and maintain an inventory of those resources to be used as the basis for its

13   land use decisions.  43 U.S.C. § 1711(a); 43 U.S.C. § 1701(a)(2).

14        Even for impacts to sensitive species and habitats – the only relevant environmental

15   impact that is explicitly addressed in the Decision Tree – the record contains no reasoned analysis

16   of the likely direct, indirect, and cumulative impacts on these resources from designation of

17   specific routes.  When challenged regarding the failure "to analyze 'on-the-ground' impacts for

18   each route" (*AR*-207306), BLM responded that: "Impacts of the motorized vehicle access network

19   were intentionally assessed on a species-by-species basis rather than route-by-route . . . .  This

20   approach provides a more complete analysis of the effects of the network on plants and

21   ecosystems than could be accomplished through a relatively segmented route-by-route analysis."

22   *AR*-206592.  In discussing the failure to assess impacts to Unusual Plant Assemblages ("UPAs")

23   on a case by case basis, BLM states that "the EA addresses impacts of route designation on a

24   regional, rather than site-specific basis." *Id*. Yet this supposedly more comprehensive analysis is

25   not reflected anywhere in the record.  Given the number of routes designated and the short time

26   allotted to apply the Decision Tree methodology to designating the routes, it is not surprising that

27   the record contains no evidence of meaningful route-by-route analysis.  *SAR3*- 320265-Public.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI                    - 17 -                    21343\1713285.1

One of the most basic principles of administrative law is that "the agency must examine the relevant data and *articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Motor Vehicle Mfr. Ass'n,* 463 U.S. at 43 (emphasis added); *Lands Council*, 2008 WL 2640001, *10 (holding that the agency "must explain the conclusions it has drown from its chosen methodology, and the reasons it considers the underlying evidence to be reliable."). That requirement is clearly missing here because there is no consideration of the resources BLM is legally required to consider, and if those resources were considered elsewhere there is no evidence of it in the record.

**3.** **There Is No Support In The Record For The Route Designations In Areas Not Evaluated Using The Decision Tree**

The 2006 ROD amends the CDCA plan to open 2,671 miles of routes in the non-redesign areas, amending the plan to include additional route designations that were done in 1980 and in 1985-87. *AR*-201825-26. BLM staff admitted that these routes had not previously been adopted as plan amendments and required NEPA compliance. *AR*-212228. The inventory of these routes was done over 20 years previously, and there is no doubt that conditions on the ground have changed. There is no discussion in the ROD or the EIS which explains whether BLM made any effort to evaluate these route designations pursuant to NEPA or to adopt them as part of the plan in compliance with the EOs or the regulations. The EIS makes a blanket statement that "Lands outside the redesign area were reviewed to ensure that they were compatible with the West Mojave Plan's conservation strategy and were in compliance with the federal regulations (specifically, 43 C.F.R. 8342)." *AR*-201842. This, however, is all that is said about the manner in which those designations were made, what resources were considered, or whether they will minimize the impact to the environmental and cultural resources of the public lands. Because BLM proposed to adopt these routes as an amendment to the CDCA plan, BLM was required to fully comply with NEPA and other applicable laws including providing for public involvement, and interagency coordination. *See AR*-201855. Again, the agency has failed to "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfr's Ass'n,* 463 U.S. at 43.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 18 -

21343\1713285.1

4.      **The Route Designations Are Also Arbitrary And Capricious Because The Record Fails To Provide A Reasoned Explanation For Ignoring The Ban On Post-1980 Routes In The CDCA Plan**

The 1980 CDCA Plan mandated and still mandates that ORV routes in Limited areas were, *at a minimum*, to be "restricted to existing routes of travel." *AR*-222005. The Plan defines "existing routes" as "a route established before approval of the Desert Plan in 1980, with a minimum width of two feet, showing significant surface evidence of prior vehicle use or, for washes, history of prior use." *Id.* Although this requirement was plainly and repeatedly identified to the agency by its own employees and project advisers, (*see, e.g.*, *AR*-211762-64; *AR*-211305; *AR*-218897; *SAR2*-305745-Sup2), there is no reference to it in any of the decision documents. It is possible that BLM believed that it could avoid this requirement by simply amending the CDCA plan to recognize additional routes. *See, e.g.*, *AR*-211762. In fact, BLM left the 1980 baseline requirement in the plan. As a matter of basic administrative law, if BLM wished to amend the plan to remove this requirement, it would have had to do so explicitly, and explain on the record (1) why legitimizing hundreds, if not thousands, of illegally created routes, was necessary, and (2) how legitimizing these illegal routes could be squared with its obligations under FLPMA and the regulations to minimize impacts to other resources. *Gen. Chem. Corp. v. United States*, 817 F.2d 844, 857 (D.C. Cir. 1987) (finding agency action "arbitrary and capricious" because it was "internally inconsistent and inadequately explained"); *NSK Ltd. v. United States*, 390 F.3d 1352, 1357-58 (Fed. Cir. 2004) (holding that an inadequately explained inconsistency rendered the decision arbitrary and capricious). The BLM employee overseeing the route designation process recognized that any departure from this provision of the 1980 Plan would require an explanation on the record. *See, e.g.*, *AR*-211762; *AR*-211305; *SAR2*-305743–45-Sup2. The record contains no such explanation, and the route designation is therefore arbitrary and capricious.

B.      **Violations Of The National Environmental Policy Act**

1.      **BLM Failed To Consider A Reasonable Range Of Alternatives**

The CEQ regulations require that the agency "rigorously explore and objectively evaluate all reasonable alternatives, and for alternatives which were eliminated from detailed study, briefly discuss the reasons for their having been eliminated." 40 C.F.R. § 1502.14(a). The choice of

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR SUMMARY ADJUDICATION ON THE 1ST & 2ND CLAIMS FOR RELIEF AND REVISED MPA ISO MOTION, CASE NO. 3:06 CV 04884 SI

- 19 -

21343\1713285.1

1  alternatives is in part informed by the agency's statutory mandates.  While, an agency is not

2  required to "consider every possible alternative to a proposed action, nor must it consider

3  alternatives that are unlikely to be implemented or those inconsistent with its basic policy

4  objectives," *Seattle Audubon Society v. Moseley*, 80 F.3d 1401, 1404 (9th Cir. 1996), it is

5  arbitrary and capricious to fail to consider an alternative more consistent with the agency's basic

6  policy objectives than the ones chosen.  *Id.*

7  　　　The reasonableness of an alternative is also measured against the purpose of the proposed

8  action. *See, e.g.*, *CBD II,* 422 F. Supp.2d at 1159.  In this case the EA & the EIS clearly

9  acknowledge that the minimization mandate is one of the criteria that must be met.  *AR*-211392;

10  *AR*-201828.  If the purpose and need of the action is, as it clearly must be, to designate routes that

11  meet the statutory and regulatory criteria, then considering alternatives resulting in a network

12  more protective of all public lands resources is not just reasonable but necessary for an informed

13  decision.

14  　　　Remarkably, in the West Mojave Plan FEIS, the BLM did not consider a single alternative

15  that would have designated fewer or shorter routes, or closed additional areas to ORVs in order to

16  protect soils or other public lands resources such as cultural resources.  All six alternatives

17  considered in the FEIS consider exactly the same 5,098 miles of designated ORV routes set out in

18  Alternative A, the BLM's preferred alternative.  *AR*-201843 (Alternative A designates 5,098

19  miles of routes); *AR*-201891 (Alternative B, the "BLM Lands Only" alternative uses same route

20  network as A); *AR*-201897(Alternative C, labeled the "Tortoise Recovery Plan" uses same routes

21  as A); *AR*-201903-04 (Alternative D, "Enhanced Ecosystem Protection", considers exactly the

22  same designations as A but restricts certain areas to "street legal" vehicles); *AR*-201905-06

23  (Alternative E uses the same designations as A, but would allow several more open areas for

24  ORVs); *AR*-201908 (Alternative F uses the same designations as A, but focuses on disease and

25  raven management for desert tortoise protection).  The No Action alternative in the FEIS is

26  simply the route designations analyzed in the 2003 EA, which again uses essentially the same

27  routes as every other alternative, with minor modifications.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 20 -

21343\1713285.1

1    The three action alternatives in the 2003 EA also incorporate exactly the same open and

2  closed route designations as Alternative A.  *AR*-211413-16.   The only alternative with a reduced

3  route network that BLM considered in the EA was the No Action alternative of maintaining the

4  prior 1985-87 and ACEC designations.  *AR*-211415.

5    The Ninth Circuit recently held that a virtually identical approach to analyzing alternatives

6  used by BLM violated NEPA's alternatives requirement.   In *ONDA v. BLM*, the BLM had

7  adopted an EIS in which no alternative closed any significant area to ORV's and argued, as it

8  does here, that it was sufficient to consider a "wide range of use allocations between open and

9  limited ORV use."  531 F.3d at 1145.  The Ninth Circuit rejected that argument, noting that ORV

10  use in itself, regardless of the seasonal or other limitations imposed, will result in wide-ranging

11  impacts, and thus simply making changes in the allocations between open and limited ORV

12  designations was not sufficient.  *Id.*

13    In the present case there were very specific reasonable alternatives which the BLM either

14  never addressed at all, or rejected summarily.  First and most obvious, the BLM could have

15  considered the alternative of designating less route mileage and focusing on minimizing impacts

16  to soils, cultural and other resources, and species and habitats as required by the EOs and

17  regulations and the ESA.   Second, the agency could have reviewed an alternative that would

18  reduce vehicular access in the Desert Wildlife Management Areas ("DWMAs")[13] to provide

19  "reserve level" protection as recommended in the Desert Tortoise Recovery Plan.  *AR*-225846.  A

20  third reasonable alternative would be to designate only those routes in existence in 1980, as

21  required by the CDCA plan, and close all illegally created routes.  Finally, of course, the agency

22  could have considered retaining the interim route designations in five specific sub-regions put in

23  place pursuant to the previous settlement agreements and consent decrees.  The BLM summarily

24  rejected this last alternative, on the basis that the interim routes did not take into account the

25  information gathered after 1998, and "did not provide for all motorized vehicle access needs."

26  *AR*-201914-15.  In *CBD II*, this Court rejected an essentially identical argument, finding that

27  interim route closures in the Imperial Sand Dunes area were properly considered as a reasonable

28  ―――――――――――――――――
[13] "DWMAs" are administrative areas within recovery units for the desert tortoise.  *AR*-225787.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 21 -

21343\1713285.1

1    alternative, since they had been in place for several years and had been subject to NEPA review

2    already. *CBD II*, 422 F. Supp.2d at 1161-62.

3        In addition, although there is extensive research and documentation of the adverse impacts

4    of grazing on the desert tortoise and its habitat, none of the alternatives would end grazing in the

5    DWMAs and desert tortoise critical habitat as recommended in the Desert Tortoise Recovery

6    Plan. *AR*-225788 (key to the recovery strategy is establishment of DWMAs and "implementation

7    of reserve level protection within each DWMA"), *AR*-225846 (reserve level management

8    includes "eliminating . . . domestic livestock grazing"). Even Alternative C, labeled the

9    "Tortoise Recovery Plan", provides only minimal additional protection for the desert tortoise.

10   *AR*-201897, 202392. In Alternative D labeled "Enhanced Ecosystem Protection," BLM similarly

11   failed to evaluate the alternative of removing all livestock from the DWMAs and desert tortoise

12   critical habitat although it would provide some small additional protections for the tortoise, by

13   imposing higher forage thresholds and removal of cattle earlier in the year, and provide additional

14   protections for riparian areas from grazing. *AR*-201903, 202406.

15           **2.    BLM Failed To Accurately Describe The Environmental Setting Or Baseline
                     For Analysis And Failed To Present And Analyze Past And Future**
16                   **Compliance With Route Designations**

17       Under NEPA, in order to properly analyze the environmental impacts of a project it is

18   essential that there be a baseline from which the impacts can be measured and evaluated. *Am.*

19   *Rivers*, 201 F.3d at 1195 & n.15; *see supra at* Section II.B.2. However, neither the EA nor the

20   EIS at issue here uses a clearly defined baseline from which impacts are discussed.

21       In the EA, BLM defines the No Action alternative (which is often, but not always, used as

22   the baseline in NEPA documents) as those routes put in place during the preparation of the ACEC

23   management plans, and states that for all other areas the 1985-87 ORV route designations would

24   "remain in place." *AR*-211415. However, in the redesign areas BLM inventoried *all the routes*

25   *in existence, designated or not*, and evidently compared the impacts of its proposed route

26   designations to that baseline. *AR*-202203 (Table 3-58); *AR*-202344 ("Because the designated

27   open route system is less than the entire inventoried network (including non-designated

28   'volunteer or legacy' routes), visitor use on the designated routes would increase."). In other

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 22 -

21343\1713285.1

1    places it is simply not clear what baseline BLM uses for comparison.  *E.g. AR*-211511 (EA

2    Table 4-7) (compares the proposed access network with the "present situation" without

3    explaining if this is the previously designated route network or the number of routes actually

4    currently in use); *AR*-202261 (FEIS Table 4-37) (discusses how many routes will be closed in the

5    DWMAs but does not state whether this is compared to those which were designated by BLM or

6    all existing routes).

7          As stated in the previous section, the correct baseline under the CDCA plan would be the

8    subset of routes existing in 1980 and meeting the other criteria for use.  Use of any other baseline

9    simply legitimizes, without analysis, the creation of hundreds of illegal routes.

10       **3.       BLM Assumes Without Basis That Its Route Designations Will Be Effective**

11         Closely related to the baseline issue is that BLM assumes, without any basis, that the route

12   designations it proposes will be enforced and respected.  The record clearly establishes that route

13   proliferation has been extensive.  *AR*-202203-04 (table indicating in some cases mileage of routes

14   has doubled or tripled since mid-1980's), *AR*-218702 (Bates stamps on pages are missing, see Ch.

15   1, p. 5) ("The network of access routes has proliferated to an extensive level since the advent of

16   mass-produced affordable rough terrain vehicles . . .").[14]  Despite the acknowledged route

17   proliferation, neither the 2003 EA nor the FEIS address whether the implementation measures

18   included as part of the action will actually be effective in preventing further expansion of illegal

19   ORV routes.  The NEPA documents contain a number of broad statements, without reference to

20   data, concerning implementation and compliance efforts.  *AR*-211468 ("Compliance appears to be

21   best achieved when a proactive approach to vehicle management is used, including the

22   identification of outstanding recreation opportunities to direct recreationists to, such as through

23

---

24   [14] Although some of this increase could be explained by the fact that single track motorcycle
     routes were apparently not fully inventoried in 1985-87, (*AR*-211542) it seems clear that the
25   extensive nature of these increases means that compliance with the previous route designations
     was poor, and that routes have proliferated drastically. Although BLM consistently reminds the
26   reader that the increase in routes may be due in part to the fact that the single-track routes were
     not inventoried, the regulations are clear that routes which are not inventoried and designated
27   opened or closed are illegal. 43 C.F.R. § 8341.1(a) & (c) (Only allowing the operation of ORVs
     on routes designated as opened); § 8342.1. Thus, under the terms of the CDCA Plan, the single-
28   track routes are all illegal routes as they were not designated as open by the agency.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI                    - 23 -                              21343\1713285.1

1   quality signing and mapping to help visitors locate appropriate opportunities, as well as through

2   enforcement and additional education efforts.".); *AR*-201853 ("Implementation of the Ord

3   Mountain Pilot plan revealed that the most effective short term action taken was an increase in

4   enforcement and visitor service patrolling . . .").

5       None of the implementation measures in the FEIS or in the implementation plan, *AR*-

6   240665-75, cite to any data of any kind regarding their efficacy.  In addition, the various

7   enforcement and education measures presented are dependent on the BLM obtaining future

8   funding.  The implementation measures proposed are essentially mitigation measures, and the

9   Ninth Circuit has made it clear that such measures must be certain of implementation and some

10  evaluation of their effectiveness must be given.  *Neighbors of Cuddy Mountain v. U.S. Forest*

11  *Serv.*, 137 F.3d 1372, 1380-81 (9th Cir. 1998).

12      The assumption that the route designations will be respected, which underpins essentially

13  all of the analysis of environmental consequences in both the 2003 EA and the FEIS, finds no

14  support in the record. It is worth noting that even as of 2005, the 2003 route designations had not

15  been fully implemented, and closed routes were still being used by ORVs.  *AR*-202231.  In the

16  past, signing routes "closed" has not been effective.  *E.g.*, *AR*-240701-03 (Monitoring of interim

17  route closures in the West Rand Mountains indicated closure signs were frequently disregarded,

18  fences were cut, driven around and knocked down). While changing the rules so that ORVs can

19  only ride on routes signed "open" should eliminate some vandalism directed against the "closed"

20  signs, and may prove more effective in the long run at informing the public where they can ride

21  and aiding enforcement, BLM admits that it has been slow to place these signs.  *See AR*-202231.

22  BLM also notes that impacts could be avoided with more stringent enforcement in certain areas,

23  but simply notes that this is not the current enforcement "philosophy" without making any

24  concrete proposal to amend the approach.  *AR*-202262 ("These and many other impacts could be

25  effectively avoided if BLM rangers begin to apply focused regulatory enforcement in

26  conservation areas, which would require a major philosophical change in current enforcement

27  practices.").

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI                    - 24 -                    21343\1713285.1

BLM may argue that the question of compliance with its plan is simply one of uncertainty about environmental effects, and it is not required to address all such uncertainties. *Lands Council* makes clear, the agency must "acknowledge and respond to comments by outside parties that raise significant scientific uncertainties and reasonably support that such uncertainties exist." 2008 WL 2640001 at *17. The question of whether the BLM's route plan will be respected is one of *the* key questions in the EIS, and it was raised repeatedly by Plaintiffs and others. Yet BLM simply assumes without explanation, in the face of past evidence, that its plan will work to reduce impacts. As the Ninth Circuit affirmed - the agency is entitled to deference if, but only if, its findings and reasoning are supported by the administrative record:

> [W]e hold that the Forest Service must support its conclusions that a project meets the requirements of the NFMA and relevant Forest Plan with studies that the agency, in its expertise, deems reliable. The Forest Service must explain the conclusions it has drawn from its chosen methodology, and the reasons it considers the underlying evidence to be reliable.

*Id.* at *10. BLM does not cite to any data or studies regarding the efficacy of its management strategy. There is simply no methodology or conclusions in the record to which the Court can defer. As the Ninth Circuit put it in *ONDA v. BLM,* "[h]ere the BLM used *no* method to analyze or plan for the management of such values. We cannot defer to a void." 531 F.3d at 1142.

### 4.    BLM Failed To Inventory, Identify And Analyze Significant Impacts To Sensitive Resources

As the Ninth Circuit has held, "to 'consider' cumulative effects" of a project "some quantified or detailed information is required. Without such information, neither the courts nor the public, in reviewing the [agency's] decisions, can be assured that the [agency] provided the hard look that it is required to provide." *Neighbors of Cuddy Mountain*, 137 F.3d at 1379. Under FLPMA, the BLM must "prepare and maintain on a continuing basis an inventory of all public lands and their resources and their values," giving priority to ACEC's. 43 U.S.C. § 1711(a). "This inventory shall be kept current so as to reflect changes in conditions and to identify new and emerging resource and other values." 43 U.S.C. § 1711(a). The resources inventory is

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 25 -

21343\1713285.1

1  intended to form the basis of the land use planning process.  43 U.S.C. § 1701(a)(2).   As this and

2  other courts have found, it is arbitrary and capricious for BLM to approve a management plan

3  based on "outdated and inadequate inventories" of affected resources on public lands.  *See CBD*

4  *II*, 422 F.Supp. at 1167; *ONDA v. Rasmussen*, 451 F.Supp. 2d 1202, 1213 (D. Or. 2006).

5       In the West Mojave planning area the BLM failed to prepare or maintain an inventory of

6  many resources relevant to the planning process including riparian resources, UPAs, water

7  resources, and water quality.  As a result, neither the 2003 EA or the 2005 FEIS contain adequate

8  analysis of some of the most significant impacts of the actual route designations and other

9  activities authorized by the West Mojave Plan.

### a.    Impacts To Soils

11       The FEIS failed to adequately identify and analyze impacts to soils from the activities

12  permitted under the Plan including but not limited to ORV use and grazing.

13       Sections 4.2.1.2 of the FEIS and the EA are identical, and simply note a number of

14  impacts that ORVs may have on soils, including infiltration, erosion, and soil chemistry.  These

15  impacts are well documented in the literature, and are particularly significant on the fragile

16  cryptobiotic soils found in areas like the Western Mojave.  However, there is no discussion of the

17  impacts on soils of the actual routes designated as open.  So far as the FEIS shows, there is no

18  erosion, no impact on cryptobiotic soils, indeed no actual impact on soils of any kind by any of

19  the 5,000 miles of routes designated as open.  The FEIS also provides no discussion of grazing

20  impacts to soils whatsoever, *see AR*-202232-33, although these impacts are well documented.

21  *See AR*-205070-75.

22       The conclusory remarks in the EA and FEIS, which have no relationship to actual impacts

23  expected, "do not equip a decisionmaker to make an informed decision about alternative courses

24  of action or a court to review the Secretary's reasoning."  *NRDC v. Hodel*, 865 F.2d 288, 298

25  (D.C. Cir. 1988).

### b.    Impacts To Cultural Resources

27       The FEIS and the EA both identify generally the severe negative impacts to archeological

28  sites and other cultural resources that are adjacent to open ORV routes under every alternative.


Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 26 -

21343\1713285.1

E.g., *AR*-211547; *AR*-202504 ("In some areas, impacts from existing routes are severe and significant resources are being degraded or completely lost."), *AR*-211516-17.   However, the actual impact of the routes affecting these resources is, except in rare cases, not identified.  Such a vague discussion clearly does not provide the "decision makers and the public with an accurate assessment of the information relevant to evaluate the [proposed] Plan." *NRDC v. U.S. Forest Serv.*, 421 F.3d at 812.

BLM also states in several places in the 2003 EA and the 2005 FEIS that it lacks adequate information and inventories of cultural resources to actually discuss the impacts of route designation.  E.g., *AR*-211515-17 ("The effect of routes of travel on cultural resources has not been fully determined because information needed to assess effect is incomplete at the present time; however, records and observation indicate the effect on some sites is significant.").  Neither document explains, however, why additional information regarding cultural resources could not be obtained in the same manner as was information regarding motorized vehicle access needs.  40 C.F.R. § 1502.22 provides that where unavailable information is essential to a reasoned choice among alternatives, and the cost of obtaining it is not exorbitant, the agency should obtain the information.  *See CBD II*, 422 F. Supp.2d at 1166.  Here, BLM provides no information on why it has not obtained this information, which is clearly necessary to inform the public of the actual impact of BLM's actions, and is required by their inventory obligation under FLPMA.

###### c.      Impacts To Biological Resources

###### (1)      Riparian Resources, UPAs, and Water Quality

The CDCA Plan Goals for the vegetation element include a specific requirement to manage and maintain unusual plant assemblages ("UPAs") and wetland-riparian areas. *AR*-221966.[15]  Despite this clear directive, over the more than 25 years since the CDCA Plan was adopted, BLM failed "to prepare and maintain on a continuing basis an inventory" of relevant, current information on the status of these resources in the West Mojave Planning area.   43 U.S.C. § 1711(a).

---

[15] The language of this goal was amended in 1985 (*AR*-222069) it remains nearly identical to the goal adopted in the CDCA Plan in 1980 (Compare *AR-221965 to 66*).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI                                   - 27 -                                             21343\1713285.1

1       The FEIS barely mentions surface water resources in the affected environment section

2   (*AR*-201990), devoting only one page to the Mojave River and providing no details regarding the

3   current status of this critical riparian resource. *AR*-201993-94. Similarly the discussion of

4   groundwater basins and water quality is devoid of specific information. *Id.* at 201990-93. The

5   discussion of ACEC's with riparian values provides minimal information without any reference

6   to studies or other data relied on regarding the current status of these resources. *See AR*-201934-

7   36 (e.g. Cronese Basin, Great Falls Basin, Harper Dry Lake, Butterbredt Springs); *see also AR*-

8   203401 (comment noting ORV "scars on hillsides of the Butterbredt Springs closed area . . . .

9   [that] invite further incursions). BLM failed to provide this information despite the public

10  specifically having sought inclusion of status information on springs and seeps. AR-203630

11  (comments seeking proper functioning condition information for UPAs which include springs and

12  seeps); *SAR3*-300403 (same).

13      UPAs are not discussed in the FEIS nor is any information provided regarding the status,

14  location and condition of these resources, despite the fact that they were specifically identified in

15  the CDCA Plan in 1980, and public comments requested that this information be considered. *AR*-

16  221969; Plaintiffs' Request for Judicial Notice, Exhibit 1 (Map 6, listing categories of UPAs and

17  showing some locations); *AR*-203630 (comments seeking inclusion of management strategies for

18  all Category III B UPAs (*see* Map 6) and proper functioning condition assessments for all UPAs

19  within grazing allotments).

20      In response to comments, BLM provided no reason or rationale for its failure to include

21  basic information regarding the environmental condition of water resources or UPAs. Instead,

22  BLM (1) pointed to the inclusion of a "new table" in the description of the alternatives that

23  summarizes PFC (proper functioning condition) goals to be achieved for springs and other water

24  resources, (*see AR*-202689 (Response 190-11); *AR*-201691-697 (Biological Goals and

25  Objectives), and (2) stated that the "CDCA prescriptions for [UPAs] would still apply under the

26  West Mojave Plan amendment." *AR*-202689 (Response 190-11). BLM's general reassurances

27  regarding how information gathered in the future will be used does not cure its failure to prepare

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 28 -

21343\1713285.1

1   and maintain a current inventory of relevant resources or to provide the necessary, relevant

2   information and analysis in the EIS.

3            Under Alternative B, the alternative selected, BLM does not provide any information on

4   specific impacts to riparian areas from route designation or grazing.  The agency instead provides

5   a chart of impacts to various natural communities indicating only the gross number of acres that

6   will be impacted in the planning area without reference to land ownership or other critical details

7   and similarly lists "existing conservation" without providing any of the details about specific

8   areas or the type of "conservation" measures in place.  *AR*-202237-38 (Alt A), 202368 (Alt B);

9   *see also AR*-202880 (Map 3-23 Natural Communities and Landforms stating "Features displayed

10  are generalized and should not be considered precise.").  For example, for Cottonwood-willow

11  riparian forest the FEIS states that there is a total of 11,533 acres in the planning area and that

12  under Alternative A 1,571 acres of "new conservation" will occur (*AR*-202237), while under

13  Alternative B no new conservation would occur (*AR*-202368). There is no way for the public to

14  know why no additional conservation is proposed under the chosen alternative or what the

15  parameters would have been for such a choice. The same is true for alkali seeps, freshwater seeps,

16  and Mojave riparian forests.  *Id*.  The California Department of Fish and Game raised concerns

17  regarding the loss of seeps and alkali wetlands and the inadequacy of federal regulatory

18  mechanisms to protect these areas. *WEMO AR BO*-14000.

19           BLM stated in the FEIS that all important riparian areas had already been taken into

20  account in designating routes "primarily in the ACEC Plan process." *AR*-202236.  However,

21  BLM does not provide any specific documentation to show *how* these resources were taken into

22  account in the route designation process.  As set out previously, the NEPA documents adopt

23  many of the ACEC designations without any specific analysis.

24           Impacts from grazing on riparian resources, UPAs and water quality is largely ignored.

25  The FEIS only acknowledges that as a general matter grazing can adversely impact water quality.

26  *AR*-202235.

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 29 -

21343\1713285.1

**(2)     Spread Of Non-Native Invasive Plants**

It is well documented that one impact of ORV use of public lands is the potential for spread of weeds and noxious plants.  In the 2003 EA, the BLM even notes that one consequence of continuing the 1985-87 route designations would be the potential for spread of noxious weeds. *AR*-211541, and the FEIS notes in assessing Alternative G that "[w]eedy species invasion is one aspect of habitat degradation that can be attributed to routes of travel." *AR*-202505.  This is an impact which attends all route designations, yet it is never mentioned in the discussion of the routes actually designated.  Similarly, BLM failed to identify and analyze spread of non-native invasive plant species due to livestock grazing, which is also a well-documented vector for dispersing non-native invasive plants. *See, e.g., AR*-205073-76.

**(3)     Threatened, Endangered, Rare, and BLM Sensitive Species.**

Impacts to listed species and habitats under the WEMO Plan are discussed in detail in the accompanying brief on Claims 3 and 4 related to the ESA.  In addition, however, BLM's failure to adequately identify and analyze impacts to listed species and habitats, and to provide mitigation measures for those impacts, is also a violation of NEPA, *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 352 (1989), the FLPMA regulations, and the CDCA Plan. *ONRCF v. Brong*, 492 F.3d 1120, 1025 (9th Cir. 2007) ("Once a land use plan is developed, '[a]ll future resource management authorizations and actions . . . shall conform to the approved plan.' 43 C.F.R. § 1610.5-3(a).").

Under the terms of the CDCA Plan, BLM is required to affirmatively protect State listed and BLM sensitive species from decline on public lands.  *AR*-221948 (CDCA Plan; "All state and federally listed species will be fully protected"), 221956-57 ("Manage those wildlife species officially designated as sensitive by the BLM for California and their habitats so that the potential for Federal or State listing is minimized").  Indeed, the CDCA Plan expressly requires that BLM *consider* the impacts on the habitats of sensitive species "so that impacts are avoided, mitigated, or compensated." *AR*-221957.  The BLM's inadequate NEPA review of impact to these species also violates the terms of the CDCA Plan.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 30 -

21343\1713285.1

1    The FEIS fails to provide adequate information or analysis of impacts to State listed and

2    BLM sensitive species including, but not limited to, the Mojave fringe-toed lizard, Mojave

3    ground squirrel, Barstow wooly sunflower, desert cymopterus,  Mojave monkeyflower, and

4    others.   For example, the FEIS provides no recent survey data or other status information for the

5    Mojave fringe-toed lizard (*AR*-204475 ("No data on population status and relative density of the

6    MFTL is available")), yet the agency goes on to conclude both that retaining ORV routes in its

7    habitat, "does not appear to be impacting this species," and that limiting routes in other areas

8    would be "beneficial to the Mojave fringe-toed lizard because it closes routes traversing occupied

9    and potential habitat." *AR*-202288-90 (Alt A), *AR*-202383 (Alt B); *AR*-202289. BLM fails to

10   provide adequate information on the status of the desert cymopterus (a BLM sensitive species)

11   but acknowledges that the WPM will fail to protect this species as required in the CDCA Plan.

12   *AR*-202385 ("Lack of a rangewide plan for this narrow endemic plant could lead to its listing as

13   threatened or endangered within the term of the Plan").  Similarly, for the Mojave monkeyflower

14   (a BLM sensitive species) BLM notes that: "The combined impacts of fragmentation and

15   potential loss of occurrences for this West Mojave endemic would be a substantial adverse

16   impact." *AR*-202385

17          For the Barstow wooly sunflower (a Species of Concern and BLM sensitive species, *AR*-

18   204272), the FEIS noted that improvement might be made if grazing is eliminated, *AR*-201824

19   (ending grazing on certain allotments would benefit this and other species) *AR*-202293 (Alt A),

20   *AR*-202384 (Alt B), but ignored continuing impacts from "livestock grazing and trampling" (*AR*-

21   204275).  BLM also failed to adequately analyze impacts from ORV routes fragmenting its

22   habitat and from continued grazing in its habitat in both the route designation EA and FEIS.

23   Although the FEIS identified ORV routes as a threat (*AR*-202115), BLM failed to analyze

24   impacts of redundant ORV routes in Barstow woolly sunflower habitat during both the 2003

25   Decision Tree process and the 2005 FEIS processes.  Plaintiff CNPS provided detailed

26   information that many redundant routes could be closed to protect this species without any

27   reduction in access.  *AR*-203636 (comments); *SAR3*-300405_Protest.  Finally, in response to the

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 31 -

21343\1713285.1

1    CNPS protest BLM closed only 2 redundant routes.  *SAR3*-300236-237_Protest.  This clearly

2    confirms the failure of the Decision Tree process to adequately account for sensitive resources.

3          Given its affirmative duties, BLM's failure to adequately identify and analyze impacts to

4    sensitive species and avoid, minimize, or mitigate those impacts, is a violation of both NEPA and

5    the BLM's duties under the CDCA Plan.

6          **5.     Impacts To Air Quality**

7          BLM failed to accurately identify or adequately analyze the impacts of the proposed route

8    designation and Plan amendment on air quality.  The air basins covered by the plan amendment

9    are nearly all in nonattainment for $PM_{10}$, and it is undisputed that $PM_{10}$ has significant impacts to

10   human health. *See AR*-201982-984 (FEIS); *AR*-211420-23 (EA discussion and Table 3-1). Yet,

11   both the EA and EIS fail to accurately identify or adequately analyze $PM_{10}$ emissions from (1)

12   increased ORV travel along dirt roads, routes and trails, or (2) ORV use in open areas, where

13   ORVs are not required to stay on trails.  Instead, BLM assumes, without analysis, that the route

14   designation will lead to a reduction in $PM_{10}$ emissions from unpaved roads on BLM lands. WMP

15   202366.  This assumption is contrary to the facts.

16         The FEIS appears to take into account primarily wind-blown dust and particulates. *See*

17   *AR*-202228-232 (Alternative A),[16] 202365-366 (Alternative B and Table 4-46 note regarding

18   wind erosion); *see also SAR3*-300183_Protest (response to comments Issue 2). Even based on the

19   limited sources considered by BLM, the FEIS shows that $PM_{10}$ under Alternative B would

20   *increase* from most sources on public land (except for some long-term decreases on routes that

21   are fully restored).[17]  *See AR*-202366 (chart). Nonetheless, BLM concludes, contrary to the

22   evidence, that there would be significant *reductions* in $PM_{10}$ under the Plan. *Id.*

23

24   _____

25   [16] Because the FEIS focused its analysis on a proposed action (Alternative A) that was not
     ultimately chosen as the Plan, and the Plan that was approved (Alternative B) is analyzed only in
26   relation to the proposed action, the reader is required to look at both Alternative A and
     Alternative B in order to discern the impacts of Alternative B identified or analyzed in the FEIS.

27   [17] BLM also appears to assume that all routes and trails designated "closed" will immediately be
     fully restored thus quickly reducing wind erosion on the bare ground of those routes and trails.
28   *See id.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 32 -

21343\1713285.1

1    Further, ORV use has increased significantly in recent years and is expected to continue to

2    increase in the future. *See, e.g.,* AR-202174-175, 202176-179.  But, nonetheless, the FEIS does

3    not identify or analyze impacts from dust and particulates stirred by ORV *use* in open areas or on

4    routes and trails; use which the BLM admits is increasing.   In fact, impacts to air quality from

5    ORV use in open areas is not explicitly discussed anywhere in the EA or EIS.

6    In response to comments raising the issue of $PM_{10}$ emissions from use of designated

7    routes, BLM stated that "area of disturbance is one of the main variables in the calculation of

8    $PM_{10}$ emissions and that over time the emissions will reduce to near zero if there has been no new

9    disturbance because the fine material will be blown away." *SAR3*-300183_Protest.  While it is

10   undoubtedly true that area of disturbance is *one* variable in assessing emissions from unpaved

11   routes, other variables include the amount of use or "vehicle activity," "vehicle speed, surface

12   texture, surface moisture, and probably vehicle type."  AR-205089, 20588-90 (discussing soil

13   disturbance and dust caused by ORV use particularly in open areas and from competitive events

14   and potential impacts to the threatened desert tortoise); *AR*-201989. ("The mere passing of

15   vehicle tires or tracks over an erodible surface provides sufficient energy to initiate soil

16   blowing.").  BLM cannot pick and chose between the relevant variables in making its calculations

17   of impacts, it was required to consider all relevant factors.  *Motor Vehicle Mfr. Ass'n,* 463 U.S. at

18   43 (an agency action is arbitrary and capricious if "the agency has . . . entirely failed to consider an

19   important aspect of the problem.").  Because the BLM ignored an important aspect of the problem,

20   the dust and PM10 impacts cause be use of dirt roads, and ignored relevant evidence of these

21   impacts in its own EIS, its decision was arbitrary and capricious.  *NRDC v. U.S. Forest Serv.*, 421

22   F.3d 797, 806 (9th Cir. 2005) (holding that because the agency's explanation ran counter to the

23   evidence before the agency, the agency could not state a rational connection between the facts

24   found and the decision). Although BLM knew that dust and fine particulates from ORV open

25   areas and competitive events was significant, *AR*-205089-90, the FEIS also ignores impacts from

26   ORV open areas as well as increased ORV use and is on that basis inadequate.  *See AR*-202228-

27   232 (Alt A), 202365-366 (Alt B).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 33 -

21343\1713285.1

1    In response to numerous comments on the increased $PM_{10}$ production, BLM repeatedly

2    assumes that it is only the existence of unpaved roads or bare disturbed soil and wind erosion that

3    causes $PM_{10}$ impacts within the West Mojave, and ignores that it is the *use* of those roads, routes

4    and trails as well as the open areas that is a primary factor in stirring the dust and causing $PM_{10}$

5    and other particulate emissions. *See, e.g., AR*-202621, 202625-26.[18]  NEPA requires more than

6    simple contradiction.  Responses to comments must provide a reasoned explanation.  *See* 40

7    C.F.R. § 1503.4 (listing possible responses including modifying alternatives, supplementing,

8    improving or modifying analyses, or explaining reasons which support the agency's position).

9    "To take the required 'hard look' at a proposed project's effects, an agency may not rely

10    on incorrect assumptions or data in an EIS." *Native Ecosystems Council v. U.S. Forest Serv.,* 418

11    F.3d 953, 964 (9th Cir. 2005); *CBD II,* 422 F.Supp. 2d at 1163-64 ("NEPA requires that the BLM

12    prepare an EIS that considers every significant aspect of the environmental impact of the RAMP,

13    and that the BLM, through the EIS, 'inform the public that it has indeed considered

14    environmental concerns in its decisionmaking process.'"). With respect to air quality, BLM

15    violated each of these principles.

16    **6.     The FEIS Fails To Adequately Analyze Cumulative Impacts**

17    The FEIS fails to adequately identify or analyze the cumulative impacts to species and

18    other resources from the activities authorized under the Plan and the Fort Irwin expansion. The

19    FEIS simply states that the "cumulative regional effects of military training in the expansion area

20    and implementation of the West Mojave Plan were incorporated directly into and throughout the

21    impact analysis presented."  *AR*-202361.  Assuming for the sake of argument alone that this is

22    true, such aggregation of the analysis completely undermines one of the key purposes of the

23    NEPA process, to adequately inform the public and decision makers of the likely effects of the

24    proposed action.  For example, the Fort Irwin expansion will close off many ORV routes used in

25    the past and likely increase the use of nearby routes many of which are in DWMAs and other

26    _____

[18]. Again, in response to Plaintiffs' Protest of the route designation, BLM simply rejected

27    Plaintiffs' assertion that $PM_{10}$ emissions will increase along with increased ORV use in the
WEMO planning area by denying that use would increase and pointing to its own bare conclusion

28    that $PM_{10}$ emissions will decrease.  *AR*-206614.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 34 -

21343\1713285.1

1  sensitive habitats.  The FEIS no where identifies or analyzes this cumulative impact on the

2  resources of the West Mojave planning area.

3  The treatment of cumulative impacts to public lands resources in both the 2003 EA and

4  the FEIS is severely lacking in several other respects. As noted, the 2003 route designation and

5  West Mojave Plan re-adopted many of the 1985-87 route designations which had never been

6  evaluated pursuant to NEPA.  Yet the impacts of these designations are discussed only in passing

7  in a few sections of the EA and the FEIS.  Just as the site specific impacts of routes are not

8  discussed in the record, neither are the cumulative impacts of the entire 5,089 miles of routes.

9  These cumulative impacts include fragmentation of habitat and continued access to areas from

10  which additional illegal, pioneered routes have been created in the past and may continue to be

11  created causing additional damage to resources.  As discussed earlier in this brief, illegal route

12  proliferation is an established fact in the West Mojave planning area, and the NEPA documents

13  must discuss the likelihood of continued illegal route creation as a cumulative impact.

14  The FEIS also fails to analyze the cumulative impacts of multiple activities affecting the

15  same resources, for example, grazing and ORV use in DWMAs or in riparian areas.  *See AR*-

16  202359-65.  In fact, the FEIS does not even mention the cumulative impacts of grazing on the

17  resources within the West Mojave but only discusses the cumulative impact *to* livestock grazing

18  under the Plan.  *AR*-202360-61.  Because the BLM failed to provide a legally adequate

19  cumulative impacts analysis, the FEIS must be set aside on this basis as well.

20  ## VI.  REMEDY

21  In light of the above violations of law, Plaintiffs ask the court to set aside the 2003 EA,

22  the 2003 Decision Record, the 2005 FEIS and the 2006 ROD based upon it.  Plaintiffs also

23  request a separate hearing on interim injunctive relief following the issuance of the Court's order.

24  ## VII.  CONCLUSION

25  For the reasons set out above the Plaintiffs believe summary judgment should be granted

26  in full finding BLM in violation of FLPMA, its implementing regulations and relevant EOs

27  (claim one) and in violation of NEPA (claim two).

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

21343\1713285.1

1    DATED:  September 8, 2008

2

3

4

5

6

7

8    DATED:  September 8, 2008

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FARELLA BRAUN & MARTEL LLP


By_____/s/_____
          Sky C. Stanfield

**Attorneys for Plaintiffs**
**Alliance for Responsible Recreation, The**
**Wilderness Society, Friends of Jupiter Flats,**
**Western San Bernardino County**
**Landowners Association, California**
**Wilderness Coalition, California Native**
**Plant Society, and Community ORV Watch**


By_____/s/_____
Lisa T. Belenky (CA Bar No. 203225)
CENTER FOR BIOLOGICAL DIVERSITY
351 California Street, Suite 600
San Francisco, CA 94104
Telephone: (415) 436-9682 x 307
Facsimile: (415) 436-9683
Email: lbelenky@biologicaldiversity.org

Deborah A. Sivas (CA Bar No. 135446)
Leah J. Russin (CA Bar No. 225336)
Environmental Law Clinic
MILLS LEGAL CLINIC
STANFORD LAW SCHOOL
Crown Quadrangle
559 Nathan Abbott Way
Stanford, California 94305-8610
Telephone: (650) 723-0325
Facsimile: (650) 723-4426
Email: dsivas@stanford.edu

**Attorneys for Plaintiffs Center for**
**Biological Diversity, Sierra Club,**
**Public Employees for Environmental**
**Responsibility, and Desert Survivors**

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

PLTFF'S REVISED NOTICE OF MOTION FOR
SUMMARY ADJUDIICATION ON THE 1ST & 2ND
CLAIMS FOR RELIEF AND REVISED MPA ISO
MOTION, CASE NO. 3:06 CV 04884 SI

- 36 -

21343\1713285.1

# Figure 1



Figure 1

# Figure 2



Figure 2