Robert B. Wiygul, Esq. (LA Bar No. 17411)
Waltzer & Associates
1025 Division Street, Suite C
Biloxi, MS  39530
Telephone:  (228) 374-0700
Facsimile:  (228) 374-0725
Email:  robert@waltzerlaw.com

David J. Lazerwitz, Esq. (CA Bar No. 221349)
Sky C. Stanfield, Esq. (CA Bar No. 244966)
Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
Telephone:  (415) 954-4400
Facsimile:  (415) 954-4480
Email:  sstanfield@fbm.com

***Attorneys for Plaintiffs Alliance for Responsible Recreation, The
Wilderness Society, California Wilderness Coalition, Friends of
Juniper Flats, Western San Bernardino Landowners Ass'n,
California Native Plant Society, and Community ORV Watch***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVISION, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. BUREAU OF LAND MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:06 CV 04884 SI<br><br>**DECLARATION OF THOMAS EGAN** |

1.     My name is Thomas Egan, and my address is 27345 Peach Tree Lane, Helendale California 92342.

2.     I am over 21 years of age and have personal knowledge of following and could competently testify if called as a witness.

3.     My professional background and training is in wildlife management and ecology, state and federal land environmental analysis and permitting, as well as wildlands reclamation

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

21343\2236136.1

and restoration on both public and private lands, which I have been engaged in for 25 years. I have completed hundreds of hours of professional level training in wildlife and habitat management; vegetation community and wildlife monitoring; Endangered Species Act ("ESA") compliance; as well as National Environmental Policy Act ("NEPA") and Federal Land Policy and Management Act ("FLPMA") direction for public lands managed by the Bureau of Land Management ("BLM"), National Park Service and U.S. Forest Service.

4.      I am currently employed as a Senior Ecologist in an international engineering and environmental consulting firm.  I conduct biological resource surveys; prepare biological assessments, ESA incidental take permit applications, NEPA and California Environmental Quality Act ("CEQA") documents. My clients include county, state and federal agencies, city planning offices, utility firms, energy development companies, other environmental consulting firms, and private entities.

5.      I hold a Bachelor of Science Degree in Wildlife Management with minors in Natural Resources, Biology and Psychology from Humboldt State University.

6.      During the period 1990 to 2002, I was employed by the BLM as a Wildlife Management Biologist in the Barstow Field Office, specializing in ESA compliance, off-highway vehicle ("OHV") route designation and surface disturbance reclamation/restoration.  During the 1996-2002 time period, a part of my job responsibilities involved working as a primary team member in identifying a vehicle use route network on public lands within the West Mojave ("WEMO") Region of the California Desert Conservation Area ("CDCA").  This OHV route designation endeavor incorporated minimization criteria specified in the 43 C.F.R. Section 8342, guidance from several executive orders, BLM Manual regulations, the CDCA Plan (BLM 1980, 1999), initiatives for riparian/wetland areas, threatened and endangered species recovery, breeding bird protection, bat conservation, bird of prey wildlife management, invasive species control, wildfire ignition prevention, erosion minimization and visual resource management.  My work for BLM during the 1990 to 2002 time period included the following assignments related to OHV route designation and impact assessment relating to OHV use in the CDCA:

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI
- 2 -
21343\2236136.1

1     (a)     In 1995, I served as a BLM team biologist to the Ord Mountain Route

2   Designation Technical Review Team ("TRT"), which was formed to address route designation

3   modifications to the Ord Mountain Emergency Route Network within the WEMO region of the

4   CDCA.  This emergency closure was adopted by the BLM in response to documented

5   unnecessary and undue degradation of public lands resulting from a lack of formal vehicle route

6   designation.

7     (b)     In 1996, I was given the job of preparing a document entitled, "***Ord***

8   ***Mountain, West Mojave Pilot Route Designation, Biological Screening Components***" (BLM

9   1997).  This document summarized executive orders, BLM regulations and CDCA Plan direction

10   with regard to OHV route designation.  This document also discussed the various impacts to

11   biological resources associated with OHV use in different substrates, plant communities and

12   wildlife habitats.  Several "resource attributes," such as biological, cultural and recreational

13   resources, as well as "access attributes," pertinent to vehicle route designation in "Limited"

14   Multiple Use Class public lands were also identified in this document.  The findings explained in

15   this document were envisioned to be used with a baseline vehicle route inventory and a specific

16   Geographic Information System ("GIS") methodology to prepare a route designation

17   environmental assessment for this planning unit.  It was also envisioned that this route

18   designation "pilot" procedure would be duplicated in the rest of the CDCA's WEMO Region.

19     (c)     In 1999, I was tasked by BLM with preparing the "***Ord Mountain Vehicle***

20   ***Route Network Designation Project Environmental Assessment,***" which was filed by BLM as

21   part of the Administrative Record in this case at BLM AR WMP-221195.  This Environmental

22   Assessment outlined a site-specific analysis of a proposed OHV route designation, which

23   integrated components of public-recommended route networks.  The Environmental Assessment

24   also outlined an extensive implementation program for the proposed route designation, which

25   included procedures for sign installation and closed route rehabilitation, as well as monitoring and

26   corrective action prescriptions, per the BLM's CDCA Route Designation Implementation Plan

27   (1981).  These guidelines incorporate by reference Executive Order 11989, which requires federal

28   agencies to immediately close areas or trails to off-road vehicle use, where associated vehicle use

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI                           - 3 -                                    21343\2236136.1

1   is or will cause adverse effects to soil, vegetation, wildlife or cultural resources, according to

2   affecting vehicle type, until such time as the adverse effects are eliminated and measures

3   implemented to prevent future recurrence.

4           7.      In 1998 and 1999, I was assigned to one of two BLM interdisciplinary teams

5   assembled in the Barstow and Ridgecrest Field Offices to complete an OHV route designation for

6   the remainder of the CDCA's WEMO Region, in what became commonly known as the "Box"

7   effort.  The 1996-97 Ord Mountain Route Designation Pilot Project and the "resource attributes"

8   developed in that project were used as a functional template for the "Box" route designation

9   effort.  The interdisciplinary teams identified "resource attributes" and "access attributes" specific

10  to individual and grouped routes on a computerized wall-projector display of inventoried vehicle

11  routes on high resolution aerial photography.  The list of resource attributes considered in this

12  evaluation included recreation opportunity (non-motorized as well as motorized), special status

13  species and breeding bird habitat, areas of critical environmental concern ("ACECs") and unusual

14  plant assemblages (including springs and water sources), viewshed impact, route proliferation,

15  among others; and application of the CFRs.  Erosion and wildfire potential were also specifically

16  considered in some planning unit instances, such as the Juniper Flats and Bighorn planning units.

17  The same procedures and GIS methodology were used on all affected planning units in each Field

18  Office OHV route designation effort.  An inventory of vehicle routes in existence as of 1984 was

19  used as route designation baseline, with some exceptions.  All resulting "resource attributes" were

20  catalogued by OHV route in an associated database, which upon its completion, was used to

21  identify a final recommended route network for public lands in the CDCA's West Mojave

22  Region.  As is documented in the Court's Summary Judgment Order, BLM eventually decided to

23  disregard the Box effort's recommended route designations and much of the data compiled during

24  this process (Summary Judgment Order at 11).

25          8.      In February of 2010, I assembled a team of researchers and initiated a research and

26  field study of the BLM-adopted WEMO OHV route designations to assess the environmental and

27  cultural resource impacts resulting from OHV use within the WEMO region of the CDCA.  This

28  study was conducted on behalf of the California Native Plant Society, Desert Tortoise Council,

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI                        - 4 -                        21343\2236136.1

1    Desert Tortoise Preserve Committee and Friends of Juniper Flats.  The research team consisted of

2    Robert Parker, Edward Patrovsky and myself.

3        9.    Mr. Parker, a retired BLM biologist, participated in the "Box" route designation

4    effort described previously, as a member of the BLM's Ridgecrest team.  Mr. Parker was also

5    involved with reviewing the 2005-06 WEMO route network prepared by recreation interests,

6    which was subsequently adopted by BLM.  Mr. Patrovsky, a retired BLM law enforcement

7    ranger, was previously involved with enforcing vehicle use on designated route networks in both

8    the BLM's Ridgecrest and Barstow Field Office jurisdictions in the 1990s.

9        10.    The study identified the legal and policy requirements and guidance for route

10   designation, reviewed literature studies addressing OHV impacts to environmental and cultural

11   resources, and documented the impacts on natural and cultural resources by OHV use within the

12   WEMO region under the applicable legal and policy guidance.  The study also evaluated BLM's

13   implementation of the adopted WEMO OHV route designation on the ground and, in particular,

14   its implementation of required mitigation measures as set forth in the WEMO Plan.  The findings

15   of this analysis and associated field observation, as well as recommendations to address

16   designation inconsistencies, legal deficiencies and non-compliance problems, were recorded

17   during the course of this study and are set forth in the series of detailed written and photograph

18   reports which were prepared by the study team.  True and correct copies of the 2010 Route

19   Designation & Implementation Studies are attached as Exhibits A-1 through A-32 to this

20   declaration. The results of the 2010 study are summarized below.

21       11.    The literature research conducted for the study identified an extensive publication

22   base pertaining to various OHV use impacts upon natural resources, non-motorized recreation

23   activities and private property.  A true and correct copy of the bibliography of the documents

24   reviewed is attached as Exhibit B to this declaration, and the principal documents and related

25   findings are summarized below.

26       12.    The primary effects of OHV activity on desert soils and overall watershed function

27   have been particularly well documented.  Documented vehicle use effects include altered soil

28   structure (compaction), destruction of biotic and abiotic soil crust stabilizers, as well as soil

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI                - 5 -                                     21343\2236136.1

erosion. A loss of soil porosity has been repeatedly identified to occur as a result of vehicle use, which inhibits the growth of root systems and reduces water infiltration.  As vegetative cover, water infiltration, and soil stabilizing crusts are lost, rainfall runoff rates are known to accelerate rates of soil erosion.  On steeper topography containing moderate to highly erodible soils, vehicle use on established routes also reduces water holding capacity and adds incremental sediment to adjacent, usually down slope lands.  Shallow topsoil is irreparably lost on such slopes, often to a point where the native plant community cannot be supported. Such soil impacts are considered irreparable, due to the improbable capability to reclaim such damage. The effects of such vehicle-induced erosion on water quality can include sedimentation, turbidity, pollutant discharge within affected watersheds and impacts to local air quality. Sedimentation increases because compacted soils and disrupted soil crusts, as well as reduced vegetation cover, can lead to increased amounts and runoff velocities.  In turn, this runoff accelerates the rates at which sediments and other debris are eroded and flushed to down or cross-slope aquatic systems. Pollutants associated with deposition of vehicle emissions and petroleum leakage may be adsorbed to sediments and plant material, or dissolved in eroded runoff.  Once mobilized, these contaminants may enter aquatic systems. From here, any organism which utilizes the affected aquatic system can potentially be affected.  Air quality is affected when vehicle use raises fugitive dust and emits combustion by-products, which can be severe in certain soils and areas of steep or mountainous topography. The WEMO Plan FEIS route designation unfortunately, was found to have opened a significant amount of routes in "less sensitive, mountainous terrain favored by motorized vehicle recreationists" within Clean Air Act non-attainment areas adjacent to and crossing flowing streams; and in some cases, promoted vehicle use in such areas by designating routes specific to vehicles with a known high-rate soil shearing tendency, e.g., routes specifically designated for motorcycle use in the Juniper Flats Subregion.

13.     The field research conducted for the 2010 study confirmed the literature findings regarding OHV soil impacts and observed that OHVs crush, break, remove and reduce overall vegetative cover within the WEMO region.  Particulate matter and/or sediment generated by vehicle use erosion can further reduce the photosynthetic capacity of affected plants, potentially

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 6 -

21343\2236136.1

reducing growth and vigor.  The niche created by native plant loss associated with vehicle use impacts in some areas can also facilitate non-native plant growth and/or spread, particularly shallow-rooted annual grasses and early succession forb species which can form a higher wildfire fuel risk than native plants.  Consequently plant forage and habitat cover for numerous animal species can be lost as a result of vehicle use in certain areas, and potentially primed for further loss associated with wildfire.

14.    Field research conducted for the 2010 study also confirmed that directly, animals are possibly being killed or injured in vehicle collisions, entrapped or crushed within burrows associated with vehicle route designation in the WEMO planning area.  Indirectly, wildlife habitat is being degraded to the point that it does not provide suitable cover for shade and thermal protection, forage, breeding habitat or escape terrain.  OHV use noise and human presence can also result in increased stress, which indirectly can predispose some animals to increased predation and/or disease.  Such a stress-related disposition to disease acquisition and/or severity has been postulated by several researchers for tortoises in the western Mojave Desert.  Habitat fragmentation and reduced habitat connectivity are also indirect impacts associated with OHV use and route designation that can over time lead to local extirpations of certain wildlife populations. The highest numbers of roads in desert tortoise critical habitat within the WEMO planning area have been documented to include the Fremont-Kramer, Superior-Cronese, and Ord-Rodman critical habitat units, in that order.  Tortoise population declines, while not directly comparable across critical habitats, appear to have been most severe in the Fremont-Kramer unit, followed by the Superior-Cronese and Ord-Rodman units, in that order.   Study research indicates that tortoise numbers increase with distance away from major highways and high use roads, suggesting a need to focus signing and closed route rehabilitation in these areas to benefit desert tortoise recovery.

15.    CDCA Plan direction setting forth direction and mitigation measures regarding OHV route designation and implementation was found to be largely ignored by BLM during the course of this 2010 field study.  Many routes not eligible for route designation, i.e., a route of travel not identified as being in existence as of December 31, 1977 (the date of full CDCA aerial coverage), with a minimum width of two feet, showing significant surface evidence of prior

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 7 -

21343\2236136.1

vehicle use, were designated as open for travel; particularly where they contributed to network connectivity. Criteria specified by BLM's regulations and adopted in the WEMO Plan to minimize adverse impact to resources in the route designation process were found not to have been applied consistently or at all in many instances. These measures include, but are not limited to, the following as set forth in the WEMO Plan itself:

(a)    Signing the open route network;

(b)    Installing informational kiosks and interpretive signing to inform the public;

(c)    Developing and publishing maps that are up-to-date, readily available and have a readily understandable and useful format;

(d)    Regularly maintaining signs, kiosks, routes, maps and brochures;

(e)    Revegetating and otherwise rehabilitating closed routes so that they are not apparent or easy to use; and

(f)    Maintaining a field presence of BLM personnel to contact, inform visitors and enforce the law.

See WEMO Plan at 3-249, 2-164-173. Information collected during this 2010 study indicates that connectivity of a recreational vehicle network overrode other considerations in the WEMO designation process. This was found even where connectivity directed use to known OHV route proliferation. The lack of OHV use impact minimization in the designation process was found to be most severe in "subregion" areas where post-1980 route creation was highest. These areas tended to be located adjacent to urban interface areas such as Adelanto, Apple Valley, Johnson Valley, Joshua Tree, Helendale, Hesperia, Twentynine Palms and Yucca Valley; and areas historically known for off-highway vehicle recreation or located in proximity to designated "open" areas, such as El Mirage, Fremont, Granite, Ord Mountain, Red Mountain. These areas tended to have the fewest, and in many cases, no designated open route signing.

16.    As evidenced by vehicle tracks and use observation, "greensticker" licensed vehicles (i.e., motorcycles, buggies and quads) appeared to be the vehicle type most closely associated with route proliferation and non-compliance with the designated open route network.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 8 -

21343\2236136.1

1    Motorcycle route proliferation was observed to be highest in the Juniper Subregion.  No BLM

2    motorcycle patrol of the designated "motorcycle only" network has been employed, as has been

3    employed effectively by the U.S. Forest Service on the adjacent San Bernardino National Forest's

4    "greensticker" license vehicle route network.  Full-sized vehicles were found most commonly

5    associated with route proliferation areas along designated open routes where illegal dumping, as

6    well as solid projectile and shotgun target shooting, were observed.

7           17.    While certain redundant routes within ACECs designated for recovery of the

8    threatened desert tortoise (*Gopherus agassizii*) were found closed per the WEMO Plan

9    designation, additional routes were found designated open in areas subject to other natural

10    resource, non-motorized vehicle use and private property impact.  Little implementation of this

11    adopted vehicle designation was found in substantial portions of the planning area and resulting

12    vehicle use compliance with the designated open route network was found to be extremely poor.

13    Even where vehicle operators are diligent and wish to comply with the designated route network,

14    unsigned junctions and a lack of direction on the ground makes it impossible.

15           18.    Field observations made during the course of this 2010 study documented that

16    BLM's Guidelines for Implementation of Vehicle Route Designations for the California Desert

17    Conservation Area (1981), identified as BLM AR WMP-230630, were not applied relative to

18    open and closed route signing. Per the WEMO Plan FEIS, only open route signs were intended

19    for use in implementing the associated route designation on the ground, in conflict with BLM's

20    1981 CDCA route designation implementation plan direction.  However, not even the open route

21    signing and maintenance that was to occur per the WEMO Plan (i.e., route designation

22    implementation to highlight and make more obvious, designated open routes) have been

23    implemented by BLM during the intervening four years since adoption of the WEMO Plan.  Such

24    open route signing and grooming was lacking in the majority of the WEMO planning area

25    evaluated in the 2010 study.  The problems posed by this lack of implementation were found to

26    be particularly acute at open-closed route intersections.  While trailhead signing was found in

27    place at several high public use areas within the Ridgecrest Field Office jurisdiction, trailhead

28    signing in the Barstow Field Office jurisdiction was limited to two campground (Afton Canyon

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI
- 9 -

21343\2236136.1

and Owl Canyon) and at two locations within Juniper Flats.  Even where trailheads were signed or incorporated kiosks with outreach information, maps of the authorized vehicle route network were not displayed (except for two such map panels in the Juniper Subregion and a few such maps in the Rand Mountain ACEC). Few open or almost no closed route signs were found in place away from trailhead locations in areas evaluated within both the Barstow and Ridgecrest jurisdictions.  Rock lining across the entrance of closed routes, as identified as an implementation action in the WEMO Plan, was found at only two locations (in the Juniper and the Ord Subregions).  This technique was noted as extremely ineffective at deterring continued vehicle use of closed routes.  Closed route barriers were found to have been constructed at the Jawbone-Butterbredt ACEC and adjacent to the town of Johannesburg; but vehicle operators generally rode around the terminal edge of these barriers to access the closed route. Non-compliance with barriers was primarilay associated with "green-sticker" license vehicles as evidenced by tracks at these sites. Vertical mulching and/or other means to effectively reclaim designated closed route entrances as outlined in the WEMO Plan was found to have been implemented in very few locations, and where done (e.g. at minimal areas in the Juniper Flats and Ord Mountains Subregions), the lack of subsequent BLM presence, monitoring and non-compliance use consequence has resulted in vandalism to costly rehabilitation efforts.  Non-compliant use of designated closed routes has continued and in some instances escalated dramatically.  Similarly, the use of barriers in the Ridgecrest public land jurisdiction without reclamation of the closed route located behind these barriers and no subsequent BLM presence or non-compliance use consequence, has resulted in vandalism to installed barriers and continued non-compliant use of designated closed routes.

19.    BLM's failure to implement the specific measures set forth in the WEMO Plan is exemplified by the degree of signing (or lack thereof) along a 5.5 mile segment of Shadow Mountain Road.  Public lands surrounding the road have been designated as critical habitat for the desert tortoise in this Kramer Subregion area, and located within a Desert Wildlife Management Area ("DWMA") recommended by the recovery plan prepared for the tortoise; have above-average tortoise sign; have higher than average vehicle disturbance; and have significant urban

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 10 -

21343\2236136.1

interface issues.  The area was identified for specific work prioritization in the WEMO Plan.  However, only one numbered sign was noted along this road segment in the 2010 field study.   In another critical tortoise habitat area immediately northwest of Helendale, nine of the 12 routes (K1058, EF2040, K1044, K1060, K1012, K1039, K1009, and K2118) depicted as occurring in 2003-05 were designated open in the WEMO Plan.  Along a combined 3.5 mile segment of two of these routes (K1058 and K1012), a total of 38 side-routes were observed; with 26 side-routes occurring on public land.  Only one of these routes (K1039) was found signed in 2010; and this single open route sign was unrecognizable due to vandalism. Similarly, along a nine mile length segment of Helendale Road within tortoise critical habitat, also in the Kramer Subregion, 14 designated open routes were to be signed with numbered open signs.  However, only one numbered sign was noted along this road segment in 2010.

20.    Along a three-mile segment of Ft. Irwin Road in the Superior Subregion, also within desert tortoise critical habitat, only two of eight open routes were found signed at their entrance points.  Again these signs were not numbered, and one of these was vandalized to the point of not being recognizable.

21.    Along a 44 mile-length road segment of U.S. Highway 395 between Shadow Mountain Road and the town of Red Mountain, intersecting the El Mirage, Fremont, Kramer and Red Mountain Subregions, 25 routes were designated as open route trailhead entrances per the WEMO Plan.  The 2010 field study found only three trailheads with posted route signs: Route K2007, Route K2003 (Kramer Road) and RM3015 (Fremont-Cuddeback Road).  At two of these locations (K2007 and RM3015), signs were comprised of "*Limited Use Area, Vehicle Use Allowed Only On Routes Signed Open, No Cross County Travel*"; except no open route signs were noted past these trailhead entrances.  At K2003, a non-numbered open route sign was posted at the trailhead entrance, but no limited use sign was posted; and no open route signs were noted past this trailhead entrance. The signs at both K2003 and K2007 were found posted on private lands and the RM 3015 sign was found posted on public lands.

22.    No signing of any kind was found to have been completed in either the Mojave Monkeyflower Area of ACEC, or the Mojave Fishhook Cactus ACEC.  OHV route proliferation

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 11 -

21343\2236136.1

1    emanating from designated open routes within these ACECs is ongoing, and is resulting in

2    irreparable, adverse damage to soils, vegetation, visual resources, above-average density habitat

3    for the tortoise, and special status plant habitat for which the areas have designated.

4           23.     Similarly no open route signing was observed in a majority of the Bighorn

5    Subregion proximal to the Johnson Valley Open Area, i.e. MP3812, MP3818, MP3819, and

6    MP381.  At the braided multi-road entrance to this "open area" on Bessemer Mine Road (i.e.,

7    OJ047), unsigned, closed routes dissect the Creosote Rings ACEC.

8           24.     Massive route proliferation was documented within high-value wash wildlife

9    habitat along New Dixie Mine Road (Bighorn Subregion).  Similarly, out-of-control vehicle use

10   was noted within the Joshua Tree Unusual Plant Assemblage surrounding Vaughn Spring in the

11   Upper Rattlesnake locality (Bighorn Subregion), where not a single sign was observed.  Several

12   unsigned incursions into the adjacent Bighorn Wilderness were noted, including some directing

13   vehicle operators into habitat supporting the threatened Parish Daisy (*Erigeron parishii*).  In the

14   Lower Rattlesnake locality of the Bighorn Subregion, the primary route to Rattlesnake Canyon is

15   signed with a "Limited Use Area-Vehicle Travel Limited to Signed Open Routes Only".

16   However, not a single open route sign was noted along the length of all five involved routes.

17          25.     Likewise, in the El Mirage Subregion identified as a prioritized work area for

18   OHV route designation implementation in the WEMO Plan, very little open or closed route

19   signing was observed and a myriad of both types of route occur. As a result, route proliferation

20   and irreparable, adverse damage to soils, vegetation and habitat designated as critical for the

21   tortoise is occurring unabated.

22          26.     A general lack of adequate signing was similarly documented in the urban

23   interface area adjacent to northern Apple Valley, south of the Stoddard Valley Off-highway

24   Vehicle Area in the Granite Subregion; as well as in the Ord Mountains, sandwiched between the

25   Stoddard Valley and Johnson Valley Off-highway Vehicle Areas.  OHV route proliferation and

26   irreparable, adverse damage to soils, vegetation, unusual plant assemblages, important breeding

27   bird habitat, visual resources and wilderness was also found to be occurring in these areas

28   unabated.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 12 -

21343\2236136.1

27.     Tracking route condition and designation rationale by the public in certain "Subregions" identified by the WEMO Plan in the field is difficult, in that route numbering changes have been made.  This was observed in the El Mirage, Juniper, and Ord Subregions.  Apparent "minor modifications" have also opened previous closed routes in at least one specific area (i.e., MP2512 and MP25 through the Poste Homestead in Wonder Valley).

28.     In certain Multiple Use Class ("MUC") Unclassified lands in the Barstow Field Office jurisdiction, specifically within the Kramer Subregion (i.e., Bryman Bluffs, Point of Rocks Ridge on the eastern bank of the Mojave River at Helendale), BLM has similarly failed to complete and implement OHV route designations.  For example, no open routes have been designated in these areas per the relevant WEMO Plan maps.  The 2010 field study found that extensive unauthorized vehicle use is occurring in MUC Unclassified public lands in the Kramer Subregion on a regular basis, and that no signing of the relevant public lands has occurred.  Ongoing vehicle use is resulting in irreparable, adverse damage to soils, vegetation, wildlife habitat, visual and historical resources, as well as occupied habitat for the threatened desert tortoise.  Notable irreparable damage to these lands includes massive proliferating hill-climbs on Bryman Bluffs overlooking the Mojave River and at Point of Rocks-Mojave Trail, proximal to where the first cabin was constructed in the Mojave Desert.  OHV use responsible for noted resource damage emanates from designated open route SV1615 on public lands in the case of Bryman Bluffs, and from a state highway (National Trails Route 66) in the case of Point of Rocks-Mojave Trail. In both locations, signing and/or closed route rehabilitation could reflect some degree of active BLM management in line with the WEMO Plan route designation, but has not been accomplished to date.

29.     Data collected during the course of this 2010 study indicates that the BLM's WEMO Plan's stated action of "adaptive management," which was to include a "monitoring program," has not been implemented.  If such monitoring has occurred, as required by both the NEPA and the CDCA Plan, no corrective actions have been put in place to address adverse, irreparable damage to soils, vegetation and visual resources at numerous vehicle use non-compliance sites in the WEMO Planning area.  Per Executive Order 11989 and the CDCA Plan,

once non-compliance has been documented to result in adverse effects to natural resources, as identified through required monitoring, some immediate corrective measure or closure of the associated open route (or area) leading to this non-compliance damage is required.  No such corrective measure or closure was identified during the course of the 2010 field study.  A case in point is the Ord Mountain Subregion, which appeared to have the highest degree of open route signing, closed route reclamation and kiosk installation in the WEMO planning area as recorded in the 2010 field study.  However, much the reclamation of closed routes accomplished to date (e.g., OM6640, OM7321, OM7323), completed at considerable taxpayer expense, has been destroyed following WEMO Plan adoption by unauthorized vehicle use of unsigned, designated closed routes. Numerous open route signs have also been destroyed.  If effective monitoring and "adaptive management" were in place, corrective actions could have been applied in a timely manner prior to the damage becoming as extensive as now being documented in these areas.

30.      Even where some degree of open route signing has been observed in the Bighorn, El Mirage, Granite, Juniper Flats and Kramer Subregions (including the Mojave Fishhook Cactus and Mojave Monkeyflower ACECs), substantial OHV non-compliance with this signing – and therefore BLM failure to enforce WEMO Plan measures – was documented in the 2010 field study.   The severity of irreparable, adverse damage to soils, vegetation, visual resources, wilderness (Bighorn Wilderness) values, and Wild and Scenic River (Deep Creek) watershed resources was noted to be significant, with non-compliant OHV use occurring on a regular basis unabated.  Previous efforts to rehabilitate closed routes and/or fence closed OHV routes in the limited areas where this has occurred (i.e., Bighorn, Juniper and Ord Subregions) have been extensively vandalized, at a substantial cost to the American taxpayer.

31.      To limit further irreparable damage to public and private lands now occurring as the result of BLM's 2006 WEMO Plan OHV route designation, pending remand of the WEMO Plan and EIS to BLM, several measures are recommended for immediate implementation.  OHV routes identified as both open and closed on public lands need to be signed on the ground as such, so that OHV operators can be informed of what the legal route network is.  Currently, few of BLM's designated routes are signed as open or closed and little to no reclamation of closed routes

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 14 -

21343\2236136.1

is in place.  In the few areas where closed route reclamation have occurred, a lack of BLM presence, monitoring and subsequent non-compliance consequence has resulted in destruction of these efforts, at a considerable cost to taxpayers.  Throughout almost all public lands in the WEMO planning area evaluated in the 2010 field study, including the Bighorn, East Sierra, Fremont, Granite, Juniper, Kramer, Ord, Pinto, Red Mountain, and Superior Subregions, as well as in several ACECs, the public cannot discern what route is open, what route is on public land as opposed to private land, or which of two or more routes at open-closed route intersections are open or closed.  The Rand Mountain ACEC network is the only exception to this situation.

32.     Kiosks with large-scale maps of open route networks need to be installed at major trailheads within all designated subregions to inform the public of the designated open route network.  Only with a posted open route network map directing vehicle users on the ground, along with signed closed routes or completed rehabilitation of closed routes, can the public reasonably be expected to have knowledge of what vehicular use is allowed and what is not. Without such informed knowledge of permissible vehicular use on the ground, law enforcement rangers are severely restricted in their ability to issue citations for vehicle use non-compliance when this occurs; or to withstand a legal challenge of an issued citation in subsequent court proceedings on the basis of BLM's currently designated route network on the ground. Prioritization of such kiosk installation should include ACEC and wilderness trailhead installation first, such as trailheads for the Bighorn Mountains Wilderness, and for ACECs such as the Mojave Fishhook Cactus, Mojave Monkeyflower, Fremont-Kramer DWMA, Superior-Cronese DWMA, Ord-Rodman DWMA, and Pinto Mountains DWMA. Such kiosks should include all appropriate public outreach material pertaining to vehicle use, including information on penalties for non-compliance (including temporary closure for documented non-compliance) and information pertaining to local and county ordinances on vehicle use relative to private lands. A permit system associated with "green-sticker" licensed vehicle (i.e., state-issued license for off-road vehicle use on public lands) use of public lands should also be considered as part of the public outreach necessary for effective vehicle use management, whereby "green-sticker" vehicle operators are required to attend a specified education course outlining the allowances and

1   restrictions of such use on public lands.  These operators should subsequently be required to carry

2   proof of course attendance when operating "green-sticker" licensed vehicles on public lands.

3       33.    Where barriers have been installed at specific closed route locations in the

4   Ridgecrest public land jurisdiction, "vertical mulching" and/or other means of effectively

5   eliminating the visual appearance of an open route of travel, needs to be completed behind the

6   installed barrier.  While such "hands-on" active route designation implementation cannot be

7   expected to occur overnight, a schedule of implementation should be prepared by BLM,

8   identifying when this implementation is to occur within each subregion.   The amount of

9   implementation necessary to effectively manage vehicle use in a particular subregion should also

10  be taken into consideration in revising the currently-existing vehicle route network; as expansive

11  networks would undoubtedly require too lengthy an implementation period to manage associated

12  vehicle use in a manner that avoids irreparable damage in the interim.

13      34.    OHV route designation needs to be completed within the MUC Unclassified lands

14  in the Barstow Field Office jurisdiction, specifically within the Kramer Subregion (i.e., Bryman

15  Bluffs, Point of Rocks Ridge on the eastern bank of the Mojave River at Helendale), where it is

16  unclear whether or not a route designation has been completed.  If such route designation was

17  completed per the 2006 WEMO Plan route designation record of decision, closed routes need to

18  be signed as such (or reclamation completed), to halt the ongoing irreparable damage to public

19  land resources and adjoining private lands.  If this route designation has not been completed as

20  part of the 2006 WEMO Plan route designation, then route designation is required to be

21  implemented per the CDCA Plan on the basis of irreparable damage occurring at these locations.

22      35.    A monitoring plan needs to be established for all of the WEMO route designation

23  network with clear set of monitoring objectives and a specific non-compliance threshold

24  established, which when triggered, initiates a subsequent temporary closure until such time as the

25  non-compliance is remedied.  Open routes leading to non-compliant use of closed routes, or

26  where route proliferation is occurring, need to be closed until such time as measures are

27  implemented to prevent a continuation of non-compliance, such as signing, "vertical mulch"

28  reclamation and/or barrier installation.  Where continued non-compliant use occurs on open

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI                                          - 16 -                                          21343\2236136.1

routes where temporary <u>individual route closures</u> have been implemented, temporary <u>area</u> <u>closures</u> need to be implemented.  The use of SMART objectives, (i.e., specific, measurable, achievable, relevant, and time-framed) commonly applied in BLM monitoring plans, needs to be incorporated in this monitoring plan, along with site-specific techniques to effectively gauge use compliance with the designated route network.  Associated monitoring should be mandated to occur on an as-needed or at least annual basis, with the results of such monitoring posted in a manner easily accessible by the public, in furtherance of the 2009 memorandum to federal departments on the open government directive issued by the Office of Management and Budget ("OMB") and the draft guidance memorandum issued in 2010 to federal departments issued by the Council on Environmental Quality ("CEQ") related to NEPA mitigation and monitoring.

36.     Due to the severity of OHV non-compliance and ongoing irreparable damage to public land resources observed in the urban interface areas encompassing the Bighorn Subregion (i.e. urban interface of Johnson Valley, Landers and Yucca Valley); El Mirage Subregion (i.e. urban interface of Helendale and Adelanto); Juniper Subregion (i.e. urban interface of Apple Valley, Hesperia and Victorville); and Kramer Subregion, including the Mojave Fishhook Cactus ACEC, Mojave Monkeyflower ACEC, Shadow Mountain and Helendale Roads (i.e. urban interface of Helendale), temporary <u>area closures</u> to all "green-sticker" license vehicle use should be implemented  immediately and be maintained until such time as all designated closed routes are signed as closed.  Open routes in these subregions concurrently need to be signed on a line-of-sight or similar easily discerned basis as described in the WEMO Plan.  Kiosks and/or bulletin boards with a large-scale map of the designated open rote network needs to be posted at primary trailheads.  Lastly, a monitoring plan needs to be established with a clear set of monitoring objectives as well as a specific non-compliance threshold, which when triggered, initiates a subsequent extension of the temporary closure until such time as the non-compliance is fully remedied.  These subregions should not be open to "green-sticker" license vehicle use until these fundamental route network management tasks are accomplished.

37.     Similarly, in the historical off-road use and "open area" proximal subregions of Fremont, Granite, Ord, Red Mountain and Superior Subregions, temporary <u>area closures</u> to all

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

- 17 -

21343\2236136.1

"green-sticker" license vehicle use should be implemented immediately and be maintained until such time as the tasks outlined above are accomplished.  These temporary closures should be maintained until such time as all designated closed routes originating from the open route are effectively signed as closed; the subject open routes are signed on a line-of-sight or similar easily discerned basis; kiosks at primary trailheads installed; and a monitoring plan has been established as described above.

38.    The following references was considered in the above declaration:

**Exhibit A.** Egan, T.B., R.E. Parker, and E.B. Patrovsky.  2010. ***Route designation & implementation study in the western Mojave Desert.*** Document prepared for the California Native Plant Society, Defenders of Wildlife, Desert Tortoise Council, Desert Tortoise Preserve Committee, and Friends of Juniper Flats.  Site reports include:

(A1) Route OJ047 (Creosote Rings ACEC)

(A2) North Edwards (El Mirage Subregion)

(A3) Fairview (Granite Subregion)

(A4) Route MP282, New Dixie Mine Road (Bighorn Subregion)

(A5) Route MP2815, Ruby Mountain (Bighorn Subregion)

(A6) Route MP4011, Bighorn Wilderness Eastern Boundary (Bighorn Subregion)

(A7) Upper Rattlesnake (Bighorn Subregion)

(A8)Lower Rattlesnake (Bighorn Subregion)

(A9) Route JF3330, Arrastre Canyon (Juniper Subregion)

(A10) Route JF3380, Deep Creek-Mojave River (Juniper Subregion)

(A11) Route JF3355M, Arrastre Canyon (Juniper Subregion)

(A12) Route JF3359M, Arrastre Canyon (Juniper Subregion)

(A13) Route SV1615, Bryman Bluffs Unclassified Lands (Kramer Subregion)

(A14) Mojave Fishhook Cactus ACEC North Boundary, Unclassified Lands
(Kramer Subregion)

(A15) Route K1009, Fremont-Kramer Desert Wildlife Management Area ACEC
(Kramer Subregion)

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI
- 18 -
21343\2236136.1

1                     (A16) Route K1012, Helendale Northwest (Kramer Subregion)

2                     (A17) Route K1039, Shadow Mountain North (Kramer Subregion)

3                     (A18) Route K1058, Helendale Northwest (Kramer Subregion)

4                     (A19) Route K2007, Helendale Northwest (Kramer Subregion)

5                     (A20) Point of Rocks, Unclassified Lands (Kramer Subregion)

6                     (A21) Route SV252 (Mojave Monkeyflower ACEC)

7                     (A22) Route SV2120 (Mojave Fishhook Cactus ACEC)

8                     (A23) Route OM6640 (Ord Subregion)

9                     (A24) Route OM7321 (Ord Subregion)

10                    (A25) Route OM7323 (Ord Subregion)

11                    (A26) Fremont Southwest (Fremont Subregion)

12                    (A27) West Cuddeback Lake (Red Mountain Subregion)

13                    (A28) Boron Northeast (Red Mountain Subregion)

14                    (A29) Red Mountain North (Red Mountain Subregion)

15                    (A30) County Line Special Use Area (Red Mountain Subregion)

16                    (A31) Goler Gulch East (Rand Mountains ACEC-El Paso Subregion)

17                    (A32) Rand Mountains-Fremont Valley (Rand Mountains ACEC)

18                    **Exhibit B.** Egan, T.B. 2010. ***Vehicle Use Impacts Bibliography, With Emphasis***

19          ***on the California Desert.*** Document prepared for the California Native Plant

20          Society, Defenders of Wildlife, Desert Tortoise Council, Desert Tortoise Preserve

21          Committee, and Friends of Juniper Flats.

22              39.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

23  is true and correct.

24                  DATED:      April 16, 2010

25                                /s/_____
                                    Thomas Egan

26
        **I, David Lazerwitz, hereby attest that I have obtained concurrence in the e-filing of this**
27  **document from declarant, and I will maintain records to supprt this concurrence pursuant**
        **to General Order 45 Section X.B.**

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

DECLARATION OF THOMAS EGAN
No. 3:06 CV 04884 SI

21343\2236136.1