Steven P. Quarles
squarles@crowell.com
J. Michael Klise (*pro hac vice*)
jmklise@crowell.com
Thomas R. Lundquist (*pro hac vice*)
tlundquist@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, D.C. 20004-2595
Phone:  202-624-2600
Facsimile:  202-628-5116

Steven P. Rice (SBN 094321)
CROWELL & MORING LLP
3 Park Plaza
20th Floor
Irvine, CA 92614-8505
Phone:  949-263-8400
Facsimile:  949-263-8414
srice@crowell.com

Attorneys for Intervenor-Defendants Kern County, San Bernardino County, and Imperial County, California; and QuadState Local Governments Authority

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br>　　　　Plaintiffs,<br><br>　　v.<br><br>U.S. BUREAU OF LAND MANAGEMENT, *et al.*,<br>　　　　Defendants,<br><br>　　and<br><br>KERN COUNTY, CALIFORNIA, *et al.*,<br>　　　　Intervenor-Defendants. | No. 06-4884-SI<br><br>**THE COUNTIES' RESPONSE TO PLAINTIFFS' MOTION ON REMEDIES**<br><br>Hearing Date:  September 3, 2010<br>Time:  10:00 a.m.<br>Courtroom 10, 19th Floor<br><br>The Honorable Susan Illston |

　　　　Intervenor-Defendants Kern County, California; San Bernardino County, California; Imperial County, California; and QuadState Local Governments Authority (the "Counties") hereby respond to

the motion for partial vacatur and injunctive relief filed by plaintiffs Center for Biological Diversity, *et al.* ("CBD Mot.") (Doc. 185). On the set of issues of primary concern to the Counties in this litigation, the Court's September 28, 2009 Summary Judgment Order (Doc. 169) upheld the Federal Defendants' compliance with § 7 of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536, including two biological opinions issued by the U.S. Fish and Wildlife Service ("FWS"). On other points, however, the Court granted summary judgment for the plaintiffs and concluded that defendant Bureau of Land Management ("BLM") had failed to comply fully with procedural provisions of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1785, in certain respects.

The parties were unable to agree on an appropriate remedy for the violations the Court found, and the present round of briefing followed. CBD now asks the Court to vacate parts of the 2006 Record of Decision ("ROD") for the BLM West Mojave ("WEMO") Plan, retain certain portions of the ROD that provide environmental protection, vacate several implementation decisions issued after the ROD, set deadlines to complete a revised WEMO route network for off-highway vehicle ("OHV") use and enjoin OHV use in portions of WEMO pending completion of a revised decision.

This response by the Counties joins in and supplements the Federal Defendants' Response to Plaintiffs' Motion on Remedies ("Fed. Resp.") (Doc. 201).

**ARGUMENT**

To the extent the Court ruled in plaintiffs' favor, its order was directed primarily at procedural violations of NEPA and FLPMA in the designation of the OHV network. On those issues, the Counties here follow their past practice in this litigation and leave detailed responses on the OHV-based remedies to the Federal Defendants and the two groups of intervenors who represent OHV and related interests. The Counties hereby join in those arguments and supplement them below, with a particular focus on recent Supreme Court jurisprudence concerning the availability of injunctive relief in NEPA litigation, and on plaintiffs' proposed injunction that would limit OHV use to street-legal vehicles.

1. The Counties join in the arguments presented in the Federal Defendants' Response to Plaintiffs' Motion on Remedies. As explained there, the Court should: leave substantial portions of

the ROD in place and limit any relief to vacating those provisions of the ROD concerning OHV route designations; establish the reasonable deadline proposed by the Federal Defendants for revising the WEMO OHV routes; deny CBD's requested relief for the post-ROD implementation decisions; and deny CBD's request for interim injunctive relief restricting OHV use.

2. To support their claim for injunctive relief, plaintiffs rely on *dicta* about environmental injury and irreparable harm from *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). CBD Mot. at 34. Yet, the holding in *Amoco* does not support injunctive relief here, because the Supreme Court in that case *reversed* a Ninth Circuit order that directed the district court to impose an injunction. The Supreme Court cautioned that an "injunction is an equitable remedy that does not issue as of course." *Id.* at 530 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982)). Rather, "[i]n each case, a court must balance the competing claims of injury and must consider the effect on each party of granting or withholding of the requested relief," and must give "particular regard . . . to the public interest." *Id.* And, directly addressing the inference plaintiffs draws from the single-sentence *dicta* they quote, the Court emphasized that a "presumption" of irreparable harm any time an agency is found not to have thoroughly evaluated the environmental impact of a proposed action is "contrary to traditional equitable principles." *Id.* at 545.[1] Applying those precepts, the Court agreed with the district court's conclusion that the pubic interest in continued oil exploration under the Outer Continental Shelf Lands Act foreclosed injunctive relief. And the Court reversed the Ninth Circuit erroneous conclusion that federal environmental statutes superseded that interest and that a putative procedural violation of one such statute warranted an injunction against oil exploration.

3. Twice in the past 20 months, the Supreme Court has confirmed the continuing vitality of the *Amoco/Romero-Barcelo* analysis in cases involving alleged procedural violations of NEPA

---

[1] *See also Northern Cheyenne Tribe v. Hodel*, 851 F.2d 1152, 1156-57 (9th Cir. 1988) (NEPA error made leases *voidable* in Interior's discretion, not *void*). Equity "forbids that the public interests should be prejudiced by the negligence of the [federal agency] officers or agents to whose care they are confided." *Brock v. Pierce County*, 476 U.S. 253, 259 (1986). Accordingly, courts should be "most reluctant to conclude that every failure of an agency to observe a procedural requirement voids a subsequent agency action, especially when important public rights are at stake." *Id*.

1 and other environmental statutes. *See Monsanto Co. v. Geertson Seed Farms*, 2102 WL 2471057

2 (June 21, 2010)[2]; *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365 (2008). *Winter*

3 confirmed that to qualify for injunctive relief, including in cases alleging environmental harm, a

4 plaintiff "must establish that . . . he is likely to suffer irreparable harm . . . , that the balance of

5 equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374

6 (emphasis added). The Court explained that NEPA is a procedural statute that "does not mandate

7 particular results," whereas the plaintiffs there (like the plaintiffs in the present case) were seeking a

8 disproportionate *substantive* injunction against activities a federal agency had authorized. *Id.* at 376.

9 Stressing that "courts of equity should pay particular regard for the public consequences in

10 employing the extraordinary remedy of injunction," the Court overturned a preliminary injunction

11 against the U.S. Navy because the public interest (in that case, the public's and U.S. Navy's interest

12 in effective, realistic training of sailors) outweighed any showing the plaintiffs had or could have

13 made of injury – even irreparable injury – to marine species present in the waters in which the Navy

14 was conducting training exercises. *Id.* at 376-77 (quoting *Romero-Barcelo*, 456 U.S. at 312).

15       4. The Supreme Court's ruling eleven days ago in *Monsanto* confirmed these principles

16 in the same procedural setting as the present case – briefing on an appropriate remedy after a court

17 finds, in the merits phase of a lawsuit, that the defendant federal agency committed procedural

18 violations of NEPA. In *Monsanto*, the district court had granted, and the Ninth Circuit had upheld, a

19 permanent injunction against the planting of seeds whose use the U.S. Department of Agriculture

20 had approved without complying fully with NEPA. The lower court rulings were based on the same

21 assumption plaintiffs rely on in this case – that an injunction delaying the government project until

22 the NEPA defects are cured is the norm in NEPA cases. The Supreme Court reversed. It found that

23 the lower courts' presumption that an injunction is the proper remedy for a NEPA violation except in

24 unusual circumstances "invert[s] the proper mode of analysis." 2010 WL 2471057 at *12. The

25 Court held that "no such thumb on the scales is warranted." *Id.* Instead,

---

[2] The Federal Defendants lodged a copy of *Monsanto* with this Court in their Notice of Recent Decision (June 23, 2010) (Doc. 223).

Counties' Response to Plaintiffs' Motion on Remedies, No. 06-4884-SI      Page 4

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L. C.,* 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). *The traditional four-factor test applies when a plaintiff seeks a permanent injunction to remedy a NEPA violation. See Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. ----, ----, 129 S. Ct. 365, 380-382, 172 L. Ed. 2d 249 (2008).

*Monsanto*, 2010 WL 2471057 at 11 (emphasis added). Accordingly, this Court should not presume that a substantive injunction restricting OHV use is warranted for the separately-curable NEPA and FLPMA defects the Court has found.

5. The plaintiffs here "must demonstrate" that they satisfy the four prerequisites laid out in *eBay*, 547 U.S. at 391 and *Winter*, 129 S. Ct. at 374-75. 2010 WL 2471057 at *11-12. In *Monsanto*, the Court found "none of the four factors . . . supports the District Court's injunction" against a federal agency. *Id*. at *13 and 14. Here, similarly, as Federal Defendants demonstrate in detail, the requested injunction should be denied because plaintiffs have not satisfied each prerequisite. *See* Fed. Resp. at 13-33.

6. The plaintiffs' request for an injunction limiting OHV use to street-legal vehicles epitomizes their failure to satisfy the prerequisites for injunctive relief. CBD has not explained why that disproportionate substantive injunction is warranted as remedy for the *procedural* NEPA defects found by the Court. In reality, the wholesale street-legal limitation not warranted as an across-the-board injunctive measure. The balance of hardships disfavors the street-legal limitation because, as Federal Defendants explain, *inter alia*: street-legal licensing of a vehicle does not preclude its off-highway use and thus would not avert environmental impacts associated with OHV use; non-street-legal vehicles can readily be upgraded to street-legal standards; visual distinctions between the two categories of vehicles are blurry, complicating enforcement of the restriction; drivers who are barred by the limitation may resort to self-help and create their own "routes" on private and non-federal lands, thus proliferating the kinds of impacts plaintiffs seek to reduce; and the limitation would diminish the number of legitimate recreational opportunities available to the public without a

corresponding reduction in environmental impacts. *See* Fed. Resp. at 19-20; Declaration of Mike W. Ahrens ¶¶ 7-15 (Doc. 202); Declaration of William Haigh ¶ 15 (Doc. 210).

7. The public interest, like the balance of hardships, weighs against the street-legal injunction. Of overarching significance, FLPMA provides that BLM lands are managed for multiple uses: "recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific, and historical values." 43 U.S.C. § 1702(c). Under this plain language, BLM must meet the legitimate recreational needs of the public. The street-legal limitation would disserve this interest because it would disenfranchise an entire segment of the recreational public that is statutorily entitled to use public lands. Further, the radical cut-back of existing OHV use that plaintiffs propose would require a substantial public educational effort by federal and local jurisdictions, along with changes in signage and other infrastructure, and BLM's funding sources could be imperiled. *See* Fed. Resp. at 19.

8. In addition, restricting travel to street-legal vehicles – even in the limited way described in rejected Alternative D of the WEMO EIS, which CBD cites – would only be viable if increased law enforcement is present to enforce the new rule, including addressing the increased use of private and nonfederal lands if non-street-legal vehicles are barred from other lands as the plaintiffs have requested. AR-202410. As Federal Defendants explain, the patchwork of land ownership requires a coordinated effort among Federal, State, and County law enforcement agencies. *E.g.*, Declaration of Roxie Trust ¶¶ 8-9, 39, 44, 48, 50-51, 146 (Doc. 214); Declaration of Kelly Claar ¶¶ 4, 6 (Doc. 209); Ahrens Decl ¶ 15. Closure of public land to all OHV use, or prohibiting non-street-legal vehicles, would create an "enforcement nightmare" for the agencies involved. Trust Decl. ¶ 44. Applying the restriction on all OHV routes, as CBD now proposes, would have en even greater impact on already strained federal and local law-enforcement resources, and would interfere with the ability of local law enforcement officials to prioritize the use of their limited personnel and resources. *See* Fed. Resp. at 29; Trust Decl. ¶ 146.

## **CONCLUSION**

Under the Supreme Court's jurisprudence, courts should prefer a "less drastic remedy" to a broad injunction, particularly to cure procedural violations by a federal agency in a NEPA case.

*Monsanto*, 2010 WL 2471057 at *16. Hence, the Federal Defendants' narrowly-tailored remedy is preferred. It cures the NEPA violation without interfering with the federal agencies' and local governments' public policy choices.

Respectfully submitted,

| | | |
|---|---|---|
| Steven P. Rice (SBN 094321)<br>CROWELL & MORING LLP<br>3 Park Plaza<br>20th Floor<br>Irvine, CA 92614-8505<br>(949) 263-8400<br>Fax: (949) 263-8414<br>srice@crowell.com<br><br>Dated: July 2, 2010 | By: | /s/ *J. Michael Klise*<br>J. Michael Klise (*pro hac vice*)<br>Steven P. Quarles (D.C. Bar No. 351668)<br>Thomas R. Lundquist (*pro hac vice*)<br>CROWELL & MORING LLP<br>1001 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20004-2595<br>(202) 624-2500<br>Fax: (202) 628-5116<br>jmklise@crowell.com |

Attorneys for Intervenor-Defendants Kern County, San Bernardino County, and Imperial County, California; and QuadState Local Governments Authority