IGNACIA S. MORENO, Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
CHARLES R. SHOCKEY, Attorney (D.C. Bar No. 914879)
Natural Resources Section, Sacramento Field Office
Environment and Natural Resources Division
United States Department of Justice
501 "I" Street, Suite 9-700
Sacramento, CA 95814-2322
Telephone:    (916) 930-2203
Facsimile:    (916) 930-2210
Email:        charles.shockey@usdoj.gov

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., Plaintiffs, | Case No. 3:06-cv-04884 SI |
| v. | **Supplemental Declaration of Alan Stein** |
| U.S. BUREAU OF LAND MANAGEMENT, et al., Federal Defendants, | |
| and | |
| KERN COUNTY, CALIFORNIA, et al., Intervenor-Defendants. | |

I, ALAN STEIN, declare as follows.  I am over 21 years old, I have personal knowledge of the following, and I could testify competently if called as a witness.

1. This Supplemental Declaration is intended to inform the court of certain additional information that became apparent since I executed my earlier Declaration and is limited to identifying possible impacts of route closures not previously addressed. My June 16, 2010 Declaration at paragraph 85 informed the court about the BLM's current efforts with regard to processing applications for renewable energy projects on public lands within the California Desert Conservation Area with respect to possible implications for completing a review of route designations in the West Mojave Land Use Plan (WEMO LUP) area. Because California possesses some of the most productive solar and wind energy resources in the nation, the BLM in California plays a pivotal role in implementing the President's agenda for a clean energy economy. There are important issues related to the availability of access to proposed and potential renewable energy project areas that should be brought to the court's attention before the court decides on interim remedies.

2. The efforts of federal agencies to respond to the demand for renewable energy development is in response to Title II, Section 211 of the Energy Policy and of 2005 and Executive Order 13212, Actions to Expedite Energy-Related Projects. BLM's efforts to respond to these requirements fall into two major categories. First, BLM is continuing to process pending applications for solar, wind, and geothermal energy development. Second BLM and the Office of Energy Efficiency and Renewable Energy (EERE), Department of Energy are preparing a Programmatic Environmental Impact Statement (PEIS) to evaluate utility scale solar energy development, to develop Agency-specific programs that would establish environmental policies and mitigation strategies, and to amend relevant BLM land use plans, including the CDCA Plan, as amended by the WEMO LUP.

**Processing Pending Solar Energy Applications**

3.  In the WEMO LUP area, the BLM has received applications for 15 separate solar energy development site locations.  As part of the application process, the BLM and other agencies often require that various types of survey be conducted during the environmental review process completed to comply with the National Environmental Policy Act of 1969 (NEPA).  Examples of these surveys include those for threatened and endangered species, in order to complete consultation under the Endangered Species Act, and surveys to complete consultation under the National Historic Preservation Act (NHPA).  The surveys are generally pedestrian surveys; the survey team (for biological or cultural resources) walks the project site.  However, to reach the project sites, applicants and their contractors generally gain access to the potential site locations to be surveyed by driving on designated open routes.  These are some of the same open routes that are used by OHV recreationists and that are the subject of this litigation.  The use of these routes by the Applicants and their contractors is that of casual use.  If these open routes are closed to OHV recreational use as an interim remedy, they would also be closed to other forms of casual use, including casual use by these Applicants.  If the designated open routes are closed, it would not only impact recreational use, but it would also complicate the process of completing the surveys required for potential renewable energy sites.

**Wind Energy Testing and Development**

4.  In addition to application for wind energy development, there are also right-of-way authorizations that have been issued for wind energy testing within the WEMO LUP area.  These authorizations approve the installation and operation of meteorological towers (for 3 years) for testing wind resources in an area under application for wind energy development.  An applicant

for wind energy development must first determine if sufficient wind resources exist in a particular location before it may be granted a wind energy development right of way. Installation of meteorological towers generally involves minimal surface disturbance, and Applicants use existing open routes for access to the wind test site on an infrequent basis. BLM does not issue right-of-way grants for casual use of open routes for access purposes.

5.  Closure of these open routes would affect the ability of the wind testing right-of-way holders to conduct operations because they do not possess rights-of-way along existing open routes. Within the WEMO LUP area, the BLM authorized nine (9) wind energy testing projects; there are 34 wind energy testing applications pending.  Within the WEMO LUP area, the BLM authorized two (2) wind energy development projects; there are six (6) wind energy development applications pending.   There are also two (2) wind energy projects within the WEMO area that are not on public land administered by the BLM.  All of these projects could be affected by the closure of open routes on public lands.

**Geothermal Energy Development**

6.  There are seven (7) authorized geothermal energy projects within the WEMO LUP area; three (3) applications are pending.  Geothermal energy development follows a process that begins with the decision to issue a lease for geothermal resources in a defined area.  The lease gives the lease holder the right to explore for geothermal energy resources on the lease.  The decision process includes environmental analysis under NEPA, together with the required consultations at that stage.  The next step is exploration which is subject to the NEPA process, followed by the preparation by the lease holder of a proposed plan of development.  These steps are also subject to the NEPA process and all the required consultation processes.  Each of these NEPA review

steps require various surveys to assist in the preparation of an adequate analysis to comply with the requirements of NEPA, the Endangered Species Act, the NHPA and other requirements. The closure of open routes within the WEMO LUP area as an interim remedy would adversely impact the ability of these interest holders to complete the required surveys and the ability of the BLM to comply with several statutes. As a result, the BLM may not be able to reach a decision on these proposed projects until and unless alternative access is provided.

**Solar Energy Programmatic Environmental Impact Statement (PEIS)**

7. The Notice of Intent to prepare a PEIS for Solar Energy Development was published on May 29, 2008 (Federal Register/Vol. 73, No. 104, pages 30908-30913). As part of this process, BLM identified Solar Energy Study Areas (SESA). One of these areas, Pisgah (26,282 acres), is in the WEMO LUP area. These areas are being studied with the goal of determining which of the SESAs would be identified as Solar Energy Zones (SEZ). The SEZ areas would be where, when the decision is made on the PEIS, solar energy development on public lands would take place.

8. The BLM is considering development of agency-specific programs that would establish environmental policies and mitigation strategies (e.g., best management practices and siting criteria) related to solar energy development in six western states (Arizona, California, Colorado, New Mexico, Nevada and Utah).

9. When the SESAs were identified (Federal Register/Vol. 74, No. 124, June 30, 2009, pages 31307-31308) notice was published in the Federal Register proposing to withdraw public lands from settlement, sale, location, or entry under the general land laws to protect and preserve solar energy study areas for future solar energy development (Federal Register/Vol. 74, No. 124, June 30, 2009, pages 31308-31309). The notice segregated the lands for up to 23 years. While

pending applications for development were not affected by the withdrawal, no additional

applications would be accepted while the withdrawal remains in effect.

10.  We expect the Solar Energy PEIS to be completed before BLM completes the process of

reconsidering designation of routes in the WEMO LUP area.  When the Record of Decision on

the PEIS is signed, it will identify where and how additional solar energy development on public

lands will be considered.  If designated open routes are closed to public use, the route closures

would make it very difficult for solar energy project applicants to reach potential project sites.

The Solar Energy PEIS will develop a national program that will help to identify areas where

solar energy development is most appropriate and the best management practices that would be

used to guide development and provide appropriate mitigation.  Once these decisions are made at

the programmatic level and land use plans are amended, it is expected that BLM would analyze

individual projects on a more focused NEPA basis.  This would enable BLM to expedite

processing of solar energy development applications in conformance with amended land use

plans.  If motorized vehicle access along existing open routes is restricted, BLM's ability to

efficiently process solar energy applications would be diminished.

**Conclusion**

11.  The summary provided in this declaration discusses only renewable energy development

issues as they relate to access issues in the WEMO LUP area.  While renewable energy

development is a very high national priority and a high priority for the State of California, there

are many other activities that occur routinely in the WEMO area that depend on access through

public lands and on open routes within the WEMO LUP area.  For example, another high priority

for BLM California is the remediation of physical safety hazards associated with abandoned

mine lands (AML). There are thousands of these sites on public lands. These AML sites may pose a risk of serious injury or death to members of the public who may come across them suddenly and inadvertently while recreating on public lands. The BLM is in the process of remediating thousands of these physical safety hazards. These remediation activities require access along designated open routes. Since 2001, counties in southern California, including those in the WEMO LUP area expressed concern over access. We have assured each county, in writing, that BLM is committed to working with them to assure that search and rescue, fire protection, and health and law enforcement personnel retain the access necessary to carry out their public responsibilities. Closure of open routes in the WEMO LUP area as an interim remedy may also affect the ability of State and local government to carry out these important public service functions.

12. Many other individuals and people living and conducting business in and around the desert use open routes across public lands to conduct their daily affairs as casual use on open routes. This is evident with the use of routes in the Wonder Valley area where private property owners use BLM designated open routes to access their properties. Route designation is not simply an issue that affects recreation, it affects the way of life for people who live in and around the desert areas.

I declare under penalty of perjury under 28 U.S.C. 1746 that the foregoing is true and correct and that this declaration was executed on July 12, 2010 in Riverside, California.

_Alan Stein_

Alan Stein