United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | No. C 06-4884 SI |
| Plaintiff, | **ORDER RE: REMEDY** |
| v. | |
| US BUREAU OF LAND MANAGEMENT, | |
| Defendant. | |

The Court's September 28, 2009 Order Re: Summary Judgment Motions found that defendants violated the National Environmental Policy Act ("NEPA") and the Federal Land Policy Management Act ("FLPMA") in adopting the March 2006 Western Mojave management plan amendment ("2006 ROD"), but that the defendants did not violate the Endangered Species Act. After unsuccessful settlement talks, the parties agreed to a briefing schedule for determining the appropriate remedy in this matter, including the terms of a vacatur of the decision, the terms of any remand, and any injunctive relief during the remand period. The parties submitted full briefing, including exhibits and declarations in support of their respective positions, and on September 3, 2010, the Court held a hearing on plaintiffs' motion for partial vacatur and injunctive relief. Upon consideration of the voluminous record and the arguments of counsel at the hearing, the Court makes the following findings and enters this Order.

**BACKGROUND**

In the September 28, 2009 summary judgment order, the Court held that (1) the "decision tree" that the Bureau of Land Management ("BLM") used to designate Off Highway Vehicle ("OHV") routes was flawed because it did not comply with regulations mandating that the BLM consider various

"minimization criteria" when designating OHV routes; (2) because the Plan authorizes numerous OHV routes that were not in existence in 1980, the Plan is inconsistent with the governing land use plan which limits OHV routes to those existing in 1980; (3) the Environmental Impact Statement was flawed because it did not contain a reasonable range of alternatives to the proposed action because all alternatives considered the same 5,098 mile OHV network, and because its discussion of the "no action" alternative was incomplete; and (4) the EIS was flawed in that its analysis of impacts on cultural resources, certain biological resources, and air quality, is incomplete.

With respect to the Endangered Species Act claims, the Court found that the Fish and Wildlife Service considered all relevant factors, and that its analyses and conclusions are reasoned and supported by the record.

**DISCUSSION**

On remand, the parties agree that the BLM will need to (1) prepare a revised OHV route network that complies with the minimization criteria, (2) either return to the 1980 OHV network or amend the CDCA Plan to lift the restriction on post-1980 routes, and (3) conduct supplemental NEPA analysis. The parties dispute 4 issues about the remedy: (1) the deadline for agency action on remand; (2) the scope of the vacatur of the 2006 ROD; (3) whether additional decisions that are "tiered" to the plans that the Court found unlawful also need to be vacated; and (4) whether any mitigating measures/affirmative injunctive relief should be ordered.

**I.      Deadline for agency action on remand**

Plaintiffs request that the Court order BLM to issue a final decision within 24 months of the final order in this matter, or January 31, 2013. The BLM agrees that a deadline is appropriate, but seeks a longer deadline of four and a half years from the date of the September 28, 2009 order, or March 31, 2014. The BLM asserts that the absolute minimum amount of time needed for remand is more than three and a half years. Defendants argue that the scope of the work on remand is extensive, and that plaintiffs' proposed deadline is not feasible. As support, defendants have submitted the declaration of Alan Stein, the Deputy District Manager for Resources in BLM's California Desert District Office. In

2

his declaration, Mr. Stein identifies the factors that the BLM will consider in preparing a revised OHV network and the environmental documentation to address the Court's findings, and explains why additional time is required beyond plaintiffs' suggested two-year period. *See* Stein Decl. ¶¶ 78-95. Defendants assert that the timetable is further complicated by the fact that renewable energy development has become a top domestic priority for the federal government and the Interior Department, and many renewable energy projects have been proposed for the Mojave Desert region. *See id*. at ¶¶ 85, 88. As of the time Mr. Stein signed his declaration in June 2010, the BLM was working on EISs for eleven renewable energy projects, and the BLM anticipated that it will be processing applications of a number of other projects. *Id*.

This Court has authority to impose deadlines when remanding an agency decision of the kind at issue here. *See, e.g., Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937 (9th Cir. 2008). The Court also recognizes the competing demands placed upon the BLM and the BLM's finite resources. The Court finds that the BLM has sufficiently explained why it requires until March 2014 to complete the extensive work required on remand.[1] While the Court is mindful of plaintiffs' concerns that the BLM's proposed timeline is too lengthy, the Court does not want to set an unrealistic deadline that cannot be met and that will lead to further disputes or litigation between the parties. Accordingly, the Court directs the BLM to complete all of the work required by the Court's September 28, 2009 order, and to issue a revised ROD following appropriate NEPA compliance, by **March 31, 2014**. The BLM shall also provide quarterly public updates on the BLM's California Desert District website regarding the planning process. *See* Stein Decl. ¶ 91.

On remand, BLM shall conduct the additional analysis identified in the September 28, 2009 order as necessary to address the statutory failures specific in that order under FLPMA and NEPA. This remand specifically will require the BLM to reconsider the OHV route designation process and network for the West Mojave Plan area under FLPMA and issue a revised decision that complies with FLPMA

---

[1] Plaintiffs assert that the BLM's briefing and supporting declarations demonstrate that the BLM "refuses to acknowledge the substance of the Court's summary judgment order" and that "BLM apparently believes that the Court's ruling was merely a technical one, and that BLM is free to argue here – and later conclude on remand – that the original decision in fact minimized impacts to the relevant public land resources identified in its regulations." Reply at 2:4-5, 2:21-24. The Court is confident that, and fully expects that, the BLM will comply with its statutory duties on remand.

and with BLM's regulations that establish "minimization criteria" for OHV routes, 43 C.F.R. § 8432.1. BLM is also directed to prepare a supplemental NEPA analysis that reconsiders the "no action" alternative and considers a broader range of alternatives, including at least one alternative that analyzes a less extensive route network for the Western Mojave area. Further, the BLM is directed to conduct the additional analysis of those environmental impacts for which the Court found a failure to comply with NEPA in the September 28, 2009 order.

**II.    Partial vacatur of the ROD**

Under the Administrative Procedure Act ("APA"), courts normally "set aside" unlawful agency actions and remand the matter for further consideration. 5 U.S.C. § 706(2); *see also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[T]he proper course . . . is to remand to the agency for additional investigation or explanation."). The Court retains the authority, however, to exercise its equitable discretion to order partial or no vacatur, as necessary to protect resources. *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995); *see also ICORE, Inc. v. FCC*, 985 F.2d 1075, 1082-83 (D.C. Cir. 1993) (collecting cases). This is appropriate when, for example, interim vacatur of environmental regulations may have unpredictable or irreversible consequences. *See Natural Res. Def. Council v. U.S. Dep't of the Interior*, 275 F. Supp. 2d 1136, 1146 (C.D. Cal. 2002).

Here, the parties agree that most elements of the 2006 WEMO ROD should be retained, and the Court finds that equitable factors weigh in favor of partial vacatur of the WEMO ROD. Complete vacatur of the ROD would have unpredictable and undesirable consequences on important desert habitat that gained additional protections under the WEMO decision, while retention of the ROD in full is equally inappropriate.

The Court's determination in its September 29, 2009 order that the BLM's decision complies with the Endangered Species Act was premised on Amendments 1, 2, 3, 4, 5, 6, 7, 8, 10, and 11 of the WEMO Biological Opinion ("BiOp"). These provisions are implemented through corresponding protective provisions in the ROD. The findings of "no jeopardy" and "no adverse modification" in the BiOp are premised on these measures. Vacatur of these aspects of the ROD would directly undermine the WEMO BiOP. The parties have therefore requested that these key species and habitat protection

4

provisions remain in place during remand.

The Court finds that in order to protect listed species and habitats, the following protective measures in the ROD and additional measures adopted in the WEMO Plan shall be left in place during remand:

- Establish New Areas of Critical Environmental Concern (ROD at 6; AR 200052);
- Adjust Area of Critical Environmental Concern Boundaries (ROD at 6; AR 200051);
- Amend CDCA Plan Multiple-Use Classes (ROD at 6-8; AR 200051-53);
- Establish Mojave Ground Squirrel Wildlife Habitat Management Area (ROD at 8; AR 200053);
- Modify West Mojave Land Tenure Adjustment Program (ROD at 9; AR 200054);
- Approve Regional Public Land Health Standards and Guidelines (ROD at 9; AR 200054);
- Control Motorized Vehicle Stopping, Parking and Vehicular Camping in DWMAs (ROD at 9; AR 200054);
- Delete Barstow to Vegas Race Course (ROD at 10; AR 200055);
- Implementation Schedule – retain to extent consistent with portions of ROD not vacated on remand (ROD at 10; AR 200055);

In addition, the following sections of the ROD shall remain in effect:

- Mitigation Measures (ROD at 17; AR 200062);
- Monitoring Program (ROD at 18; AR 200063);
- Errata (retain to extent consistent with portions of ROD not vacated on remand (ROD at 10; AR 200055)

The following policy changes adopted under the WEMO Plan shall remain in effect:

- The 1% limit on surface disturbance and development in all ACECs and DWMAs should remain in place (*see* AR 201720-21 and AR 201892);
- All routes that were closed under the WEMO decision should remain closed;
- The policy that all routes are to be considered closed unless signed "open" should remain in effect (AR 211408; policy stated in route designation EA);

5

      •       Provisions allowing for certain grazing allotments to be voluntarily relinquished and certain areas designated as not available for grazing and any subsequent decisions to relinquish or retire any grazing allotments should remain in effect (AR 201821-24 and AR 201891).

### A.     Portions of the ROD Adopting Motorized Vehicle Access Network

With regard to partial vacatur, there are two main areas of dispute between the parties. First, the parties dispute whether the Court should vacate those portions of the WEMO Plan that formally adopted new routes for OHV use. Those portions of the ROD are: (1) the adoption of the Motorized Vehicle Access Network in the Rand Mountains/Fremont Valley Management Plan; (2) the adoption of the Motorized Vehicle Access Network in the Afton Canyon Natural Area; and (3) the establishment of a "connector route" in the Stoddard Valley to Johnson Valley Corridor. Plaintiffs assert that these portions of the ROD should be vacated because the Court's September 28, 2009 order held that the Motorized Vehicle Access Network was unlawfully adopted, and thus, plaintiffs argue, retaining these measures would not preserve the status quo or protect desert resources.

Defendants assert, somewhat inconsistently, that the Court should limit any relief to vacating those portions of the ROD concerning OHV route designation, but they also oppose vacatur of the specific portions of the ROD identified by plaintiffs. Defendants assert that adoption of the Motorized Vehicle Access Network in the Rand Mountains/Fremont Valley Management Plan should not be vacated because of a variety of actions that the BLM has taken to implement the plan. *See* Stein Decl. ¶ 75; *see generally* Villalobos Decl. Similarly, defendants assert that the adoption of the Motorized Vehicle Access Network in the Afton Canyon Natural Area should not be vacated because of restoration and/or route designation and public education that has taken place in 2008-2010. *See* Stein Decl. ¶ 75; *see generally* Trost Decl. Defendants do not specifically address the Stoddard Valley to Johnson Valley connector route. Further, aside from simply directing the Court to the Trost and Villalobos Declarations, defendants do not advance any argument against vacatur of these portions of the WEMO Plan.

The Court finds that vacatur of these specific portions of the WEMO Plan is appropriate. As

defendants recognize, vacatur is the usual remedy for unlawful agency action, and defendants agree with the general principle that those portions of the ROD concerning OHV route designation should be vacated. Although the Villalobos and Trost declarations discuss the various actions that BLM has taken to implement the route networks in those areas, those actions do not address the deficiencies identified in the Court's summary judgment order regarding the route designation process. Accordingly, in because vacatur is the normal remedy in these circumstances, the Court orders that the following measures in the ROD shall be left in place during remand, except as noted:

- • Amend Rand Mountains/Fremont Valley Management Plan (except for adoption of Motorized Vehicle Access Network) (ROD at 8-9; AR 200053-54);
- • Modify Afton Canyon Natural Area (except for adoption of Motorized Vehicle Access Network) (ROD at 9; AR 200054); and
- • Modify Stoddard Valley to Johnson Valley Corridor (except for provision to "establish connector route") (ROD at 10; AR 200055).

### B. Limiting all routes to street legal vehicles only

Second, the parties dispute whether the 2003/2006 route designations should be vacated insofar as those designations allow use by non-street legal vehicles. Plaintiffs request that the route network established by the ROD, with certain exceptions discussed *supra* and in Section IV *infra*, remain intact, but that during the remand period all routes be considered "limited" routes available for use only to street legal vehicles. Plaintiffs contend that this vacatur request is appropriate and necessary to reduce interim damage to resources and provides a reasonable balance between competing concerns. Plaintiffs emphasize the fact that this limitation of permitting use only to street legal vehicles was proposed by the BLM as Alternative D in the FEIS, which the agency described as placing "a high priority on the conservation of ecosystems and natural communities." AR 201689. Plaintiffs assert that this limitation would not restrict access for residents or other recreationists.

Defendants and the OHV and County intervenors strongly oppose this remedy, which they characterize as a form of injunctive relief, and not simply as a form of "vacatur." Defendants argue, *inter alia*, that there is no evidentiary support for the assertion that street-legal vehicles will minimize

1 damage to the environment (which, as plaintiffs note, is inconsistent with the position taken in
2 Alternative D). Defendants argue that (1) street legal licensing does not preclude off highway
3 performance; (2) such a restriction would "reflect a wholesale reversal of BLM policy and public
4 education for these routes"; and (3) the prohibition would radically reduce the opportunity for law-
5 abiding OHV recreationists.

The parties and intervenors have devoted a significant portion of the briefing to this question, and the Court recognizes the complexities of this issue, as well as the numerous competing interests. As a threshold matter, the Court finds that the form of relief plaintiffs seek is more appropriately viewed as injunctive relief and not simply as partial vacatur. Plaintiffs seek to impose a limitation on OHV use throughout the OHV network that did not exist in the WEMO. Thus, for the Court to order the street-legal limitation that plaintiffs seek, the Court would be granting a form of affirmative injunctive relief because this restriction was not part of the *status quo ante*.[2]

Injunctive relief is warranted where (1) a plaintiff shows that irreparable injury is likely to occur if relief is not granted; (2) the balance of equities favors relief; and (3) granting an injunction would be in the public interest. *Winter v. NRDC*, 129 S. Ct. 365, 374, 381 (2008); *Stormans v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). While the record is replete with evidence about the environmental harms caused by OHVs, it is also true that the majority of harms identified by plaintiffs are as a result of unauthorized OHV use, that is, OHV vehicles traveling off of the designated OHV route. As discussed *infra*, the Court does find it appropriate to grant certain injunctive relief requested by plaintiffs that requires the BLM to implement mitigating measures to address unauthorized OHV use. Defendants and the intervenors strenuously argue, and have submitted considerable evidence in support, that implementation of plaintiffs' street-legal only proposal could not be imposed and enforced simply by administrative fiat, but would involve a substantial educational effort, along with many required changes to signs and other infrastructure. In addition, imposing the street-legal limitation would significantly reduce the opportunity for OHV recreation, which the Court must consider as that affects the public interest. On this record, and in light of the specific mitigation measures that the BLM is ordered to

---

[2] As discussed *infra*, it the *status quo ante* OHV route network is currently unknown. However, it is undisputed that the *status quo ante* route network was not restricted only to street-legal vehicles.

implement on remand, the Court finds that the street-legal limitation is not appropriate as a remedy on remand.

Alternatively, plaintiffs argue that if the Court does not limit OHV use to only street-legal vehicles, then the Court should completely vacate the entire OHV route network and the BLM should bear the burden of proving the *status quo ante*. However, the Court finds that complete vacatur of the OHV route network is not warranted for a number of reasons. As plaintiffs readily recognize, "the pre-decisional *status quo* cannot accurately be assessed for the route designation." Motion at 4:18-19. Thus, vacatur of entire OHV route network would not only create considerable uncertainty and confusion, but would almost certainly require the closure of all OHV routes for an indefinite length of time while the BLM attempted to identify and recreate the pre-decisional *status quo*. The consequences of complete vacatur are unpredictable, and not in the public interest. *See W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) (retaining EPA decision during remand because of, *inter alia*, "the possibility of undesirable consequences which we cannot now predict that might result from invalidation of the designations."); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) (holding that "when equity demands," an agency action that did not comply with the APA can be left in place during remand; equitable concerns weighing in favor of leaving action in place included potential extinction of species and waste of public funds).

Accordingly, except as stated above, the remainder of the ROD should be vacated in its entirety pursuant to 5 U.S.C. § 706(2). The portions of the decision subject to full vacatur include, but are not limited to, the finding of consistency with the Clean Air Act (*see* AR 202366) (Conformity Analysis and Conclusion)), which must be set aside based on the Court's summary judgment order. *See* September 28, 2009 Order at 53-54.

**III.   Vacatur of decisions tiered to the WEMO, FEIS and ROD**

   **A.   Grazing decisions**

Plaintiffs have identified 16 grazing lease renewals that were adopted by the BLM in reliance on the WEMO Plan ROD and based on environmental review tiered to the WEMO FEIS. *See* Belenky Decl. at 2 (chart listing 16 renewals). Plaintiffs contend that because these lease renewals are tiered to

9

1  the decisions found to be unlawful, they must be set aside.

2  Defendants counter that the grazing decisions have independent validity and are supported by
3  their own environmental review and compliance documents. However, as plaintiffs note, for each of
4  the 16 grazing lease renewals, the Notice of Final Decision ("NOFD") and Finding of No Significant
5  Impact ("FONSI") expressly stated that the decision was being made to conform with the WEMO Plan.
6  *See, e.g.*, Subsequent-000099 (Ord Mtn. NOFD), 000102 (Ord Mtn. FONSI). In addition, in each case,
7  the Environmental Assessment ("EA") for the grazing allotment renewal stated that it was tiered to the
8  WEMO Plan FEIS and the EA relied on the FEIS environmental review for cumulative impacts analysis,
9  and noted that the decision conformed to the West Mojave Plan amendment. *See, e.g.*, Subsequent-
10 000007-8, 000008-9, 0000070 (Ord Mtn. EA); 000104 (Ord Mtn. FONSI). Nevertheless, it is also true
11 that the grazing decisions in question were issued after full, site specific NEPA analysis including public
12 participation. Brink Decl. ¶ 21.

13 Defendants also argue that the impacts on public lands under the new grazing decisions are less
14 than the impacts that would occur should the decisions be set aside. Defendants have submitted the
15 declaration of Dianna Brink, which discusses in great detail the grazing program in WEMO and the
16 individual allotments that are the subject of the lease renewals. Ms. Brink compares the current
17 protective measures against the grazing provisions adopted under the CDCA Plan of 1980 (the *status*
18 *quo ante* according to defendants), as well as the interim grazing restrictions imposed as a result of the
19 litigation in 2000 in *Center for Biological Diversity v. BLM*, C 00-927 WHA (N.D. Cal.) (the *status quo*
20 *ante* according to plaintiffs). *See* Brink Decl. ¶¶ 4-20. Defendants correctly note that while plaintiffs
21 dispute what the *status quo ante* would be in the event the Court set aside the current grazing decisions,
22 plaintiffs do not assert, nor have they submitted any evidence showing, that the current grazing decisions
23 are causing irreparable injury, or that the current grazing decisions are less protective than either the
24 CDCA Plan of 1980 *or* the 2000 interim grazing measures. Ms. Brink also states that if the Court set
25 aside the current grazing decisions, "[a]ny new decisions could only be issued after the BLM revisits
26 the WEMO Plan and would require that additional site specific NEPA be conducted again." Brink Decl.
27 ¶ 21.

28 The Court finds that a reasonable remedy under these circumstances is to allow the current

grazing decisions to remain in effect pending revisions of the FEIS and ROD during remand.[3] Plaintiffs have not shown that the current grazing decisions are causing environmental harm or that they are less protective than the *status quo ante*. Ms. Brink's declaration, on the other hand, states that the current grazing decisions are more protective than either the CDCA Plan of 1980 or the 2000 interim grazing measures. The Court further orders that the grazing decisions be reconsidered within six months after the revised FEIS and ROD are adopted by the BLM.

### B.     Rand Mountain Area Routes (R5 and R50)

On October 28, 2008, the BLM issued a decision to rescind the closed status of two routes in the Rand Mountain Management Area ("RMMA"). Belenky Decl. Ex. 4, Subsequent-000639-643. On the same day, the BLM issued an EA and FONSI. *Id*. at Subsequent-000604-635 (EA), 000636-638 (FONSI). Plaintiff Center for Biological Diversity appealed that decision to the Interior Board of Land Appeals ("IBLA"). On December 31, 2009, in response to briefing from the parties to that appeal, the IBLA issued an order to Set Aside and Remand the Decision. *Id*. at Subsequent-000644-647. On January 11, 2010, the BLM filed a Request for Stay of Order and Petition for Reconsideration En Banc. *Id*. at Subsequent-000644-647.

At the time that plaintiffs filed the instant motion for partial vacatur and injunctive relief, the IBLA was still considering the BLM's request. Because the IBLA had not yet issued a final decision, plaintiffs' motion for relief sought an order from this Court "confirming that the decision to reopen the routes in the Rand Mountain Management Area, which was tiered to the WEMO FEIS and the WEMO ROD, must be set aside and the route closures reinstated." Motion at 13:28-14:2.

On June 8, 2010, while this matter was being briefed, the IBLA issued an order granting reconsideration, denying the BLM's request for a stay, and clarifying and modifying the December 31, 2009 order. Villalobos Decl. Ex. 10. In the June 8, 2010 order, the IBLA set aside the BLM's 2008 decision reopening two routes in the RMMA, and thus those two routes are currently closed. In response to the June 8, 2010 decision, plaintiffs have withdrawn any request for relief regarding this

---

[3] In their reply brief, plaintiffs propose this remedy as an alternative to vacating the grazing decisions. *See* Reply at 6:8-12.

11

issue as moot.

The decision of the IBLA "shall constitute final agency action and be effective upon the date of issuance." 43 C.F.R. § 4.403. The Court agrees with plaintiffs that the issue is moot, and the Court will not order any relief regarding the RMMA routes. At the hearing, the BLM stated if the Court finds that the matter is moot, the BLM can issue a new decision regarding the RMMA routes, and the issue will ultimately return to the IBLA for review. Nevertheless, the BLM requests that the Court clarify that "the two routes may be reopened, based on the [education permit program], the extensive fencing, the protective measures instituted, and the complete absence of any evidence of ongoing or foreseeable harm to any resource." Opp'n at 12:3-5.

In some instances judicial and administrative processes will move forward concurrently and decisions in one forum may affect the outcome in another. The IBLA's June 8, 2010 order expressly recognized this:

> Consistent with the basis for our determination to set aside and remand BLM's decision as focused herein, we leave it to BLM, as the decisionmaker, to determine on remand, as appropriate, whether and to what extent the forthcoming District Court ruling on remedy may require BLM to reconsider its October 28, 2008 decision. In so ruling, we hope to avoid inconsistent administrative and judicial determinations.

June 8, 2010 Order at 7 (Villalobos Decl. Ex. 10). It is also well settled that federal courts lack jurisdiction to provide advisory opinions. *See United States v. Gila Valley Irrigation Dist.*, 31 F.3d 1428, 1436 (9th Cir. 1994) (declining to rule on what a committee might decide in the future in response to the district court's ruling because "[t]his court is not empowered to issue advisory opinions."). Because the 2008 RMMA decision is no longer in place, and there is no pending challenge to the IBLA decision, this Court lacks jurisdiction to address the issue further.

**IV. Terms of injunctive relief during remand**

The Court may grant injunctive relief where (1) a plaintiff shows that irreparable injury is likely to occur if relief is not granted; (2) the balance of equities favors relief; and (3) granting an injunction would be in the public interest. *Winter*, 129 S. Ct. at 374, 381; *Stormans*, 586 F.3d at 1127. The Court has "broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *NRDC v. Southwest Marine, Inc.*, 236 F.3d 985, 999 (9th Cir. 2000) (quotations omitted).

### A. Specific mitigation measures

Plaintiffs request targeted injunctive relief during the remand period that would require the BLM to implement specific mitigation measures outlined in the WEMO Plan. Plaintiffs contend that these measures are necessary to mitigate the environmental damage caused by OHV use. Plaintiffs emphasize the fact that according to the timeline found at pages 2-22 of the 2003 EA (AR 211410) and pages 2-166 of the FEIS (AR 201854), and further elaborated in Appendix C (AR 204532), the majority of these mitigation measures should have been implemented by this time. The extensive evidence submitted by plaintiffs shows that the BLM has not fully implemented the mitigation measures set out in the WEMO Plan, and in many areas there are significant deficiencies. *See* Declarations of Jeffrey Aardahl, Edward Patrovsky, Mark Heuston, Philip Klasky, Doug Parham, Jenny Wilder, and Thomas Egan. Plaintiffs have also provided voluminous scientific studies documenting OHV impacts generally, including many authored by the BLM itself. *See generally* Stanfield Decl.

Defendants raise a number of arguments in response. Defendants assert that the BLM is already implementing many of the mitigation measures that plaintiffs seek. Defendants also argue that the problems identified by plaintiffs are the result of OHV recreationists riding off open routes, and are not a defect of route designation in the 2006 Plan. The BLM suggests that the Court may only impose injunctive relief directed at the designation of OHV routes, and that illegal route proliferation and unauthorized OHV use are matters of enforcement that are outside the ambit of appropriate relief.

The Court disagrees and finds that it is appropriate to order the BLM to implement the targeted mitigation measures sought by plaintiffs. The Court notes that the BLM opposes much of the relief sought by plaintiffs – such as closures and the street-legal limitation – by arguing that these remedies are not necessary precisely because of the BLM's efforts in the areas of signage and enforcement. However, the BLM does not dispute that it has not fully implemented the mitigation measures set forth in the WEMO Plan. Further, these measures are within the scope of the appropriate remedy during remand because the Court's summary judgment order found that the BLM's route designation process did not comply with 43 C.F.R. § 8342.1(a)-(c), which requires the BLM to minimize the effects of OHV routes by minimizing damage to public resources, harassment and disruption of wildlife and habitat, and

13

the minimize conflicts of use. The WEMO Plan repeatedly emphasizes the importance of measures such as signing open routes and monitoring and enforcement as a means of minimizing the negative effects of OHV use. The Court finds that the injunctive relief that plaintiffs request is both specifically tailored to address the environmental harm that plaintiffs have identified and documented, and does not impose an undue burden on the BLM because these are all measures that the BLM should have already implemented under the WEMO Plan, or that the BLM would be required to undertake in connection with the remand (such as the information gathering and monitoring of air quality).

Accordingly, the Court orders the following:

(1) Within 60 days of this order, the BLM should provide the Court[4] with a detailed implementation plan for signing all open routes in the WEMO. The signing should be completed within 180 days of the date of this order.

(2) Within 210 days of the Court's order, the BLM shall update all BLM-produced and available maps to include accurate and updated route information and, as necessary, include a notice in the form below, in at least 20 point type, on all maps, pamphlets, kiosks, and other literature regarding WEMO OHV routes distributed by the BLM.

NOTICE

MOTORIZED USE IS PERMITTED ONLY ON ROUTES SIGNED "OPEN." ANY ROUTE THAT DOES NOT HAVE AN "OPEN" SIGN IS NOT LEGAL FOR MOTORIZED USE. MOTORIZED USE OF ANY CLOSED ROUTE WILL RESULT IN A FINE OR CRIMINAL PROSECUTION.

(3) Within 90 days of the Court's order, the BLM shall provide the Court with a monitoring plan to determine (a) compliance with route closures and (b) whether new illegal routes are being created. The monitoring plan should demonstrate that the effort will be adequate to determine compliance at a statistically significant level.

(4) The BLM shall carry out additional information gathering and monitoring regarding (a) air quality in and around open areas through air quality monitoring, (b) status of the

---

[4] In a separate order, the Court will refer the issues related to implementation of specific mitigation measures to a Magistrate Judge. The Magistrate Judge will review the BLM's reports and resolve and disputes that arise with regard to the BLM's implementation of mitigation measures during the remand period.

          Mojave fringe-toed lizard and its habitat, and (c) riparian areas and UPAs, including new "proper functioning condition" ("PFC") assessments for all of the springs and seeps in the West Mojave planning.

    (5)    Within 90 days of the Court's order, provide the Court and the parties with a plan for maintenance of the open route network and installation of informational kiosks at all major OHV access points.

    (6)    Within 90 days of the Court's order, provide the Court and the parties with a plan for providing additional enforcement capability for the route network in the WEMO.

    (7)    Provide the Court and the parties quarterly reports indicating the BLM's progress in implementing requirements 1-6.

The Court will retain jurisdiction over the implementation of these interim injunctive actions in the event that the BLM fails to carry out these measures, or if the monitoring and reporting demonstrates that irreparable harm to public resources is occurring at an unacceptable level and additional relief is required.

### B.  Closures

Plaintiffs request that the Court order three areas closed to all OHV use for the duration of the remand. These areas are Juniper Flats, Wonder Valley, and Edwards Bowl, all located within the jurisdiction of the BLM's Barstow Field Office. Plaintiffs emphasize the fact that the areas at issue together comprise only 1.23% of BLM public land within the WEMO planning area. Plaintiffs have submitted numerous declarations which they contend demonstrate that in each of these areas the OHV route network is causing irreparable harm despite BLM's efforts.

Defendants oppose plaintiffs' request for temporary closures, arguing that closures are not warranted given BLM's efforts to monitor closed routes, enforce compliance with route designations, and protect natural resources. Defendants have submitted detailed declarations that respond point-by-point to the evidence submitted by plaintiffs. *See, e.g.*, Declarations of Trost, Claar, Haigh, and Parham. BLM asserts that a combination of appropriate regulatory measures will prove far more effective than a court-ordered mandate to close all three areas to OHV use, and that closures would be largely

15

ineffective and impossible to enforce.

On this record, and in light of the specific mitigation measures that the BLM is ordered to provide on remand, the Court finds that closures are not warranted. The record is disputed as to whether BLM's past method of managing and restoring the three areas is the most effective way to minimize irreparable harm in the area. However, BLM's primary argument against closures is that closures are unnecessary because BLM's regulatory measures, such as signage and monitoring of closed routes, will prevent unauthorized OHV use. Because the Court has granted plaintiffs' request for targeted injunctive relief requiring BLM to implement the protective and monitoring measures outlined in the WEMO Plan, the Court finds that plaintiffs have not shown that further injunctive relief in the form of closures is warranted at this time.

## **CONCLUSION**

For the foregoing reasons, plaintiffs' motion for partial vacatur and injunctive relief is GRANTED IN PART and DENIED IN PART. (Docket No. 185). The Court finds that a remand of the 2006 WEMO ROD to the BLM is warranted, and **the BLM is hereby directed to comply with this Order and to complete its analysis and issue a revised decision by March 31, 2014.**

Defendants shall provide plaintiffs and intervenors with copies of the relevant final documents (including any final environmental review documents, decision records, or records of decision (RODs) related to the remand), and file a Notice with this Court indicating that the documents have been issued. At that time, the parties are directed to meet and confer, and within 30 days of the filing of the Notice, the parties shall file a joint letter informing the Court of the status of these proceedings.

///

///

The Court shall retain jurisdiction to enforce the terms of this Order and to hear any motion for attorneys' fees. The parties are directed to meet and confer regarding plaintiffs' request for attorneys' fees, and if the parties are unable to resolve the request, plaintiffs are ordered to submit any request for attorneys' fees and costs within 60 days of the date of this Order. As set forth in Section IV.A., a Magistrate Judge shall review the BLM's reports and resolve and disputes that arise with regard to the BLM's implementation of mitigation measures during the remand period.

**IT IS SO ORDERED.**

Dated: January 28, 2011

SUSAN ILLSTON
United States District Judge