IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF LAND MANAGEMENT, *et al.*, <br><br> Defendants. | No. C 06-4884 SI <br><br> **ORDER RE: PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

Plaintiffs' motion for attorneys' fees and costs is scheduled for a hearing on December 9, 2011. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. The Court has reviewed the briefing on plaintiffs' fee motion, and issues this order setting forth the Court's tentative decision regarding certain issues raised in the fee motion, and directing plaintiffs to file a further submission by **December 22, 2011** setting forth revised calculations in accordance with this order.

Plaintiffs Alliance for Responsible Recreation, The Wilderness Society, Friends of Juniper Flats, Western San Bernadino Landowners Association, California Native Plant Society, and Community ORV Watch (collectively "ARR plaintiffs") seek $1,165,178.82 in attorneys' fees and costs pursuant to the Equal Justice to Access Act ("EAJA"), 28 U.S.C. § 2412(d). The ARR plaintiffs prevailed on summary judgment on their claims against defendant United States Bureau of Land Management ("BLM") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.* After unsuccessful mediation

1 efforts and substantial briefing regarding the remedy, the Court issued an order on January 29, 2011
2 granting in part and denying in part plaintiffs' motion for partial vacatur and injunctive relief.

3 The EAJA provides that a court shall award attorneys' fees to a "prevailing party" in a civil
4 action brought against the United States "unless the court finds that the position of the United States was
5 substantially justified or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(2).
6 Defendant BLM does not dispute that the ARR plaintiffs prevailed in this case, nor does BLM contend
7 that its position was substantially justified or that there are special circumstances that make an award
8 of fees unjust. Instead, BLM contends that the amount sought by the ARR plaintiffs is excessive for a
9 variety of reasons, and that a reasonable fee and cost award is $514,790.94.

10 For the most part, the Court is not persuaded by BLM's challenges to plaintiffs' fee petition, and
11 the Court will address BLM's specific contentions in the final order awarding fees and costs. However,
12 the Court finds that two arguments raised by BLM warrant a further submission by plaintiffs setting
13 forth revised calculations.

### A. Remedies phase reduction

16 BLM contends that ARR's lodestar should be reduced because ARR achieved "limited results"
17 with respect to the remedy ordered by the Court. BLM argues that ARR prevailed on only two of seven
18 remedy issues, and thus that it is appropriate to reduce the hours claimed during the remedies phase to
19 2/7, or 28.57% of the total hours claimed. BLM asserts that plaintiffs' timesheets and billing statements
20 indicate that, during 2010 alone, its attorneys spent at least 632.26 attorney hours and 39 paralegal hours
21 during the remedy phase, which is approximately the same number of hours ARR spent briefing
22 summary judgment on the merits of the FLPMA and NEPA issues. BLM also argues that ARR should
23 not recover for any time spent on the parties' unsuccessful mediation of the remedies issue between
24 October 30, 2009 and January 10, 2010. Based on BLM's calculations, plaintiffs seek $133,238.50 for
25 time spent on the mediation.

26 Plaintiffs oppose any reduction in their lodestar for the remedies phase. Plaintiffs argue that
27 BLM's dissecting of the remedies briefing into seven discrete issues is artificial and arbitrary, and
28 ignores the far-reaching nature of the relief obtained by plaintiffs. Relatedly, plaintiffs contend that they

2

should recover for time spent in the mediation because plaintiffs achieved meaningful success in the remedies phase, and during the mediation process there was considerable exchange of information that directly informed the remedies briefing.

The Court has presided over this litigation since its inception, and it is the Court's view that this case was factually and legally complicated both on summary judgment and in the remedies phase. Although plaintiffs did not achieve all of the relief that they sought – such as the closure of particular areas to OHV, or an earlier deadline for BLM to complete its work on remand – plaintiffs nevertheless obtained significant relief in the form of a partial vacatur of the ROD and remand requiring BLM to prepare a revised OHV route network that complies with regulations mandating that BLM consider "minimization criteria" when designating OHV routes. The Court also ordered BLM to conduct supplemental NEPA analysis on remand, and the Court issued injunctive relief requiring BLM to implement certain mitigation measures requested by plaintiffs. In light of the meaningful relief plaintiffs obtained, the Court finds that the drastic reduction sought by BLM is not justified.

However, the Court finds that a more modest 15% reduction of time spent during the remedy phase, including the unsuccessful mediation,[1] is warranted in order to arrive at a reasonable fee award. While the Court finds that plaintiffs achieved significant success, it is also true that the Court found in BLM's favor on a number of discrete remedial issues. In the Court's view, a 15% reduction of time accounts for plaintiffs' partial success with regard to remedy, while also recognizing that plaintiffs did obtain some significant relief. The Court directs plaintiffs to file a supplemental submission showing a 15% reduction of all attorney time spent on the remedy phase, including the mediation.

///

---

[1] The Court disagrees BLM's contention that plaintiffs should not recover any time spent in the court-ordered mediation simply because the mediation was unsuccessful. Although the mediation did not resolve the remedial issues, the time spent in mediation was not wasted as the parties exchanged information and defined the matters in dispute.

**B.     Rates for associate attorneys**

ARR requests compensation at rates above the EAJA statutory cap for most of its attorneys.[2] While BLM does not dispute that plaintiffs' three senior attorneys (Messrs. Spaulding and Lazerwitz of Farella and Mr. Wiygul) should be awarded enhanced rates, BLM contends that the rates for all of plaintiffs' more junior attorneys should be capped at the EAJA statutory rate.

The EAJA allows for the award of attorneys' fees "based upon the prevailing market rates for the kind and quality of the services furnished," capped at $125 per hour, "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(1)(D)(2)(A) (emphasis added). In *Love v. Reilly*, 924 F.2d 1492 (9th Cir. 1991), the Ninth Circuit set forth a three-part test of what a party must show in order to be awarded enhanced attorneys' fees: (1) "the attorney must possess distinctive knowledge and skills developed through a practice specialty"; (2) "those distinctive skills must be needed in the litigation"; and (3) "those skills must not be available elsewhere at the statutory rate." *Id*. at 1496.

BLM contends that ARR has failed to demonstrate the first part of the test, namely that the junior attorneys "possess distinctive knowledge and skills developed through a practice specialty." BLM argues that this case is similar to *Natural Resources Defense Council v. Winter ("Winter")*, 543 F.3d 1152 (9th Cir. 2008). In *Winter*, the district court awarded enhanced EAJA rates to senior and junior attorneys for their work successfully litigating a case against the United States Navy regarding the Navy's use of mid-frequency sonar during training exercises. On appeal, the government challenged the award of enhanced rates to two groups of junior attorneys: those who worked at the NRDC, and those who worked at a private law firm, Irell & Manella LLP. The Ninth Circuit held that the junior NRDC attorneys possessed "distinctive knowledge and skills developed through a practice specialty" because the "declarations and resumes submitted by NRDC adequately establish that all the NRDC attorneys, including the two junior attorneys, had developed extensive knowledge in environmental law,

---

[2] In response to BLM's opposition, and "in an effort to move this matter towards resolution," ARR reduced one attorney's rate, Brett Wheeler, to the EAJA statutory rate. Mr. Wheeler assisted with discrete research tasks for the WEMO matter in 2010 when he was a first-year associate. Supp. Lazerwitz Decl. ¶ 6.

4

and specifically in the effects of sonar on marine mammals. The two junior NRDC attorneys have co-authored journal articles and spoken at several national and international fora on the impact of noise on marine mammals, as well as served on a variety of committees addressing this distinct issue." *Id.* at 1161.

In contrast, the Ninth Circuit held that the district court abused its discretion in awarding enhanced fees to the junior Irell attorneys. The district court had found that the junior Irell attorneys acquired distinctive skills litigating a companion case before the same court, involving similar legal and factual issues, on behalf of nearly identical client and against the same agency. The Ninth Circuit reversed, holding that "the Irell junior attorneys did not acquire sufficiently distinctive skills merely by participating in litigation surrounding the companion case," and the court stated, "[w]e expect all attorneys to be experts of their own cases and their clients' litigation goals." *Id.* at 1159. The Ninth Circuit also noted that "the record indicates that the junior Irell attorneys had no experience in environmental law other than what they gained in the concurrently litigated companion case." *Id.*

BLM challenges the enhanced rates sought for all of the junior attorneys who worked on the case: Mr. Ingersoll, Mr. Bostick, Mr. Ismay, and Ms. Stanfield. It is the Court's tentative opinion that plaintiffs have demonstrated that Messers. Ingersoll, Bostick and Ismay are entitled the enhanced rates sought,[3] as these three attorneys had several years of environmental litigation experience at the time they began work on this case, including experience in FLPMA and NEPA cases. *See* Supp. Lazerwitz Decl. ¶¶ 3-5.

Ms. Stanfield, one of the primary attorneys on this case, was a first year associate at Farella when she began her work on this case. Including the adjustments plaintiffs made in their reply papers for Ms. Stanfield's work on the fee petition (supplementing time spent on the fee petition, and recalculating all time spent on the fee petition at EAJA statutory rates), plaintiffs are seeking a total of $561,273.39 for Ms. Stanfield's time on this case. Plaintiffs seek the following enhanced rates for all non-fee petition work performed by Ms. Stanfield: $295/hour for 2007; $335/hour for 2008; $385/hour for 2009; $425/hour for 2010; and $455/hour for 2011.

---

[3] Plaintiffs seek the following rates: for Mr. Ingersoll, $350/hour (2006) and $385/hour (2007); for Mr. Bostick, $350/hour (2010) and $385/hour (2011); and for Mr. Ismay, $295/hour (2006).

5

With some force, BLM contends that a first year associate cannot "possess distinctive knowledge and skills developed through a practice specialty." In response, plaintiffs argue that Ms. Stanfield should be awarded enhanced rates because she possessed considerable experience and expertise in environmental law, and with NEPA in particular, at the time she began working on the case. According to Ms. Stanfield's declaration and resume, she received her bachelor's degree with high honors in environmental studies in 2000, and worked for an environmental firm prior to law school. Supp. Stanfield Decl. ¶¶ 3-4. As a legal assistant, Ms. Stanfield specialized in matters arising under the California Environmental Quality Act ("CEQA"), an environmental review statute modeled upon and similar to NEPA. *Id.* ¶ 4. Ms. Stanfield graduated from Boalt Hall School of Law, where she earned an Environmental Law Certificate and served as an editor for the Ecology Law Quarterly. While in law school, Ms. Stanfield worked at two different law firms whose practices focused primarily on CEQA and NEPA cases. After graduation and prior to joining Farella, Ms. Stanfield served as a special law clerk for Judge Lawrence Karlton of the U.S. District Court for the Eastern District of California to assist with the court's review of a complex NEPA case involving a massive administrative record. *Id.* ¶¶ 7-8. During that clerkship, Ms. Stanfield also worked on other environmental cases, including a joint NEPA/FLPMA case involving "checkerboard" lands owned by BLM. *Id.*

The Court finds that Ms. Stanfield's knowledge and skills in environmental law at the time she began working on this case are atypical for a first year associate, and that her specialized experience warrants a somewhat enhanced rate, $295/hour for all non-fee time 2007-2011. Ms. Stanfield's pre-Farella environmental experience, and in particular her special clerkship with Judge Karlton focusing entirely on environmental cases, distinguishes her from the junior Irell attorneys in *Winter* who had no environmental experience other than what they had gained by concurrently litigating the companion case. However, in light of the fact that Ms. Stanfield was a first year associate with no litigation experience when she began her work on this case, the Court does not find it appropriate to award the increasingly and significantly enhanced rates plaintiffs seek for Ms. Stanfield's time for the years 2008-2011.

Accordingly, plaintiffs' supplemental fee submission shall recalculate all of Ms. Stanfield's non-fee time at $295/hour.

6

**CONCLUSION**

Plaintiffs' supplemental fee submission must be filed no later than **December 22, 2011**. At that time, the Court will take the fee petition under submission.

**IT IS SO ORDERED.**

Dated: December 7, 2011

SUSAN ILLSTON
United States District Judge