IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. BUREAU OF LAND MANAGEMENT, *et al.*, <br><br> Defendants. | No. C 06-4884 SI <br><br> **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

Now before the Court is plaintiffs' motion for attorneys' fees and cost. For the reasons set forth below, the motion is GRANTED IN PART and the Court awards plaintiffs $1,003,155.87 in fees and costs.

**DISCUSSION**

Plaintiffs Alliance for Responsible Recreation, The Wilderness Society, Friends of Juniper Flats, Western San Bernadino Landowners Association, California Native Plant Society, and Community ORV [Off-Road Vehicles] Watch (collectively "ARR plaintiffs" or "ARR") seek $1,004,566.91[1] in attorneys' fees and costs pursuant to the Equal Justice to Access Act ("EAJA"), 28 U.S.C. § 2412(d). In support of the fee application, ARR has submitted declarations from members of the plaintiff organizations,

---

[1] Plaintiffs' initial fee motion sought $1,170,965 in attorneys' fees and costs. The $1,004,566.91 figure reflects various deductions that plaintiffs made in the reply brief, and the deductions that the Court directed plaintiffs to make in the Court's December 7, 2011 order. The December 7, 2011 order is discussed *infra*. In addition, the declarations of plaintiffs' counsel state that they made numerous deductions in the exercise of billing judgment when preparing the initial fee motion.

declarations from counsel who worked on this case, as well as copies of time sheets documenting all time spent on the case, and documentation in support of the expenses claimed.

The ARR plaintiffs prevailed on summary judgment on their claims against defendant United States Bureau of Land Management ("BLM") under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701 *et seq.* After unsuccessful mediation efforts and substantial briefing regarding the remedy, the Court issued an order on January 29, 2011 granting in part and denying in part plaintiffs' motion for partial vacatur and injunctive relief.

The EAJA provides that a court shall award attorneys' fees to a "prevailing party" in a civil action brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust." 28 U.S.C. § 2412(d)(2). Defendant BLM does not dispute that the ARR plaintiffs prevailed in this case, nor does BLM contend that its position was substantially justified or that there are special circumstances that make an award of fees unjust. Instead, BLM contends that amount sought by the ARR plaintiffs is excessive for a variety of reasons, and that a reasonable fee and cost award is $514,790.94.[2] The Court addresses each of BLM's contentions.

## I. The Court's December 7, 2011 order

On December 7, 2011, the Court issued an order setting forth the Court's tentative decision on two issues raised by ARR's fee petition.

First, the Court tentatively held that a 15% reduction of time spent during the remedy phase, including the unsuccessful mediation, was warranted in order to arrive at a reasonable fee because although plaintiffs achieved significant success, the Court also found in BLM's favor on a number of discrete remedial issues.

Second, the Court tentatively approved awarding the enhanced rates sought for three of the junior attorneys who worked on the case (Mr. Ingersoll, Mr. Bostick, and Mr. Ismay) because these

---

[2] BLM arrives at this amount by applying various across the board percentage reductions.

2

attorneys had several years of environmental litigation experience at the time they began work on this case, including experience in FLPMA and NEPA. With regard to a fourth junior attorney (Ms. Stanfield), the Court found that Ms. Stanfield's knowledge and skills in environmental law at the time she began working on this case were atypical for a first year associate, and that her specialized experience warranted a somewhat enhanced rate, $295/hour for all non-fee time 2007-2011. However, in light of the fact that Ms. Stanfield was a first year associate with no litigation experience when she began her work on this case, the Court found it was not appropriate to award the increasingly and significantly enhanced rates plaintiffs seek for Ms. Stanfield's time for the years 2008-2011. The December 7, 2011 order directed plaintiffs to file a further submission setting forth revised calculations by (1) reducing all attorney time spent on the remedies phase, including the unsuccessful mediation, by 15%, and (2) reducing all of Ms. Stanfield's non-fee time to $295/hour.[3]

On December 19, 2011, plaintiffs filed a supplemental submission and three supplemental declarations in accordance with the December 7, 2011 order. Plaintiffs' supplemental filings show that these two recalculations resulted in a reduction of $160,611.91.

The Court now adopts its tentative decision as set forth in the December 7, 2011 order. Docket No. 295.

## II. Other challenges to reasonableness of hours claimed

"It is plaintiffs' burden to 'document the appropriate hours expended in the litigation by submitting evidence in support of those hours worked.'" *Lucas v. White*, 63 F. Supp. 2d 1046, 1057 (N.D. Cal. 1999) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). The appropriate number of hours includes all time "reasonably expended in pursuit of the ultimate result achieved, in the same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Hensley v. Eckerhart*, 461 U.S. 424, 431 (1983). Fee applicants, and the Court, should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* at 434.

---

[3] As discussed *infra*, plaintiffs agreed in their reply that all attorney time spent on the fee application should be capped at the EAJA statutory rate.

3

The party opposing the fee application "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994). "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees." *Lucas*, 63 F. Supp. 2d at 1057-58.

### A. "Overstaffing"

BLM complains of "overstaffing" because ARR had "eight attorneys at three different law firms" working on the case. BLM also argues that plaintiffs had too many senior level attorneys assigned to the case, and in particular, BLM asserts that "[g]iven the attested experience of partners at Farella and the firm's extensive resources and available associates, BLM is unclear why ARR also retained the services of Mr. Wiygul, a partner in a Biloxi, Mississippi law firm." Opp'n at 14:2-4.

In response, plaintiffs assert that BLM has painted a misleading picture of ARR's staffing of this case. Plaintiffs state that over the six year course of this litigation, the case was primarily litigated by three attorneys: Mr. Wiygul of Waltzer & Wiygul, Mr. Lazerwitz of Farella Braun + Martel, and Ms. Stanfield, who was with Farella for almost 90% of her work on the case and is now with Keyes & Fox. *See* Supp. Lazerwitz Decl. ¶ 7; Stanfield Decl. ¶ 12. Mr. Ingersoll preceded Ms. Stanfield on the case, and Mr. Bostick joined the team after Ms. Stanfield left Farella for Keyes & Fox. *See* Supp. Lazerwitz Decl. ¶¶ 3-4, 7. Plaintiffs state that the three other Farella attorneys who worked on the case (Mr. Ismay, Mr. Wheeler, and Mr. Spaulding) had discrete roles in the case, and were staffed at different times commensurate with those roles. *Id*. ¶¶ 3-7. According to Mr. Lazerwitz's supplemental declaration, Mr. Ismay assisted on OHV [off-highway vehicles] designation and administrative record review, Mr. Wheeler conducted legal research to assist briefing, and Mr. Spaulding assisted with the initial intake of the case in 2006, and substituted briefly for Mr. Lazerwitz in 2007 while he was preparing for and participating in a civil jury trial in Mendocino County. *Id*. ¶ 7. With regard to Mr. Wiygul's involvement in the case, plaintiffs direct the Court to Mr. Wiygul's declaration, which describes his extensive experience representing non-profit groups in public lands management cases, specifically those dealing with OHVs, *see* Wiygul Decl. ¶ 2, Ex. A. In addition, Mr. Lazerwitz states

that Mr. Wiygul's "deep experience and expertise with public interest litigation and standing requirements, and, specifically, OHV regulation, designation, and use on the federal public lands . . . provided substantial benefits and efficiencies to the ARR Plaintiffs' team, and directly contributed to the success of the ARR Plaintiffs in this litigation." Supp. Lazerwitz Decl. ¶ 8.

The Court finds BLM's assertions about "overstaffing" unpersuasive. The fact that eight lawyers worked at various times on this complex litigation over a six year period does not compel the conclusion that ARR overstaffed this case. *See Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort."); *see also Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008). The declarations of plaintiffs' counsel show that most of the litigation was handled by three attorneys with expertise in relevant areas, including Ms. Stanfield who has a relatively low billing rate. In light of Mr. Wiygul's extensive experience dealing with the issues presented in this case,[4] the Court finds that it was reasonable for ARR to retain his services in this case. The Court is satisfied that the fees requested are reasonable and justified by the results obtained, and finds it inappropriate and unnecessary to speculate about whether different staffing decisions would have led to the same results at a lower cost.

### B.  Conference calls and meetings

BLM also contends that ARR devoted excessive time to meetings and conferences. BLM asserts that "[t]he ARR fee application identifies, at a minimum, dozens of occasions in which more than one ARR attorney participated in a meeting or a conference call regarding this litigation and each attorney filed a claim regarding his or her participation." Opp'n at 11:17-12:2. BLM provides two examples – a February 22, 2010 conference call and a September 1, 2010 meeting – and argues that the Court should reduce the requested award to account for unnecessary meetings and conference calls. BLM also asserts, without authority, that the Court should limit the time claimed in connection with a meeting or conference call to that of only the most senior attorney attending the meeting.

---

[4] BLM does not oppose Mr. Wiygul's enhanced rate, acknowledging that Mr. Wiygul has expertise and "specialized skills" warranting an enhanced rate.

5

1   The Court finds that BLM has not met its burden to show that any of the time spent in conference
2   calls or meetings was unnecessary or unreasonably spent. For the most part, BLM simply asserts that
3   any meeting involving more than one attorney was overstaffed. In light of the complexity of this case,
4   it is reasonable that plaintiffs' counsel would need to confer with each other to strategize, determine a
5   division of labor, and coordinate work. Indeed, the two examples of allegedly unnecessary meetings
6   identified by BLM illustrate this point; the time entries for the February 2, 2010 meeting show that
7   counsel discussed issues related to injunctive relief, how to divide the briefing on remedies phase, and
8   what further research was required, while the entries for the September 1, 2010 conference call show
9   that counsel were preparing for the September 3, 2010 hearing on the remedy. *See* Wiygul Decl. Ex.
10  B; Supp. Lazerwitz Decl. Ex. 1.

### C.   Insufficient descriptions/block billing

BLM contends that ARR's fee award should be reduced because certain billing entries lack adequate detail and/or because plaintiffs' counsel engaged in "block billing" by including multiple tasks within a single time entry. Specifically, BLM asserts that time entries by Messrs. Spaulding and Wiygul are "general" and "uninstructive," such as Mr. Wiygul's entry for "telephone w/ CBD, FBM on PI strategy" and Mr. Spaulding's entry for "Analyze WEMO case budget." BLM identifies a number of Ms. Stanfield's billing entries as examples of "block billing."

The Court has reviewed the billing entries identified by BLM, and finds that they sufficiently describe the tasks performed to enable the Court's review of the fee petition. *See Hensley*, 461 U.S. at 437 n.12 (A plaintiff is "not required to record in great detail how each minute of his time was expended," but only "identify the general subject matter of his time expenditure."). The Court also finds that although Ms. Stanfield often included several tasks within a single time entry, her time entries are quite detailed and allow for meaningful review by the Court.

### D.   "Non-compensable" time

BLM contends that numerous time entries seek fees for non-compensable work, such as time for "concordance training" and time spent on public relations. Plaintiffs' reply states that counsel

6

reviewed the entries identified by BLM and excluded or adjusted time for a number of entries (such as deleting the time sought for concordance training and time spent dealing with the media). For those challenged time entries that plaintiffs have not excluded or adjusted, plaintiffs contend that BLM has mischaracterized the entries at issue and that the time is compensable.

The Court has reviewed the remaining time entries at issue and finds that the time spent is compensable. For example, BLM challenges a September 3, 2010 entry by Mr. Lazerwitz for attending the remedies hearing because Mr. Lazerwitz did not argue ARR's motion. The remedies hearing and the summary judgment hearing were the two critical hearings in this case. The Court finds it reasonable that Mr. Lazerwitz, one of the three primary attorneys on this case, would attend the hearing. As another example, BLM challenges a May 16, 2008 entry by Ms. Stanfield, which it characterizes as "Take Wiygul to lunch." However, as plaintiffs note, the full entry by Ms. Stanfield states that the time was spent arguing the summary judgment motion, meeting with the client after the hearing to de-brief and discuss next steps, and take co-counsel Wiygul to lunch.

### E. Fees incurred for work on fee application

BLM objects that plaintiffs seek enhanced rates for the time spent on the fee petition; in their reply, plaintiffs agree. *See Lucas v. White*, 63 F. Supp. 2d 1046, 1062-63 (N.D. Cal. 1999). ARR has adjusted the fee application so that the EAJA statutory cap applies to all attorney and paralegal time spent on the fee application.

### F. Travel time

BLM objects to compensating Messrs. Wiygul and Lazerwitz at enhanced rates for travel time, and argues that travel time should be calculated at the EAJA capped rate. BLM contends that ARR cannot show that "specialized skills" were needed for the travel time, and as support, BLM cites a case in which the Tenth Circuit affirmed a reduction in hours for "unproductive travel time." *See Smith v. Northwest Fin. Acceptance, Inc.*, 129 F.3d 1408, 1418 (10th Cir. 1997).

Plaintiffs respond that the Court has discretion to award travel time at enhanced rates, and that their request for compensation is justified because the time reflects counsel (1) attending court-ordered

7

1 mediations which, at BLM's request, occurred at BLM's offices in Sacramento and Southern California, 2 and (2) involved travel time for Mr. Wiygul during which he was working on this case, including 3 preparing for oral argument. *See* Stanfield Decl. ¶ 9; Supp. Wiygul Decl. ¶ 3.

4 The Court finds that Mr. Wiygul's 33.3 hours of travel time should be compensated at enhanced 5 rates because the record shows that he was working on this case during that travel time, and thus his 6 "specialized skills" were required. The Court finds that the 4.0 hours of Mr. Lazerwitz's travel time 7 should be compensated at the EAJA cap, as there is no indication in the record that he was working on 8 the case during that travel time, resulting in a deduction of $1,411.04.

### G. Hourly rates for paralegals and law clerks

BLM objects to the market rates claimed for paralegals and law clerks, arguing that these individuals should not be compensated above the EAJA cap. BLM argues that the Court should cap the hourly rates of these individuals at $100. However, as plaintiffs correctly note, in *Richlin Security Service Company v. Chertoff*, 553 U.S. 571, 589 (2008), the Supreme Court rejected this very argument, holding that a prevailing party that satisfies EAJA's other requirements may recover its paralegal fees from the government at prevailing market rates.

### H. Costs and litigation-related expenses

BLM objects to $2,000 paid to Wild Utah Project for "professional services" and "scientific literature survey update svcs."[5] BLM asserts that "[w]hatever professional services for the Wild Utah Project may entail, BLM can discern no connection with the WEMO Plan litigation and objects to this item." Opp'n at 24:17-18. Plaintiffs state that the Wild Utah Project generated a detailed review and catalogue of government and academic studies relating to OHV impacts on desert environments which plaintiffs used to support their documentation of irreparable harm in the remedies briefing. Supp. Lazerwitz Decl. ¶ 11. The Court finds that these costs are reasonable and connected to this litigation and thus that they are recoverable.

---

[5] Defendants also objected to $7,016.69 for "word processing" charges. Plaintiffs' reply withdraws these costs.

8

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART plaintiffs' motion for attorneys' fees and costs and awards $1,003,155.87. The order resolves Docket No. 258.

**IT IS SO ORDERED.**

Dated: January 30, 2012

SUSAN ILLSTON
United States District Judge