UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

CENTER FOR BIOLOGICAL DIVERSITY, et al.,

          Plaintiffs,

    v.

U.S. BUREAU OF LAND MANAGEMENT, et al.,

          Defendants.

Case No.  06-cv-04884-SI   (NJV)

**ORDER RE FEDERAL DEFENDANTS' MOTION FOR ENLARGEMENT OF TIME AND ARR PLAINTIFFS' MOTIONS FOR REMEDIES ENFORCEMENT**

Dkt. Nos. 338, 346, 360

This matter comes before the court on the motions filed by Federal Defendants and Plaintiffs the Alliance for Responsible Recreation, *et al.* ("ARR Plaintiffs").[1]  Specifically, the following three motions are presented for resolution:

    (1)    Federal Defendants' Motion for Modification of Remedy Order filed September 10, 2013 (Doc. 346), requesting an extension of the time for the Bureau of Land Management (BLM) to complete the revised West Mojave ("WEMO") plan revisions;

    (2)    ARR Plaintiffs' Motion for Enforcement of Remedies Order filed August 9, 2013 (Doc. 338) ("ARR Motion"); and

---

[1]    ARR Plaintiffs include the Alliance for Responsible Recreation, The Wilderness Society, Friends of Juniper Flats, Western San Bernardino Landowners Association, California Native Plant Society, and Community ORV Watch.

United States District Court
Northern District of California

United States District Court
Northern District of California

(3)     ARR Plaintiffs' Supplemental Motion for Remedies Enforcement filed

December 23, 2013 (Doc. 360) ("Supp. Motion").

## PROCEDURAL HISTORY

All of the motions now before the court concern the Order Re: Remedy entered by Judge

Illston on January 29, 2011 (Doc. 243) ("Remedy Order").  That Remedy Order directed BLM to

complete the revised WEMO plan by March 31, 2014, and required BLM to carry out various

other activities, including the monitoring of off-highway vehicle ("OHV") use within the WEMO

plan area.  *See* Remedy Order at 3, 14-15.  The District Court ordered BLM to undertake a series

of related protective measures during the remand period.  These included the following:

> Within 90 days of the Court's order, the BLM shall provide the Court with a
> monitoring plan to determine (a) compliance with route closures and (b) whether new
> illegal routes are being created. The monitoring plan should demonstrate that the effort will
> be adequate to determine compliance at a statistically significant level.

*Id*. at 14-15.  The Court further ordered BLM to submit "a plan for providing additional

enforcement capability for the route network in the WEMO."  *Id*. at 15.

By separate order, Judge Illston referred to a Magistrate Judge of this Court consideration

of reports required by the Remedies Order and resolution of any disputes arising with regards to

BLM implementation of mitigation measures during the remand period.  (Doc. 244.)  These

matters were referred to the undersigned.  (Doc. 245.)

After hearing argument from the parties on October 24, 2012, the undersigned issued a

further order requiring in part that BLM provide to Plaintiffs a work order/plan for analyzing route

monitoring data to determine compliance at a "statistically significant level," and also provide to

Plaintiffs a plan for monitoring unauthorized vehicle use on limited-use routes.  (Doc. 326).  In

addition, the undersigned requested a site visit of the WEMO area, which took place on February

12-14, 2013.

//

United States District Court
Northern District of California

On August 19, 2013, ARR Plaintiffs filed their Second Motion to Enforce Remedies Order (Doc. 338).

On September 11, 2013, Federal Defendants filed a Status Report which incorporated a Response to ARR Plaintiffs' Motion for Enforcement of Remedies Order (Doc. 345), a Motion for Modification of Remedies Order (Doc. 346), and a Motion to Present Oral Testimony (Doc. 347). After meeting and conferring, the parties agreed to a further schedule for briefing and submission of exhibits and summaries of proposed live testimony.

On December 23, 2013, ARR Plaintiffs filed their Motion for Modification of the Remedy Order along with supporting declarations from Jenny Wilder and Edward Petrovsky, which further refined the relief sought by Plaintiffs.  (Doc. 360).  On January 17, 2014, Federal Defendants filed a Response to Plaintiffs' Motion for Modification of the Remedy Order.  (Doc. 363).  On January 31, 2014, ARR Plaintiffs filed their Reply.  (Doc. 364).

Pursuant to the Court's Order Granting Defendants' Motion for Leave to Present Oral Testimony (Doc. 347) entered upon stipulation of the parties (*see* Doc. 352, ¶¶ 8-9 at 3), the undersigned conducted an evidentiary hearing on February 11-12, 2014.  During that hearing, Federal Defendants and ARR Plaintiffs presented live testimony from numerous witnesses and introduced various exhibits.  Upon consideration of the testimony, the briefing and the other evidence submitted, the Court orders as follows.

## DISCUSSION

**I.      Federal Defendants' Motion for Modification of Remedy Order To Extend Time To Complete WEMO Plan Revisions**

Federal Defendants originally requested that the Court modify the Remedy Order by extending the time for BLM to complete the revised WEMO plan to March 31, 2015.  ARR Plaintiffs stipulated that they do not oppose Federal Defendants' request.  Stipulated Motion and Order to Set Briefing Schedule on Motions (Doc. 354) (Stipulated Order) ¶ 5 at 2; Supp. Motion at

United States District Court
Northern District of California

1; Tr.[2] 14: 9-11, 93:13 – 94:11.  Plaintiffs the Center for Biological Diversity, *et al.* ("CBD Plaintiffs"),[3] likewise stipulated that the requested extension should be granted.  Stipulated Order ¶ 6 at 3; CBD Plaintiffs' Statement of Nonopposition to Federal Defendants' Motion to Enlarge Time (Doc. 362).

BLM explained the reasons it needs an extension of the deadline for completing the WEMO plan revisions in some detail at the hearing.  Ms. Teresa Raml, the District Manager of the California Desert District, explained that despite the very substantial resources BLM has devoted to the planning effort, an additional year is going to necessary to complete the plan.  Tr. 92:12 – 95:13.  Specifically, Ms. Raml testified that this additional time is required due to the large quantum of work and time that was required to complete the baseline inventory of OHV routes, the extensive public involvement process including the establishment of task groups associated with the Desert Advisory Council, and the effort required to create a database that incorporates the OHV inventory as well as the substantial amount of data concerning sensitive resources that may be affected by OHV use.  Tr. 95:3-13.

Ms. Raml explained that BLM should be able to complete the revised WEMO plan and issue the record of decision (ROD) by March 31, 2015, unless matters beyond the control of BLM arise.  Tr. 95:14 – 96:22.  Ms. Raml identified such factors as the potential for delay in the United States Fish and Wildlife Service's issuance of the Biological Opinion, and the potential increase in the level of rigor required by the agreement for assessment of impacts to cultural resources involving the State Historic Preservation Officer and the Advisory Council on Historic Preservation.  *Id.*

---

[2]     "Tr." refers to the transcript of the evidentiary hearing held in this matter on February  11-12, 2014.

[3]     CBD Plaintiffs include the Center for Biological Diversity, the Sierra Club, Public Employees for Environmental Responsibility, and Desert Survivors.

4

In their proposed order filed March 12, 2014, CBD Plaintiffs explained that they met and conferred with Defendants' Counsel regarding concerns that if Defendants' proposed schedule is followed, the entire comment period on the revised route designation could be during the hottest months of the year.  This will make it very difficult for members of the public to visit the locations and look at the situation on the ground as part of public participation in the West Mojave Plan Amendment revision process.  Defendants' Counsel indicated that Defendants would be willing to either delay issuance of the draft route designation and draft environmental documents or to extend the comment period to include at least one cooler month (for example, at least until October 31, 2014), if the date that the ROD is due is enlarged by an additional 2 months, until May 31, 2015.  Therefore, in order to ensure a comment period that allows for full public participation in reviewing the revised route network, CBD Plaintiffs request that the Court enlarge the time to issue the ROD on a revised West Mojave Plan Amendment from March 31, 2014, to May 31, 2015, and require that BLM provide a comment period that includes all of October 2014.  Federal Defendants have filed a concurrence with CBD Plaintiffs' request.  (Doc. 374.)   ARR Plaintiffs have not responded to the request.

Based on the non-opposition of Plaintiffs and BLM's explanation of the progress that BLM has made to date on the WEMO plan and the factors that have necessitated the requested extension, the Court finds it appropriate to extend the deadline for BLM to complete the WEMO plan revisions and issue a revised ROD following appropriate National Environmental Policy Act ("NEPA") compliance.  Based on CBD Plaintiffs' explanation regarding the need for public to visit the impacted areas in relatively cooler weather, the concurrence by Defendants and the non-opposition by ARR Plaintiffs, the deadline is extended to May 31, 2015.  BLM shall issue the DEIS in September 2014, so that the 90 day public comment period will extend at least through October 2014.  BLM has agreed to keep the Court and the parties apprised of the status of the

planning process in its quarterly reports filed with the Court and to notify the Court and the parties

if for any reason it appears that BLM will not be able to meet this newly established deadline.

## II.     AAR Plaintiffs' Motions For Remedies Enforcement

ARR Plaintiffs' two motions concerning remedies enforcement request the Court to

impose a number of additional requirements on BLM concerning its enforcement of its OHV use

regulations and the reporting of its enforcement actions.  ARR Plaintiffs also request that the court

modify BLM's Monitoring Protocol filed with the Court on July 1, 2013 (Doc. 332-3) in a number

of respects.  Each of these sets of requests is addressed in turn.

### A.     ARR Plaintiffs' Requests That Court Impose Additional Requirements Concerning BLM's Enforcement of Its OHV Use Regulations and BLM's Reporting of Its Enforcement Actions

ARR Plaintiffs request that the Court: (1) order BLM to increase the maximum fine for

illegal OHV use to at least $25,000 and to publicize this fine through all available means (Supp.

Motion at 7, 9, 12; Tr. 17:8-12); and (2) order BLM to add several additional elements to its

reporting of enforcement actions in its quarterly reports (Supp. Motion at 7, 12; Tr. 18:8-14).

#### 1.     ARR Plaintiffs' request that Court order BLM to increase the maximum fine for illegal OHV use to at least $25,000 and publicize this fine amount

In its written submissions and through its testimony at hearing, BLM explained that, while

the Alternative Fines Act of 1984 provides statutory authority to impose fines for illegal OHV use

of up to $100,000.00, the actual fine amounts for various violations of OHV use regulations are

established by the Collateral Forfeiture Schedules established pursuant to orders of the District

Courts for the Eastern and Central Districts of California.  *See* 18 U.S.C. § 3571(b), (e); Tr. 246:12

– 247:23 (Testimony of Patrick Chassie).  The fines for illegal OHV use on BLM administered

lands, as set forth in those schedules, range from $100 to $400.  *See* E.D. Cal. General Order No.

488 (Mar. 9, 2010), with attached 2010 Collateral Forfeiture Schedule (Doc. 363-2); C.D. Cal.

Order of the Chief Judge (May 11, 2012), with attached Uniform Collateral Forfeiture Schedule

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(Doc. 363-3).  ARR Plaintiffs do not dispute that these Collateral Forfeiture Schedules control the

amount of the fines for which BLM law enforcement officers can cite users.  Tr. 48:1-8

(Testimony of Edward Petrovsky).

BLM explained, through Chief Supervisory Ranger for the Barstow Field Office, Mr.

Patrick Chassie, that these schedules provide agency enforcement personnel the discretion to issue

citations charging fines in accordance with the schedules, or to issue citations requiring a

mandatory court appearance.  Tr. 246:12 – 247:23, 248:7-21 (Testimony of Patrick Chassie).

BLM further noted that, while citations for such a "mandatory appearance" can potentially result

in the court assessing fines higher than those set forth in the schedules, as a practical matter, courts

rarely assess any such higher fines.  Tr. 246:12 – 247:23, 249:18 – 250:7 (Testimony of Patrick

Chassie).  The undersigned suggested, however, that in issuing mandatory citations, BLM take

into consideration the possibility of restitution as a reason for issuing such citations.  BLM also

explained that mandatory appearance citations require the BLM law enforcement officer to appear

in court.  Tr. 248:7-21 (Testimony of Patrick Chassie).  BLM explained the importance of its law

enforcement officers retaining the discretion to issue citations imposing fines in accordance with

the schedules, or requiring mandatory court appearance for specific, individual violations of

BLM's OHV regulations.  Tr. 245:6-19, 248:7-21, 257:1 – 258:13 (Testimony of Patrick Chassie).

BLM expressed skepticism that requiring BLM to advertise the theoretical maximum

potential fine that federal magistrate judges could levy would present a credible deterrent to illegal

OHV use given the improbability that such fines would be assessed.  Tr. 246:12 – 247:23, 249:18

– 250:7, 251:5 – 252:8 (Testimony of Patrick Chassie).  Finally, BLM explained that it devoted

two work months and spent approximately $35,000 complying with the Remedy Order's

requirement concerning the posting and publicizing of a specific form of notice.  Tr. 280:25 –

281:18 (Testimony of Carl Symons); Remedy Order (Doc. 243) at 14.  BLM explained that

requiring BLM to now advertise a specific potential maximum fine amount would require BLM to

7

repeat this work and expenditure, and, in the view of BLM's law enforcement and resource personnel, would be unlikely to lead to greater OHV use compliance.  Tr. 282:14 283:13 (Testimony of Carl Symons); Tr. 251:5 – 252:8 (Testimony of Patrick Chassie).

The Court notes that the relief requested by ARR Plaintiffs goes beyond the requirements of the Remedy Order, which was very specific in its requirements.  The Remedy Order required BLM to carry out six enumerated sets of actions to mitigate illegal OHV use in the WEMO plan area.[4]  The Remedy Order also required BLM to provide the Court and the parties quarterly reports indicating BLM's progress on implementing these six requirements.  *Id.* at 15.  BLM met all of these requirements, including the filing of the Court-ordered plan concerning its enforcement capability for the WEMO route network.  *See* Enforcement Plan, West Mojave Planning Area, California Desert District, filed April 28, 2011 (Doc. 252-6) (Enforcement Plan).  This plan was filed on time and without challenge from Plaintiffs.  Indeed, ARR Plaintiffs have not alleged that

---

[4]     The Remedy Order required BLM to carry out the following six sets of actions:

    (1)    provide the Court with a detailed sign implementation plan;

    (2)    update all BLM maps and publications with accurate and updated route information and include a notice in the specific language set out in the order advising users of the penalties for illegal OHV use;

    (3)    provide the Court with a monitoring plan to determine (a) compliance with route closures, and (b) whether new illegal routes are being created;

    (4)    carry out additional information gathering and monitoring regarding (a) air quality around open areas, (b) status of Mojave fringe-toed lizard and its habitat, and (c) riparian areas and UPSs, including new proper functioning condition assessments for springs and seeps;

    (5)    provide the Court with a plan for maintenance of the route network and installation of information kiosks at all major OHV access points; and

    (6)    provide the Court with a plan concerning enforcement capability for the route network in the WEMO plan area.

Remedy Order at 14-15.

United States District Court
Northern District of California

that BLM has failed to carry out any of the specific requirements of the Remedy Order – with the exception of ARR Plaintiffs' challenges to the sufficiency of BLM's monitoring plan discussed in Section III.B below.

With respect to the posting and publishing of notice of the penalties for illegal OHV use, the Remedy Order was especially specific in its direction – right down to the size of the font of the required notice.  *See* Remedy Order at 14.[5]  Despite the great particularity with which the Court addressed the requirements for BLM's posting of notice concerning the penalties for illegal OHV use, the Court did not direct BLM to post notice of potential fine amounts.  BLM met all of the Court's specific requirements for publishing and posting notice of the penalties for illegal OHV use without complaint from Plaintiffs.  Indeed, a hearing was held in this matter in October 2012 during which compliance with the requirements of the Remedy Order were addressed, including the requirement for posting of notices of the penalties for illegal OHV use, and no questions were raised concerning the content or sufficiency of the Court's required notice.  *See* Transcript of Proceedings on Joint Status Report Re: Enforcement of Remedies Order (Doc. 324) (Oct. 2011 Tr.) 13:23 – 14:11.  BLM explained during that hearing how it was going about meeting that requirement – at some considerable effort and with input from Plaintiffs – and nothing was raised

---

[5]     The Remedy Order states:

> (2)     Within 210 days of the Court's order, the BLM shall update all BLM-produced and available maps to include accurate and updated route information and, as necessary, include a notice in the form below, in at least 20 point type, on all maps, pamphlets, kiosks, and other literature regarding WEMO OHV routes distributed by the BLM.
>
> NOTICE:
>
> MOTORIZED USE IS PERMITTED ONLY ON ROUTES SIGNED 'OPEN.' ANY ROUTE THAT DOES NOT HAVE AN 'OPEN' SIGN IS NOT LEGAL FOR MOTORIZED USE.  MOTORIZED USE OF ANY CLOSED ROUTE WILL RESULT IN A FINE OR CRIMINAL PROSECUTION.").

Remedy Order at 14.

United States District Court
Northern District of California

by Plaintiffs concerning the possible advertising of potential fines of up to $25,000.00 (or $100,000.00).  *See* Oct. 2011 Tr. 63:16 – 67:22.

While the Court recognizes the limited resources available to BLM to manage this 9.2 million acre area, 3.2 million acres of which is public land administered by BLM (Tr. 86:11-14), the Court continues to be concerned with the ongoing use of closed OHV routes within the WEMO plan area.  The Court is not convinced, however, that requiring BLM to advertise the maximum potential fine for which federal magistrate judges could potentially enter judgment (of up to $25,000.00 or up to $100,000.00) would be useful in gaining greater OHV use compliance.

The Court perceives that the parties share the common objective of gaining greater compliance with OHV use regulations, and particularly compliance with route closures and preventing or limiting the creation of new illegal routes.  The Court therefore directs that the parties meet and confer to discuss developing strategies for gaining greater OHV use compliance within the WEMO planning area.  The Court suggests that among the strategies that the parties may want to explore are the possibility of jointly seeking an increase in the fines set forth in the Collateral Forfeiture Schedules established by the District Courts for the Eastern and Central Districts, exploring ways to get greater assistance from "friends" groups, such as the Friends of Juniper Flats, Friends of the Jawbone, and Friends of El Mirage in monitoring this vast area of public land, and seeking grants to help fund activities directed at gaining compliance such as signing, rehabilitation and restoration, and fencing.  The parties shall file a joint status report on their progress no later than June 30, 2014.

        **2.**      **ARR Plaintiffs' request that the Court order BLM to report the allocation of BLM's law enforcement resources between "open" and "limited" OHV use areas**

ARR Plaintiffs ask the Court to require BLM to include in its quarterly reports filed in this matter the following additional information:

10

United States District Court
Northern District of California

(a)   An accounting of the division of time of its law enforcement resources

between OHV areas designated "open" and "limited;"

(b)   The number of citations issued and the nature of the citations issued in each

type of area, and

(c)   The outcome for each citation, *i.e.*, the penalty actually assessed.

Supp. Motion at 12; Tr. 18:8-14.

BLM previously explained that its quarterly reports identify the number of enforcement

contacts (including educational contacts, written warnings, and citations), but not the nature of

citations or the amount of the fine charged or assessed.  Federal Defendants' Response to ARR

Plaintiffs' Supplemental Motion for Remedies Enforcement (Doc. 363) (Defendants' Response to

Supplemental Motion) at 10; BLM Quarterly Report, December 31, 2013 (Doc. 361-1).  BLM

noted that, because there are no closed routes within designated "open" areas and unauthorized

routes cannot be created within such areas, these additional items that ARR Plaintiffs request the

Court to order BLM to include in its quarterly reports would not be useful in tracking enforcement

of use of closed routes or the creation of new routes.  *Id.*; Tr. 120:18 – 121:23 (Testimony of

Katrina Symons); Tr. 255:20 – 256:6 (Testimony of Patrick Chassie).

BLM explained the distinct compliance issues that BLM deals with in open areas versus

limited use areas and how those considerations play into how it allocates its law enforcement

resources.  Tr. 120:25 – 121:23 (Testimony of Katrina Symons); Tr. 255:20 – 256:6 (Testimony of

Patrick Chassie).  BLM's management personnel, including Field Manager for the Barstow Field

Office, Ms. Katrina Symons, testified that reporting on the breakdown of the time law

enforcement personnel spend in open areas and in limited use areas, and of the citations issued in

these different types of areas and the resolution of all such citations, would not assist BLM

management or the public in developing compliance and travel management strategies in the

11

limited use areas that are the focus of BLM's planning effort.  Tr. 120:18 – 121:23 (Testimony of Katrina Symons).

Finally, BLM presented testimony explaining that under BLM's current system for tracking and reporting its law enforcement activities, utilizing its Incident Management Analysis and Reporting System ("IMARS"), as well as officer patrol logs and WEMO observation reports, BLM does not have the capacity to breakout its law enforcement activities between open and limited use areas.  Tr. 121:24 – 122:8 (Testimony of Katrina Symons); Tr. 252:10 – 254:17 (Testimony of Patrick Chassie).

The Court notes that, again, the relief requested by ARR Plaintiffs goes beyond the detailed requirements of the Remedy Order.  More critically perhaps, the Court is not persuaded that requiring BLM to provide additional reports concerning the allocation of its law enforcement resources between "open" and "limited" OHV use areas, the issuance of citations in these different types of areas, and the resolution of all such citations, would be particularly useful in tracking enforcement of use of closed routes or the creation of new routes – which is the focus of the Court's Remedy Order.  The Court concludes that BLM's limited law enforcement resources can be best utilized by actually carrying out monitoring, patrols and enforcement activities in the field, rather than generating additional data that may be of little use for on-the-ground enforcement purposes.  BLM's current reporting of the number of enforcement contacts it makes each quarter, including the total number of enforcement contacts as well as a breakdown of those contacts that pertained to off-route or closed area motor vehicle violations, adequately informs the Court and the public concerning BLM's efforts directed at limiting OHV use to open routes and curtailing use of closed routes and creation of new routes.  The Court therefore declines to order that BLM report the additional items requested by ARR Plaintiffs in BLM's quarterly reports.  BLM has agreed, however, that it will add to its quarterly reports the total number of law enforcement actions (including federal violation notices, state citations, written warnings) and compliance

United States District Court
Northern District of California

United States District Court
Northern District of California

checks it makes – by the law enforcement patrol sector described in the WEMO Enforcement Plan

(Doc. 252-6).  BLM will also provide, as a subset of the total, the number of violation notices,

state citations, and written warnings specific to off-route travel and motorized travel in closed

areas.

> **B.**      **ARR Plaintiffs' Requests That Court Impose Additional Requirements Concerning BLM's Monitoring Protocol**

ARR Plaintiffs request the Court to order BLM to modify its Monitoring Protocol (Doc.

332-3) in four specific respects:

> (1)      order that the protocol provide for the direct monitoring and reporting of
>
> use of closed routes (ARR Motion at 10, 15; Tr. 21:1-3, 21:14-16, 21:21-
>
> 22:7);
>
> (2)      order BLM to conduct its inspections of closed routes during or soon after
>
> unspecified high-use periods (ARR Motion at 9-10; Supp. Motion at 14-15,
>
> 19-20; Tr. 22:12-20); and
>
> (3)      order BLM to accelerate its monitoring of use of closed routes by
>
> completing a full three-year cycle of monitoring of use of closed routes
>
> selected for sampling under the Monitoring Protocol, *i.e.*, all closed routes
>
> that intersect 336 miles of designated routes, within the next two months
>
> (Supp. Motion at 7-8, 19-20; Tr. 19:3-8);
>
> (4)      order that BLM either ensure that aerial photography for the monitoring of
>
> new route creation will be available from the National Agriculture Imagery
>
> Program ("NAIP") or other sources, or submit within three months a revised
>
> plan for determining new route creation on the most expeditious basis
>
> possible (Supp. Motion at 7-8, 20; Tr. 16:13-18, 20:16-21).

The Court will address each of ARR Plaintiffs' requests concerning BLM's Monitoring Protocol in turn.

### 1.    ARR Plaintiffs' request that Court order that BLM's Monitoring Protocol directly monitor use of closed routes

ARR Plaintiffs request the Court to order BLM to modify its Monitoring Protocol to provide for the direct monitoring of the use of closed routes.  ARR Motion at 10, 15; Tr. 21:1-3, 21:14-16, 21:21-22:7.  BLM explained during the hearing that the protocol provides that direct measurement of use of closed routes.  Tr. 118:4 – 120:17 (Testimony of Katrina Symons). (Closed routes occur off of 15.8% of the designated routes within the WEMO plan area; the mileage of these designated routes with incursions constitutes about one-third (32.6%) of the total mileage of designated routes.  Ex. G (Monitoring Protocol) at 7-8; (Tr. 203:11-12 (Testimony of Sergio Capozzi).)  Specifically, BLM explained that the use of closed routes will be reported on the table depicted at the top of page 26 of the Monitoring Protocol.  Tr. 119:13 – 120:9 (Testimony of Katrina Symons); Ex. G (Monitoring Protocol) at 26.  As explained by Ms. Symons, the total of the numbers recorded in the first column of that table (usage level = none, light, medium or heavy) indicates the total number of closed routes inspected, and the total of the numbers recorded as exhibiting light, medium or heavy use provides the number of those closed routes that were inspected that show signs of use.  *Id.*  BLM also noted that it had sent this information to ARR Plaintiffs explaining that the reports under BLM's protocol monitoring will provide a direct measure of the use of closed routes, and describing exactly where that information will be reported on the inspection forms.  Tr. 120:10-17 (Testimony of Katrina Symons).  ARR The Court therefore concludes that the Monitoring Protocol calls for the direct monitoring of the use of closed routes there is no need to modify the Monitoring Protocol in this respect.

//

//

United States District Court
Northern District of California

### 2.   ARR Plaintiffs' request that Court order BLM to inspect closed routes during high use periods.

ARR Plaintiffs urge the Court to order BLM to carry out its inspections of closed routes during or immediately after various high use periods.  ARR Motion at 9-10; Supp. Motion at 14-15, 19-20; Tr. Tr. 22:12-20.  BLM explained in some detail at the hearing how BLM personnel determine OHV use on closed routes based on on-the-ground inspections focused on detecting impacts of use, including observation of a number of physical factors such as the number and type of vehicle tracks, whether or not vegetation has reestablished itself, signs of erosion, incursion width, and the presence of "whoop-di-dos."  Tr. 109:5 – 112:23; 140:13-25; 144:23 – 145:7; 147:10 – 149:23; Ex. G (Monitoring Protocol) at 16.  Other than taking issue with the efficacy of assessing the number of OHV tracks as a measure of usage intensity, ARR Plaintiffs did not challenge BLM's ability to determine usage intensity based on field inspection.  Tr. 224:8 – 225:7 (Court colloquy with Mr. Robert Wiygul (THE COURT:  Are you concerned that the designation by BLM of having moderate or light use is inaccurate? . . . MR. WIYGUL:  Judge, I will not say I'm uncomfortable with that.  THE COURT:  Okay.).

ARR Plaintiffs, however, assert that BLM must be ordered to carry out its inspections during or right after periods of high use.  BLM explained through the testimony of Ms. Symons why the Monitoring Protocol does not set a particular range of dates for the inspections.  Ms. Symons noted as an initial matter that the baseline route inventory was carried out over an entire year.  Tr. 113:9-20 (Testimony of Katrina Symons).  Ms. Symons also observed that the high use period varies throughout the WEMO plan area, and that the routes to be sampled in a given year will be in geographically disparate locations anywhere within the 34 subregions of WEMO.  Tr. 113:20 – 114:16 ("throughout the planning area there is no one time that any one area receives a defined use period.").  Finally, Ms. Symons explained the reasons BLM is confident that its inspections will reliably detect use of closed routes and why it is not necessary to conduct the

15

inspections during high use periods.  Tr. 114:17 – 115:2 ("I am highly confident that we will be able to collect the information that we need in order to properly implement the protocol monitoring regardless of the time of year that that information is collected.").  In particular, Ms. Symons explained that monitoring under BLM's Monitoring Protocol is not based on direct observation of use, but rather, on a visual assessment of on-the-ground impacts from OHV use.  Tr. 109:5 – 112:23 ("You see the impacts of that use on the ground."); 115:3-16 ("we actually do not necessarily count the tracks.  What we're looking for is the impact on the ground.").

The only testimony presented by ARR Plaintiffs concerning the asserted necessity for BLM to carry out its inspections during or shortly after high use periods addressed the possibility that it might not be possible to count the number of individual vehicle tracks if routes are not inspected soon after vehicle use.  Tr. 74:11-25 (Testimony of Jenny Wilder).  AAR Plaintiffs' two witnesses both conceded that they had given no consideration to the BLM staff resources that would be required to carry out its protocol monitoring in high use periods, or whether it would even be feasible for BLM to limit its protocol monitoring to those periods.  Tr. 44:8 – 45:3 (Testimony of Edward Petrovsky); Tr. 77:16-19 (Testimony of Jenny Wilder).

The Court is not convinced that it is necessary to order BLM to conduct its inspections of closed routes during or shortly after specific high use periods in order for BLM to reliably detect evidence of OHV use.  The Court therefore declines to order BLM to modify its Monitoring Protocol in this respect.

### 3. ARR Plaintiffs' request that Court order BLM to accelerate its inspections of closed routes

ARR Plaintiffs ask the Court to order BLM to accelerate its inspection of closed routes by completing a full three-year cycle of monitoring of use of closed routes selected for sampling under the Monitoring Protocol, *i.e.*, all closed routes that intersect 336 miles of designated routes, within the next two months.  Supp. Motion at 7-8, 19-20; Tr. 19:3-8.  ARR Plaintiffs request the

United States District Court
Northern District of California

Court to order this accelerated monitoring so that additional data concerning the use of closed routes will be available for BLM's use in identifying alternative route networks in the Draft Environmental Impact Statement (DEIS) for the revised WEMO plan.

BLM explained through the testimony of its WEMO Project Manager, Ms. Edythe Seehafer, as well the wildlife biologist for the Barstow Field Office and WEMO interdisciplinary team member, Christopher Otahal, that the basic foundation for travel management planning and the identification of alternative route networks is an adequate inventory of existing routes and the public land resources potentially impacted by OHV use.  Tr. 180:15 – 181:10 (Testimony of Edythe Seehafer); Tr. 228:20 – 229:6 (Testimony of Christopher Otahal).  BLM has completed that route inventory and developed a comprehensive database identifying the sensitive resources potentially impacted by OHV use.  Tr. 228:20 – 233:2 (Testimony of Christopher Otahal).  BLM is now proceeding with the identification of alternative route networks as part of the WEMO planning process.  Tr. 189:16 – 190:13 (Testimony of Edythe Seehafer); Tr. 229:7 – 235:20 (Testimony of Christopher Otahal).

All of the information that BLM has gathered in carrying out its Monitoring Protocol inspections to date, as well as through its traditional monitoring activities, concerning use of closed routes, together with the extensive data BLM has compiled concerning sensitive resources, is being evaluated through use of Geographic Information System ("GIS") analysis in order to apply the minimization criteria and minimize resource impacts in BLM's identification of alternative route networks.  Tr. 228:20 – 233:2 (Testimony of Christopher Otahal).  Using GIS layers for each sensitive resource, as well as data concerning authorized rights-of-way, points of interest, access points, and recreation destinations, BLM has identified over 300,000 route segments based on possible conflicts between uses and resources.  Tr. 229:7 – 233:2 (Testimony of Christopher Otahal).  BLM's designation of alternative route networks will take into account the locations of all closed routes as identified by the 2012 route inventory and the 2010 National

17

Agriculture Imagery Program (NAIP) imagery, through the use of GIS analysis.  Tr. 228:20 –

229:6 (Testimony of Christopher Otahal).

BLM further explained that compressing BLM's inspection of the entire 336 miles of

routes for assessment of use of closed routes into the next two months will add little value to the

statistical monitoring or the process of identifying alternative route networks in the DEIS.  Tr.

215:18 – 216:19; (Testimony of Sergio Capozzi).  The locations of closed routes are already

incorporated into GIS layers and are being taken into account in the identification of alternative

route networks.  Tr. Tr. 228:20 – 229:6 (Testimony of Christopher Otahal).  BLM provided

testimony, through its consultant concerning statistical monitoring techniques, Mr. Sergio

Capozzi, that accelerating the inspections now scheduled to take place over the next two years into

the next two months could actually diminish the value of the monitoring results.  Tr. 216:10-19

(Testimony of Sergio Capozzi) ("So essentially, though, you're compacting what is that three-year

time frame into one.  One of the reasons, one of the benefits . . . of doing something over, say, a

three-year period in recreation [is that] we have these longer monitoring time frames because

recreation is highly influenced by external factors.  So you've got weather events, forest fires, gas

prices.  All these things influence recreation.  So by using a multiyear approach, it tends to even

out any of those externalities that may be influencing the data that's being collected.").  BLM

further explained that, even if the three-year statistical analysis and reporting of sampling data for

336 miles of routes could be completed and incorporated into route network analyses prior to

publication of the DEIS in July 2014, this additional data would be of limited value in BLM's

identification of alternative route networks.  Tr. 237:4 – 238:2 (Testimony of Christopher Otahal)

(noting that statistical data on use of closed routes off of 64 miles (or 336 miles) of designated

routes, out of a total of 17,000 miles of routes is "a very small subset . . . that doesn't have a lot of

utility" for purposes of route network designation.).

United States District Court
Northern District of California

BLM also explained that it would be difficult, if not impossible, for BLM to complete its inspection of 336 miles of sampled routes for the first three-year cycle in two months without dropping or delaying other court-ordered remedy commitments of BLM staff in the Barstow and Ridgecrest Field Offices.  Tr. 284:19 – 285:22 (Testimony of Carl Symons).  Mr. Symons, Field Manager for the Ridgecrest Field Office, testified that in order for BLM to inspect this entire 336 miles of routes scheduled to be inspected over the first three-year monitoring cycle in the next two months, as requested by as by ARR Plaintiffs, BLM would have to devote all or most of the time of six employees.  Tr. 284:19 – 285:22  (Testimony of Carl Symons).  Mr. Symons concluded that it would not be possible for BLM to carry out this accelerated monitoring without moving the deadline for completing the WEMO plan out beyond March 31, 2015.  Tr. 284:19 – 285:22 (Testimony of Carl Symons).  Ms. Seehafer testified that, if BLM is required to compress the monitoring currently scheduled for Years 2 and 3 into the next several months, the schedule for completing the revised WEMO plan would need to be extended at least another six months.  Tr. 195:18 – 196:5 (Testimony of Edythe Seehafer).

The Court is not persuaded that there is a need to order BLM to accelerate inspections as currently scheduled under the Monitoring Protocol in order for BLM to identify a reasonable range of alternative route networks that take into account the location and use of closed routes and appropriately apply minimization criteria.  The Court therefore declines to order that BLM accelerate its inspections as scheduled under the Monitoring Protocol.

**4.       ARR Plaintiffs' request that Court order BLM to submit a revised plan for monitoring new route creation in the event remote imagery is not available**

Finally, ARR Plaintiffs ask the Court to order that BLM either ensure that aerial photography for the monitoring of new route creation will be available from NAIP or other

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

sources, or submit within three months a revised plan for determining new route creation on the most expeditious basis possible.  Supp. Motion at 7-8, 20; Tr. 16:13-18, 20:16-21.

BLM has explained that, in view of the increasing and widespread governmental and commercial applications of NAIP imagery, it is confident that NAIP imagery will continue to be generated at least every three years for the WEMO plan area.  Tr. 179:21 – 180:6 (Testimony of Edythe Seehafer); Defendants' Response to Supplemental Motion at 19; Federal Defendants' Status Report, Response to CBD Plaintiffs' Status Report, and Response to ARR Plaintiffs' Motion for Enforcement of Remedies Order (Doc. 345) at 24.  BLM has agreed that, if it turns out that NAIP or other suitable aerial imagery is not available on the three-year cycles for which BLM intends to inspect for the creation of new OHV routes (2015 flight/2016 publication, 2018 flight/2019 publication, 2021 flight/2022 publication), BLM would need to develop an alternative means for monitoring the creation of new OHV routes.  Defendants' Response to Supplemental Motion at 19.  BLM however pointed out that the reports that will be issued under BLM's Monitoring Protocol provide that BLM will identify any necessary modifications to the sampling protocols – including the methods of monitoring creation of new routes.  *Id.* at 19-20; Ex. G (Monitoring Protocol) at 23.  These three-year reports to be prepared under the Monitoring Protocol (2016, 2019 and 2022) will identify any such modifications, including any necessary changes in the protocol for monitoring for the creation of new routes that might be necessitated due to the unforeseen unavailability of the necessary aerial imagery.  *Id.* ARR Plaintiffs presented no evidence or argument to the contrary.

The Court therefore concludes that there is no need to add further requirements for updating or modifying BLM's monitoring methods beyond those already contained in BLM's Monitoring Protocol.

//

//

III.    **Summary of Relief Granted or Denied with Respect to Motions at Issue**

A.    **Federal Defendants' Motion for Modification of Remedy Order To Extend Time To Complete WEMO Plan Revisions**

Federal Defendants' motion for modification of the Remedy Order to extend the time to complete the WEMO plan revisions is GRANTED.  The Court orders that the deadline for BLM completing the WEMO plan revisions and issuance of a revised ROD following appropriate NEPA compliance is extended to May 31, 2015.  BLM shall keep the Court and the parties apprised of the status of the planning process in its quarterly reports filed with the Court and shall notify the Court and the parties if for any reason it appears that BLM will not be able to meet this newly established deadline.

B.    **AAR Plaintiffs' Motions For Remedies Enforcement.**

**Enforcement and Reporting Issues**

1.    ARR Plaintiffs' request that the Court order BLM to increase the maximum fine for illegal OHV use to at least $25,000 and to publicize this fine through all available means is DENIED.  The Court, however, orders the parties to meet and confer to discuss developing strategies for gaining greater OHV use compliance within the WEMO planning area, and to file a status report no later than June 30, 2014.

2.    ARR Plaintiffs' request that Court order BLM to include in its quarterly reports (a) an accounting of the division of time of its law enforcement resources between OHV areas designated "open" and "limited." (b) the number of citations issued and the nature of the citations issued in each type of area, and (c) and the outcome for each citation, *i.e.*, the penalty actually assessed, is DENIED.

**Issues Concerning Monitoring Protocol:**

1.    ARR Plaintiffs' request that the Court order BLM to modify its Monitoring Protocol to provide for the direct monitoring of the use of closed routes is DENIED.

United States District Court
Northern District of California

1

2    2.    ARR Plaintiffs' request that the Court order BLM to carry out its inspections of

closed routes during or immediately after various high use periods is DENIED.

3    3.    ARR Plaintiffs' request that the Court order BLM to accelerate its inspection of

4    closed routes by completing its inspections of routes with incursions scheduled to take place over

5    the first three-year cycle under the Monitoring Protocol, *i.e.*, all closed routes that intersect 336

6    miles of designated routes, within the next two months, is DENIED.

7    4.    ARR Plaintiffs' request that the Court order BLM to either ensure that aerial

8    photography for the monitoring of new route creation will be available from NAIP or other

9    sources, or submit within three months a revised plan for determining new route creation on the

10   most expeditious basis possible, is DENIED.

11

12   **IV.    Additional Relief Requested by ARR Plaintiffs**

13   In their proposed order filed March 12, 2013, (Doc. 372), ARR Plaintiffs ask the Court to

14   require BLM to prepare an analysis of the "routes without incursions" subpopulation identified in

15   BLM's Monitoring Protocol (Doc. 332-3) using NAIP aerial photography for 2005, 2009 and

16   2012, and to identify new route creation on these routes during that time period.  ARR's Proposed

17   Order at 13-21-14.6.  Plaintiffs further request that the Court order BLM to provide the Court and

18   the parties with an updated enforcement plan that identifies specific concrete steps the agency will

19   take to improve compliance with route designations during the extended remand period.  *Id.* at

20   16:15-21.  Both of these requests for relief are outside the relief requested in ARR Plaintiffs'

21   motions for enforcement of the Remedy Order and are therefore DENIED.

22   **IT IS SO ORDERED.**

23

24   Dated:  March 31, 2014

25

26   _____

27   NANDOR J. VADAS
     United States Magistrate Judge

28